# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WYNDHAM VACATION OWNERSHIP,**
et al.,

      **Plaintiffs,**

v.                                          Case No: 6:18-cv-02171-GAP-DCI

**REED HEIN & ASSOCIATES, LLC,
SCHROETER GOLDMARK & BENDER,
P.S., HAPPY HOUR MEDIA GROUP,
LLC, MITCHELL R. SUSSMAN, KEN B.
PRIVETT, BRANDON REED, TREVOR
HEIN and THOMAS PARENTEAU,**

      **Defendants.**

## ORDER

In this case, Schroeter Goldmark & Bender, P.S., Reed Hein & Associates, LLC, Happy Hour Media Group, Brandon Reed, Trevor Hein, Thomas Parenteau, and Ken B. Privett (collectively, "**Defendants**")[1] move to dismiss the claims asserted in Plaintiffs' Complaint. (*See* Docs. 18, 31, 34). The Plaintiffs have responded. (Docs. 30, 40, 41). Upon consideration, Defendants' motions are granted in part.

**I.**     **Background**[2]

Plaintiffs (henceforth, collectively, "Wyndham") are Orlando-based entities that conduct timeshare sales and development activities throughout the United States. (Doc. 1, ¶¶ 2, 58–60).

---

[1] One Defendant, Mitchell R. Sussman, filed an answer (Doc. 41) rather than seeking dismissal.

[2] These facts are taken from the Complaint, the allegations of which the Court must accept as true when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir.1994).

Defendant Reed Hein & Associates, LLC d/b/a Timeshare Exit Team is a timeshare exit company directed and controlled by non-lawyer Defendants Brandon Reed ("**Reed**"), Trevor Hein ("**Hein**"), and Thomas Parenteau ("**Parenteau**"). (*Id.* ¶¶ 37, 40–42). Timeshare Exit Team profits from soliciting owners of Wyndham timeshares ("**Wyndham Owners**") as clients and then ridding them of their valid timeshare contracts. (*Id.* ¶¶ 11, 37, 40–42, 77).

To do this, Wyndham alleges, Timeshare Exit Team, Reed, Hein and Parenteau, and Happy Hour Media Group[3] (collectively, "**TET**") run false and misleading advertising, purporting to have "safe," "legitimate," or "guaranteed" means of "exiting" Wyndham Owners from their timeshare contracts. (*Id.* ¶¶ 5, 95–103, 125–134). After successfully luring Wyndham Owners into paying exorbitant fees for its services, TET instructs them to stop making payments on their timeshare contracts, which they do. (*Id.* ¶¶ 12, 106–107, 132). TET does not disclose to the Wyndham Owners that non-payment will result in a breach of those contracts, foreclosure of their timeshare interests, and other adverse consequences. (*Id.* ¶ 13).

TET then hires lawyer Defendants Mitchell R. Sussman, ("**Sussman**"), Schroeter, Goldmark & Bender, P.S. ("**SGB**"), and Ken B. Privett ("**Privett**") (collectively, the "**Lawyer Defendants**") to engage in fruitless negotiations with Wyndham for a fixed fee. (*Id.* ¶¶ 7, 108–111). Without speaking to any of the Wyndham Owners, the Lawyer Defendants send boilerplate demand letters ("**Demand Letters**") to the Wyndham entity with whom their client contracted, demanding that it stop communicating with their client. (*Id.* ¶¶ 8, 68, 111–119, 123, 134; Doc. 1-8, Doc. 1-9, Doc. 1-10). The Lawyer Defendants never work with any Wyndham entity to legitimately terminate a

---

[3] The Advertising is allegedly made, and created, at least in part, by Happy Hour Media Group, an in-house marketing agency created by Reed and Hein. (*Id.* ¶¶ 45, 104).

timeshare contract. (*Id.* ¶¶ 18, 124). Instead, they engage in three deceptive and unlawful "**Strategies**":

> i. The "Resignation": the Lawyer Defendants send a letter simply 'notifying' the relevant Wyndham entity that the Wyndham Owner has 'resigned' from the Timeshare Contract;
>
> ii. The "Deed Back": the Lawyer Defendants have the Wyndham Owner execute a quitclaim deed purporting to quitclaim the timeshare interest back to the relevant Wyndham entity; and
>
> iii. The "Strawman": the Wyndham Owner's timeshare interest is transferred to a strawman buyer – who lacks any intent or ability to pay – without the knowledge or consent of the relevant Wyndham entity.

