UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-WEST, LLC, SVC-AMERICANA, LLC and SVCHAWAII, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>REED HEIN & ASSOCIATES, LLC, BRANDON REED, TREVOR HEIN, THOMAS PARENTEAU, HAPPY HOUR MEDIA GROUP, LLC, MITCHELL R. SUSSMAN, KEN B. PRIVETT and SCHROETER GOLDMARK & BENDER, P.S.,<br><br>       Defendants. | CASE NO: 6:18-cv-2171-Orl-GAP-DCI |

## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT BY DEFENDANT KEN B. PRIVETT, ESQ., AND SUPPORTING MEMORANDUM OF LAW

Defendant, Ken B. Privett ("Privett"), pursuant to Federal Rules of Civil Procedure 12(b)(6) moves to dismiss Counts II, V, and VI against Privett in Plaintiffs' Amended Complaint (Doc. 63) for failure to state a claim upon which relief may be granted as more fully set forth in the memorandum below.

## Procedural Background[1]

On December 19, 2018, Plaintiffs, Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-West, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC, (collectively, "Plaintiffs" or "Wyndham"), sued Defendant, Reed Hein & Associates, LLC, d/b/a Timeshare Exit Team ("TET"), its principals and affiliates, and several attorneys, including Privett, for allegedly directing false and misleading advertisements to timeshare owners that induced them to breach their timeshare contracts. (Doc. 1, ¶ 1) The Complaint attempted to assert claims against Privett for contributory false advertisement (Count II); tortious interference with contractual relations (Count IV); violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V); and civil conspiracy to commit tortious interference (Count VI).

On February 15, 2019, Privett filed a Motion to Dismiss Plaintiffs' Complaint and Supporting Memorandum of Law. (Doc. 34) On May 23, 2019, the Court entered an Order granting the Motion, in part, and dismissing Counts II, V, and VI without prejudice (Doc. 59), amended May 29, 2019 to correct a scrivener's error (Doc. 60) (the "Order"). On June 10, 2019, Plaintiffs served an Amended Complaint for Damages and Injunctive Relief ("Amended Complaint") attempting to correct the pleading failures of Counts II, V, and VI. (Doc. 63) Despite Plaintiffs' efforts, the Amended Complaint does not correct the

---

[1] For the sake of brevity, Privett adopts and incorporates by reference the Introduction section of the Motion to Dismiss Wyndham's Amended Complaint (Doc. 63) by Defendant Reed Hein & Associates, LLC, Brandon Reed, Trevor Hein, Thomas Parenteau, and Happy Hour Media Group, LLC and supporting Memorandum ("TET's Motion to Dismiss").

deficiencies identified in the Order and does not sufficiently state claims under Counts II, V, and VI and, therefore, these counts should be dismissed with prejudice.[2]

## Memorandum of Law

### I. Standard of Review

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough, and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and must read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Federal Rules of Civil Procedure 8 and 10 require that all pleadings include "short and plain" statements of the pleader's claims set forth in "numbered paragraphs each limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 8(a), 10(b); *see also Kabbaj v. Obama*, 568 F. App'x 875, 879 (11th Cir. 2014). Allegations must be "simple,

---

[2] Privett does not move to dismiss Count IV, Tortious Interference with Contractual Relations. The time for responding to this Count is tolled while this motion is pending. *See, e.g., See McBride v. Liberty Mut. Fire Ins. Co.*, No. 617CV1639ORL37KRS, 2017 WL 4286316, at *1 (M.D. Fla. Sept. 22, 2017), *Jacques v. First Liberty Ins. Corp.*, No. 8:16-CV-1240-T-23TBM, 2016 WL 3221082, at *2 (M.D. Fla. June 9, 2016).

3

concise, and direct," Fed. R. Civ. P. 8(d)(1), and the pleading must not include mere labels, legal conclusions, or formulaic recitations of the legal elements of a claim, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a viable pleading must provide factual allegations sufficient to "state a claim for relief that is plausible on its face." *See id*. at 557 (noting that a pleading is deficient if it tenders "naked assertions" without "factual enhancement"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009).