(*Id.* ¶¶ 16, 19). After using these Strategies, or after the timeshare contracts are foreclosed on, TET and the Lawyer Defendants falsely represent to their clients that they successfully cancelled or transferred their timeshare contracts. (*Id.* ¶¶ 13–17, 19, 20).

Wyndham alleges that these practices cause significant harm to the Plaintiffs and to the Wyndham Owners. (*Id.* ¶¶ 25–26). On December 19, 2018, Wyndham filed this suit, seeking injunctive and monetary relief. In the Complaint, Wyndham asserts claims for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count I); contributory false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) (Counts II and III); tortious interference with contractual relations (Count IV); violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V); and civil conspiracy to commit tortious interference (Count VI). (*Id.* ¶¶ 144–230).

## II.   Legal Standards

The Federal Rules of Civil Procedure require pleaders to provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts.

See Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with the pleading requirements or fails to set forth a plausible claim, it may be dismissed under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Plausible claims must be founded on sufficient "factual content" to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *see also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015). To assess the sufficiency of the factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 679; *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012).

Courts do not consider other matters outside the four corners of the complaint, and they must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. *See Hayes v. U.S. Bank Nat'l Ass'n*, 648 Fed. App'x. 883, 887 (11th Cir. 2016);[4] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## III. Analysis

The Defendants first argue that the Complaint is an impermissible shotgun pleading. It is not. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc*., 487 F.3d 1340, 1345 (11th Cir. 2007).

them and the grounds upon which each claim rests. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

The Complaint is not so defective. While far from exemplary, the Complaint is adequately structured with sufficient factual content to provide Defendants with notice of Plaintiffs' claims so that they can prepare a defense. As such, the Court will assess the Plaintiffs' federal and state claims.

### A. False Advertising in Violation of the Lanham Act

In Count I, Wyndham asserts a claim against TET for false advertising under Lanham Act. (Doc. ¶¶ 144–155). TET argues that Plaintiffs lack statutory standing to proceed on such a claim. (Doc. 31, pp. 10–17). Section 1125(a) of the Lanham Act "extends only to plaintiffs whose interests fall within the zone of interests protected by" the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (internal quotations omitted). Section 45 of the Lanham Act, codified at 15 U.S.C. § 1127, provides a detailed statement of those interests:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

"[A] typical false advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *Lexmark* at 131. Thus, a Lanham Act plaintiff asserting a claim for false advertising must allege an injury to a commercial interest in reputation or sales. *Id.* at 131-32.

In addition, the cause of action is only available to plaintiffs whose injuries are proximately caused by violations of the statute – as opposed to those whose injuries are "too remote" from the defendant's unlawful conduct. *Id.* at 133. Thus, a plaintiff suing under Section 1125(a) "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.*

Turning back to the instant case, the Court agrees that the Defendants lack statutory standing. The Plaintiffs allege that they suffered injury to their commercial interests because Wyndham Owners stopped making payments on their timeshare contracts. (Doc. 1, ¶ 135; Doc. 40, p. 10). But they do not allege that their injury flows directly from TET's advertising. None of the advertisements are alleged to have included instructions to Wyndham Owners that they should stop making payments. (*See* Doc. 1, ¶¶ 95–102). Further, the Complaint alleges that TET instructed Wyndham Owners to stop making payments *after* soliciting them through advertising. (*See id.* ¶¶ 12, 135, 138). Therefore, as currently pled, Plaintiffs' injury is too remote from TET's advertising and not the type of interest the Lanham Act was intended to protect. Count I will be dismissed without prejudice.