Rules 8 and 10 work together "to require the pleader to present his claims discretely and succinctly, so that [1] his adversary can discern what he is claiming and frame a responsive pleading, [and 2] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted). Where the allegations of a complaint "'leav[es] the reader to guess at precisely what the plaintiff is claiming,' the court should order a repleader." *Holbrook v. Castle Key Ins. Co*., 405 F. App'x 459, 460 (11th Cir. 2010) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128 (11th Cir. 2001)).

## II. Argument

### A. COUNT II – Contributory False Advertisement

#### i. <u>Plaintiffs' conclusory allegations do not state an underlying claim for false advertisement</u>

Count II attempts to state a claim for contributory false advertising against Privett. To state a contributory false advertising claim, a plaintiff must adequately plead an underlying claim for false advertising. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, No. 12-60741, 2014 WL 1329359, at *17 (S.D. Fla. Mar. 31, 2014). To have standing, "a plaintiff must allege an injury to a commercial interest" in either (1) reputation, or (2)

sales. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). The injuries alleged must be "proximately caused by" the alleged misleading advertisements. *Id.*

The Order dismissed Count I of the Complaint, Plaintiffs' underlying claim for false advertising, because Plaintiffs lacked standing. In the Complaint, Plaintiffs alleged they suffered injury because Wyndham Owners stopped making payments on their timeshare contracts. However, Plaintiffs did "not allege that their injury flows directly from TET's advertising. None of the advertisements are alleged to have included instructions to Wyndham Owners that they should stop making payments." (Doc. 60, p. 6). Accordingly, the Court found that Plaintiffs' injury was too remote from TET's advertising pursuant to *Lexmark*.

In an attempt to remedy the Complaint's failures, relative to Privett, Plaintiffs added the first sentence to paragraph 102 and added paragraphs 104–106.[3] However, these additions fail to state the necessary causal link between TET's allegedly false advertisements and Plaintiffs' alleged injury related to the Wyndham Owners' purported improper termination of their contracts.[4] Plaintiffs still have not pled that there is an advertisement instructing or deceiving the Wyndham Owners to take such action. While Plaintiffs may

---

[3] Plaintiffs also added to paragraph 154 and added paragraphs 155, and 159–163. These paragraphs are not reincorporated into any of the counts against Privett.

[4] As described more fully in TET's Motion to Dismiss (*See* Section II. C.), Plaintiffs' new allegations state that TET's advertisements: 1) characterize timeshares as a "resort scam" (¶ 102); 2) *imply* (not expressly state) that timeshare contracts are unlawful (¶ 102); 3) state or *imply* in its advertising that timeshare companies will not release owners from their timeshare contracts (¶ 102); and 4) state [to prospective customers] that the customers' circumstances do not even matter in order to be exited (¶ 105).

believe, and have alleged, that TET instructs Wyndham Owners to terminate their contracts through client communications, <u>there is no advertisement</u> instructing them to do so. Thus, even taking the Plaintiffs' amended allegations as true, they do not state a claim for violation of the Lanham Act claim on that basis alone.

Further, in the Amended Complaint Plaintiffs raise a new injury—harm to their reputation. Plaintiffs now claim that Defendants' misleading advertisements caused them "reputational damage." According to Plaintiffs, examples of the misleading advertisements are contained in paragraphs 97 and 101. The misleading advertisements allegedly "cause[d] Wyndham Owners to believe that Wyndham will not help them exit their timeshares . . . and that the only solution is to use Defendants' competing 'exit' service." (Doc. 63, ¶ 155) Plaintiffs further allege, "Defendants' misleading advertising causes consumers to believe that Wyndham's business model is unlawful and that they were 'scammed' into their timeshares." (*Id.* ¶ 163)

However, none of the advertisements quoted in the Amended Complaint reasonably supports Plaintiffs' interpretations on their face. Accordingly, Plaintiffs have failed to plead proximate causation. *Lexmark*, 572 U.S. at 133 ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."). For example, in paragraph 101 Plaintiffs cite a TET website that allegedly provides a list of reasons a timeshare owner would want to use TET's services, which includes the timeshare owner is "part of [a] resort scam." Plaintiffs then draw the conclusion that TET's advertisement disparages Plaintiffs because it implies that "Wyndham Owners' Timeshare Contracts are unlawful . . . ." (Doc. 63, ¶ 102) The website referenced, like all of the cited