### B.     Contributory False Advertising in Violation of the Lanham Act

Counts II and III assert claims for contributory false advertising against the Lawyer Defendants and Happy Hour Media Group. (*Id.* ¶¶ 156–177). To state a contributory false advertising claim, a plaintiff must adequately plead an underlying claim for false advertising. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, No. 12-60741-CIV, 2014 WL 1329359, at *17 (S.D. Fla. Mar. 31, 2014), *aff'd*, 797 F.3d 1248 (11th Cir. 2015). Given that Plaintiffs fail to

state a Lanham Act claim for false advertising, their claims for contributory false advertising fail. Counts II and III will be dismissed without prejudice.

    **C.**    **Tortious Interference with Contractual Relations**

In Count IV, Plaintiffs assert a claim against Defendants for tortious interference. (Doc. 1, ¶¶ 178–203). To plead this claim, a plaintiff must allege that: (1) a contract exists; (2) the defendant knew about the contract; (3) the defendant intentionally procured a breach of the contract; (4) there was no justification or privilege for the breach; and (5) the plaintiff suffered damages. *Johns Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)).

Defendants first contend that, as counsel for Wyndham Owners, they are agents with privilege to interfere. (Doc. 31, pp. 18–19; Doc. 18, pp. 15–17; Doc. 34, p. 10). Privilege to interfere with a contract is an affirmative defense. *See Abele v. Sawyer*, 750 So. 2d 70, 75 (Fla 4th DCA 1999). Dismissal based on an affirmative defense is inappropriate unless its existence "clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

The Plaintiffs allege in the Complaint that Defendants were not agents to any of the Wyndham Owners and had no justification or privilege to interfere. (*See, e.g.*, Doc. 1, ¶¶ 7–8, 18, 106, 109, 116–119, 190–196). Thus, Defendants' argument fails.

Next, relying on *Ingenuity, Inc. v. Linshell Innovations, Ltd.*, 644 Fed. Appx. 913, 916 (11th Cir. 2016), in which the Eleventh Circuit held that a party's "predisposition to breach . . . precludes any finding that it was induced to breach by a third party," Defendants argue that Plaintiffs' claim fails because the Wyndham Owners were predisposed to terminating their timeshare contracts. (Doc. 31, pp. 19–20; Doc. 18, pp. 17–18). According to the Complaint, however, the Wyndham Owners

were not predisposed to commit a breach; rather, they were deceived into doing so by Defendants. (*See*, *e.g.*, Doc. 1, ¶¶ 12, 23, 95–96, 106, 182, 185). Therefore, this argument also fails.

Finally, Privett separately argues that Plaintiffs' claim fails because "interference must be with an identifiable person and not the public at large." (Doc. 34, p. 11). In support, Privett cites to *N. Am. Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So. 2d 32, 33 (Fla. 4th DCA 1994). (*Id.*). Privett's reliance on *Ferguson* is misplaced. *Ferguson* involved a claim for "tortious interference with advantageous business relationships." *See id.* at 33. That is not the type of claim asserted here. Therefore, *Ferguson* is inapplicable.

Having rejected all of Defendants' arguments, the Court will not dismiss Count IV.

**D. Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et. seq*.**

In Count V, Plaintiff claims that Defendants violated FDUTPA by making the alleged false advertising that was the subject of the first three counts and/or by profiting from it. (Doc. 1, ¶¶ 204–215; Doc. 40, p. 15; Doc. 30, p. 16–17). FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state such a claim, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).

As Plaintiffs concede, the success of their FDUTPA claim is tied to the success of their Lanham Act claim for false advertising. (*See* Doc. 40, p. 17). Therefore, having failed to adequately state a claim under the Lanham Act, Plaintiffs also cannot state an FDUTPA claim. *See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta*, 702 F.3d at 1296; *see also Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (a

plaintiff's "claim for a violation of [FDUTPA] rises or falls on the success of" their Lanham Act false advertising claim). Count V will be dismissed without prejudice.

### E. Civil Conspiracy

Count VI asserts a claim against Defendants for civil conspiracy. (Doc. 1, ¶¶ 216–230). A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008). An actionable conspiracy also requires an actionable underlying tort or wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

Defendants mount several arguments. First, SGB and TET seek dismissal of Plaintiffs' claim based on the same arguments they advanced to dismiss Plaintiff's tortious interference claim. (Doc. 18, pp. 23–24; Doc. 31, p. 23). For the reasons stated in section III(C), their arguments lack merit.