6

advertisements, does not even mention Plaintiffs and is not specifically directed to Wyndham Owners. It is wholly unreasonable to believe that advertisements directed to the public that address an industry at large can be the proximate cause of Plaintiffs' alleged injuries relating to specific (though not yet identified) owners. *See 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 972 (D. Minn. 2005) (*quoting Porous Media Corp. v. Pall Corp.*, 110 F. 3d 1329 (8th Cir. 1997) ("In a suit for money damages where a defendant misrepresented its own product but **did not specifically target** a competing product, plaintiff may only be one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage.")) (emphasis added).

The allegedly false advertisements are nothing more than general statements of TET's intention to assist timeshare owners in exiting their contracts and their success in doing so. (*See* Doc. 63, ¶ 97) Plaintiffs have again failed to allege any advertisement that has a causal link to the harm alleged and thus fail to state a claim for false advertising. In the absence thereof, there can be no claim against Privett for contributory false advertising. Having failed to correct the defects previously ruled on by the Court in the Order, Count II of the Amended Complaint should be dismissed with prejudice.[5]

> ii. <u>Plaintiffs do not allege Privett materially furthered the dissemination of the alleged false advertisements</u>

To plead a claim for contributory false advertisement, Plaintiffs must allege that (1) a third party "engaged in false advertising that injured the plaintiff", and (2) "the defendant

---

[5] In addition to the foregoing argument, Count I fails to state a claim for the reasons stated in Sections III. B. 3-5 of TET's Motion to Dismiss, which Privett adopts and incorporates by reference. For this reason as well, in the absence of a Lanham Act violation there can be no claim against Privett for contributory false advertising under the Lanham Act.

7

contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F. 3d 1248, 1277 (11th Cir. 2015). What's more, Plaintiffs must allege "that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Id.* The Amended Complaint fails to allege that Privett induced, caused, or in some way worked to bring about the false advertisement. Indeed, it makes no allegations specific to Privett with respect to any alleged false advertising.

Plaintiffs' allegations in support of their claim for contributory false advertisement against Privett consist, in total, of the following:

- [The Attorney Defendants] have contributed and continue to contribute to TET's false advertising by knowingly inducing or cause the conduct, or by materially participating in it.

- [The Attorney Defendants] explicitly or implicitly encourage the false advertising because they accept legal representation of the consumers deceived by the false advertising. Without [the Attorney Defendants'] willingness to accept those consumers as clients, TET could not advertise what they do.

- TET's false advertisements are public, serious, and widespread, therefore, [the Attorney Defendants] have full knowledge of such advertising and condone it.

- More than that, [the Attorney Defendants] each individually financially gain from the false advertisements in the form of client referrals and fee splitting with TET.

- In other words, in each of [the Attorney Defendants'] businesses derive much, if not all, of its revenue from the consumers solicited through the TET's advertising.

(Doc. 63, ¶¶ 170–74) These allegations are merely bald, conclusory recitations of the elements of a claim of contributory false advertisement; they do not satisfy the pleading

8

requirements set forth by the United States Supreme Court in *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678. Just as in *Duty Free*, "there are simply no facts in the complaint that suggest the existence of coordinated action or encouragement, much less inducement" between Privett and TET regarding the alleged false advertisements. *Duty Free*, 797 F.3d at 1279.

Plaintiffs allege no more than that Privett accepted clients allegedly derived through the false advertising and received fees. (*See, e.g.* Doc 63 114, 171, 173 and 174). There are no factual allegations that would establish, if true, any action, encouragement or inducement by Privett sufficient to establish a claim for contributory false advertisement. Alleging that Privett was aware of the false advertisements and he benefited from their dissemination alone is not enough.[6]

Although *Duty Free* discusses the possibility of plausibly inferring intentional participation through examination of various factors, the Amended Complaint's allegations do not support those factors.

> In determining whether a plaintiff has adequately alleged facts to support such a claim, we look to whether the complaint suggests a plausible inference of knowing or intentional participation, examining **[1]** "the nature and extent of the communication" between the third party and the defendant regarding the false advertising; **[2]** "whether or not the [defendant] explicitly or implicitly

---

[6] To the extent Plaintiffs argue that they have alleged Privett was involved in creating or disseminating the advertisements based on their various allegations as to the "Defendants" in Count I (*See, e.g.*, Doc. 63 ¶¶ 160-163), this must fail. First, these allegations are not reasserted in Count II. Second, the allegations are improperly vague and do not satisfy basic pleading requirements as to identify Privett's role. Rules 8 and 10 work together "to require the pleader to present his claims discretely and succinctly, so that [1] his adversary can discern what he is claiming and frame a responsive pleading, [and 2] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Fikes*, 79 F.3d at 1082.

9

encouraged" the false advertising; **[3]** whether the false advertising "is serious and widespread," making it more likely that the defendant "kn[ew] about and condone[d] the acts"; and **[4]** whether the defendant engaged in "bad faith refusal to exercise a clear contractual power to halt" the false advertising.

*Id.* at 1278. There are no allegations regarding the first and fourth factors at all. Plaintiffs regurgitate the language of the second and third factors, but without alleging any supporting facts. Thus, it is be reasonable to infer intentional participation by Privett under the permitted framework.

Plaintiffs' conclusory allegations in Count II do not meet the pleading requirements to state a claim. Plaintiffs do not allege any facts that would support, or even infer, that Privett "actively and materially furthered" the dissemination of false advertisements. *See Duty Free*, 797 F.3d at 1277. For these reasons also, Count II of the Amended Complaint should be dismissed with prejudice.

### B. COUNT V – FDUTPA

In Count V, Plaintiffs attempt to assert a claim for violation of FDUTPA against all Defendants. Fla. Stat. § 501.202. The Order dismissed Count V because Plaintiffs failed to state a claim under the Lanham Act. The Court did not rule upon the remaining grounds for dismissal stated in Privett's Motion to Dismiss. Just as before, the Court should dismiss the Count V pursuant to Plaintiffs' failure to state a claim under the Lanham Act. In addition, Count V should be dismissed with prejudice because Plaintiffs fail to allege any specific deceptive or unfair act by Privett.

To state a FDUTPA claim, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). An individual can be liable for deceptive

practices that harm consumers if he either "participated directly in the deceptive practices or acts or [he] possessed the authority to control them." *Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 4th DCA 2004). "A defendant directly participates in deception when it engages in deceptive acts or practices that are injurious to customers with at least some knowledge of the deception. Similarly, a defendant who knows of another's deceptive practices and has the authority to control those deceptive acts or practices, but allows the deception to proceed, may be held liable for engaging in a deceptive practice injurious to consumers." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 169–70 (2d Cir. 2016) (interpreting Federal Trade Commission Act); *see also F.T.C. v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014) (same).[7] "[I]t has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013).

In Count V, Plaintiffs improperly group all Defendants in their allegations of deceptive and unfair trade practices. (Doc. 63, ¶¶ 220) For example, Plaintiffs allege "Defendants are engaged in certain deceptive and unfair practices" such as "luring Wyndham

---

[7] Federal cases interpreting the FTCA are persuasive authority for FDUPTA claims. The statute provides that Florida courts are to give "due consideration and great weight . . . to the interpretations of the Federal Trade Commission and the federal courts relating to . . . the Federal Trade Commission Act." Fla. Stat. § 501.204. Florida courts routinely cite to such cases when interpreting FDUTPA. *See, e.g.*, *Dep't of Legal Affairs v. Rogers*, 329 So. 2d 257, 263 (Fla. 1976) ("The terminology 'unfair methods of competition and unfair or deceptive acts or practices' utilized in the act is the same as employed in the Federal Trade Commission Act . . . ."); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 453 (Fla. 1st DCA 1985).

11

Owners into procuring Defendants' illusory services with false advertising." (*Id.*). However, Plaintiffs' specific allegations regarding the contributory false advertising make clear that Privett did not participate in the false advertising apart from "knowingly accep[ting] legal representation." (*Id.* at ¶ 171) Florida law provides that Privett cannot be liable under FDUTPA for others' deceptive or unfair acts unless he "participated directly in the deceptive practices or acts or [he] possessed the authority to control them." *Wyndham Int'l*, 869 So. 2d at 598. Plaintiffs have not alleged that Privett participated directly in the false advertising, any of the alleged deceptive or unfair acts, or that he had the authority to control the actions of the other Defendants. (*Id.* at ¶ 220). Nor may this be inferred from the allegations.

The only specific act attributed to Privett is sending presuit demand letters. (*Id.* at ¶¶ 126-27). However, pre-suit demand letters are not included in the statute's definition of "trade or commerce" and cannot give rise to a cause of action under FDUTPA. The statute defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." § 501.203(8). Importantly, Florida courts have held that legal services, including sending presuit demand letters, are not included in the definition of "trade or commerce" for purposes of FDUTPA. *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010) ("Plaintiffs' attempt to include pre-suit demand letters within the scope of the term 'trade or commerce' simply misses the mark."); *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007), *aff'd*, 288 F. Appx. 571 (11th Cir. 2008) (finding that pre-suit representations do "not fall within the

O2480894.v5

purview of 'trade or commerce'").

Accordingly, Plaintiffs Amended Complaint contains no allegations of a specific deceptive or unfair act by Privett and Count V against Privet must be dismissed with prejudice.

### C.  COUNT VI - Civil Conspiracy

In Count VI, Plaintiffs attempt to state a claim against Privett for civil conspiracy to commit tortious interference.  The Order dismissed Count VI pursuant to the intracorporate conspiracy doctrine, which generally provides that a principal cannot conspire with its agent. In dismissing, the Court analyzed a limited exception to the doctrine where the agent "has an independent personal stake, apart from that of the corporation, in achieving the object of the conspiracy."  The Court concluded that the exception did not apply because "the financial fortunes of SGB and Privett are not alleged to have been tied to the success of the conspiracy" and "even if such a connection existed, the fact that SGB and Privett were getting paid by TET means that their personal stake was not independent of the corporation's."

It appears that the only allegation added to the Amended Complaint to address the pleading failures discussed in the Order is contained in paragraph 239:

> The Attorney Defendants (SGB, Sussman, and Privett) are not outside counsel to TET. While they have "bulk retainer" agreements with TET, those agreements are meant to purportedly create attorney-client relationships between the Attorney Defendants and the Wyndham Owners (which they also not do). Thus, the Attorney Defendants are not lawyer agents of TET. They are independent entities acting in conspiracy with TET. They too have an independent financial benefit derived from participating in the conspiracy.

Plaintiffs' new allegation still does not explain how Privett's personal stake differed

13

from TET's personal stake.[8]  Plaintiffs simply state that Privett has "an independent financial benefit derived from participating in the conspiracy."  Plaintiffs have failed to assert any requisite facts and to correct the deficiency addressed in the Order.  Accordingly, Count VI continues to suffer the same shortcomings which were the basis for this Court's prior dismissal and Count VI should be dismissed with prejudice.

### III.   Conclusion

Based on the foregoing, Defendant Ken B. Privett respectfully requests that this Court dismiss, with prejudice, Counts II, V, and VI against Privett in Plaintiffs' Amended Complaint. In the alternative, Privett respectfully requests this Court dismiss the claims against Privett with leave to amend.

### CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system which will send notice of electronic filing to all CM/ECF participants.

> s/ Nichole Mooney
> NICHOLE MOONEY
> Florida Bar No. 0057908
> TIMOTHY W. SOBCZAK
> Florida Bar No. 84707
> 420 South Orange Avenue, Suite 700
> P.O. Box 2346 (ZIP 32802-2346)
> Orlando, FL 32801
> Telephone:  (407) 841-1200
> Fax:  (407) 423-1831
> Email: nmooney@deanmead.com
>            tsobczak@deanmead.com

---

[8]   Privett adopts and incorporates by reference the arguments contained in Section II. E. of his Motion to Dismiss (Doc. 34).