The second argument, however, is meritorious. Generally speaking, an agent cannot conspire with his or her corporate principal or employer, or another such agent, because a conspiracy requires at least two actors, and a corporation is a single entity that can only act through its agents, officers, and employees. *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 2007). This principle is referred to as the "intracorporate conspiracy doctrine." Based on this doctrine, SGB and Privett – who were lawyer-agents to TET – argue that they cannot, as a matter of law, be found to have conspired with TET. (Doc. 18, pp. 21–23; Doc. 34, pp. 12–14). *See American Credit Card Telephone Co. v. Nat'l Pay Telephone Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987) (holding that outside counsel fall within ambit of the intracorporate conspiracy doctrine, just as in-house counsel would). There is, however, an exception to this rule where the agent "has

an independent personal stake, apart from that of the corporation, in achieving the object of the conspiracy." *Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc.*, 629 So. 2d 252, 256 (Fla. 3d DCA 1993). For example, in what appears to be the first opinion to recognize the exception, *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F. 2d 391, 399 (4th Cir. 1974), a corporation that published a daily newspaper and an individual, Whichard, who served as president, director, and shareholder of that corporation were accused of conspiring to violate the Sherman Antitrust Act. Whichard was also affiliated with the Ayden News-Leader (the "News-Leader"), a separate, weekly newspaper that was not involved in the suit. *Id.* at 399-400. The News-Leader paid Whichard a certain amount for each page of advertising it sold. *Id.* at 400. If the alleged conspiracy succeeded in driving the plaintiff out of business, the News-Leader would be expected to sell more pages of advertising and, as a result, pay more to Whichard. *Id*. Because Whichard stood to benefit financially from the conspiracy, separate and apart from the benefit flowing to the alleged co-conspirator corporation, the *Daily Reflector* court found that the "independent personal stake" exception applied and the civil conspiracy claim could proceed. *Id.*

Here, Plaintiffs allege SGB and Privett had such an independent personal stake in that they accepted from TET a minimum of 800 files per month at a rate of $1,200 per file. (Doc. 1, ¶¶ 7–9, 18, 108–10, 225). But the exception does not apply simply because some conspirators were getting paid by the corporation. The exception does not even apply where an individual can expect a bigger paycheck from the corporation if the conspiracy is successful. *See HRCC, Ltd. v. Hard Rock Int'l (USA), Inc.*, 302 F.Supp.3d 1319 (M.D. Fla. 2016) (independent personal stake exception did not apply where alleged co-conspirators, who were corporate officers, would earn larger bonuses if conspiracy succeeded and made defendant corporation more profitable) and cases cited therein. In the instant case, the financial fortunes of SGB and Privett are not alleged to have been tied to the

success of the conspiracy. But even if such a connection existed, the fact that SGB and Privett were getting paid by TET means that their personal stake was not independent of the corporation's, and therefore the exception does not apply.[5] The civil conspiracy claim will be dismissed as to SGB and Privett.

Finally, TET argues that Florida's litigation immunity privilege bars the conspiracy claim. (Doc. 31, pp. 23–25; Doc. 34, pp. 14–16). This argument fails as Florida's litigation privilege is an affirmative defense, *see Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. 2d DCA 2002), and the applicability of the litigation privilege does not unequivocally appear on the face of the Complaint.

---

[5] The Court notes that it reached a different result as to this issue in *Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, No. 6:17-cv-1542 (M.D. Fla. filed August 24, 2017).

**IV. Conclusion**

It is, therefore **ORDERED** that:

1. The Motions to Dismiss filed by Schroeter Goldmark & Bender, P.S., Reed Hein & Associates, LLC, Happy Hour Media Group, Brandon Reed, Trevor Hein, Thomas Parenteau, and Ken B. Privett (Docs. 18, 31, 34) are **GRANTED IN PART**, as set forth above.

2. Counts I, II, III, and V are **DISMISSED** without prejudice.

3. Count VI is **DISMISSED** as to Defendants Schroeter Goldmark & Bender, P.S. and Ken B. Privett, only.

4. On or before **Wednesday, June 23, 2019,** Plaintiffs may file an amended complaint.

**DONE** and **ORDERED** in Orlando, Florida on May 23, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE