IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO:  18-CV-02171

WYNDHAM VACATION OWNERSHIP,
INC., WYNDHAM VACATION RESORTS,
INC., WYNDHAM RESORT DEVELOPMENT
CORPORATION, SHELL VACATIONS,
LLC, SVC-WEST, LLC, SVC-AMERICANA,
LLC and SVC-HAWAII, LLC

      Plaintiffs,

vs.

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, BRANDON REED,
TREVOR HEIN, THOMAS PARENTEAU,
HAPPY HOUR MEDIA GROUP, LLC,
MITCHELL R. SUSSMAN, ESQ., d/b/a
THE LAW OFFICES OF MITCHELL
REED SUSSMAN & ASSOCIATES,
SCHROETER GOLDMARK & BENDER,
P.S. and KEN B. PRIVETT, ESQ.,

      Defendants.

_____/

## SCHROETER GOLDMARK & BENDER, P.S.'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT COUNTS II, V, AND VI WITH PREJUDICE AND SUPPORTING MEMORANDUM OF LAW

The Co-Defendant, Schroeter Goldmark & Bender, P.S. (herein above and/or after, "Schroeter Goldmark & Bender" or "SGB"), by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves for the entry of an Order by this Honorable Court dismissing Counts II, V, and VI of the Amended Complaint, DE 63, with

prejudice for the failure to state a cause of action against SGB upon which relief can be granted, as more specifically set forth herein below.[1]

## INTRODUCTION

The allegations pled against SGB in the Amended Complaint remain virtually indistinguishable from those found to be factually and/or legally deficient by this Honorable Court through Orders dated May 23, 2019 and May 29, 2019 and when granting the underlying Motions to Dismiss.[2] Indeed, of the two hundred forty-four (244) paragraphs in the Amended Complaint, only eighteen (18) alter the Plaintiffs' initial attempts to state the same causes of action now pending in these proceedings.[3] Despite these variances, the Plaintiffs (hereinafter collectively or individually the "Plaintiffs" or "Wyndham") remain unable to plead any losses and/or damages proximately caused by an advertisement of a Co-Defendant in violation of the Lanham Act.[4]

This Court previously dismissed the Plaintiffs' attempts to state a cause of action for contributory false advertising under the Lanham Act against SGB and in a related Count relying upon a purported violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") for this very reason.[5] The Plaintiffs' amended versions of these same two claims, now attempted

---

[1] Consistent with this Court's May 29, 2019 Order, DE 60, SGB hereby suspends its filing and service of an answer and any affirmative defense(s) to Count IV of the Amended Complaint, Tortious Interference with Contractual Relationship, SGB. DE 63, ¶¶ 188-213, pending the ruling(s) on this Motion to Dismiss, and in accordance with corresponding Eleventh Circuit precedent. *See, e.g., McBride v. Liberty Mut. Fire Ins. Co.*, No. 617CV1639ORL37KRS, 2017 WL 4286316, at *1 (M.D. Fla. Sept. 22, 2017), *Jacques v. First Liberty Ins. Corp.*, No. 8:16-CV-1240-T-23TBM, 2016 WL 3221082, at *2 (M.D. Fla. June 9, 2016); *Taylor v. Pekerol*, No. 5:14-CV-96-RH-GRJ, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016); *Webber v. Nat'l Gen. Assurance Co.*, No. 4:14CV490-MW/CAS, 2015 WL 11109366, at *1 (N.D. Fla. Oct. 20, 2015); *Beaulieu v. Bd. of Trustees of Univ. of W. Fla.*, No. 3:07CV30 RVEMT, 2007 WL 2020161, at *1 (N.D. Fla. July 9, 2007). Furthermore, the Plaintiffs' counsel has confirmed no waiver or default by SGB due to any unanswered claims, if not subject to a simultaneously filed motion, would be alleged while any of its pending motions remain unresolved or until otherwise directed by this Court.

[2] *See* DE 59, DE 60.

[3] *Compare* Complaint, DE 1, *with* Paragraphs 8, 102, 104-106, 155, 159-163, 216, 221, 234, 238, 239, 115-116 of Amended Complaint, DE 63.

[4] *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).

[5] *See* DE 60.

through Counts II and V of the Amended Complaint, must be dismissed for the failure to state the respective causes of action against SGB upon which relief can be granted.[6]

Separately, the Plaintiffs remain unable to plead how SGB's representation of certain timeshare owners contributed to a purported violation of the Lanham Act[7] and/or how those legal services satisfy the FDUPTA defined prerequisite of "trade or commerce."[8] Accordingly, Counts II and V of the Amended Complaint must be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Further, SGB's retention by the Co-Defendant Reed Hein & Associates, LLC (hereinafter "Reed Hein") to provide legal services on behalf of its timeshare owners/customers once again precludes the Plaintiffs' related attempt to state a conspiracy cause of action, as a matter of law.[9] Neither the Plaintiffs' initial Complaint nor its amended pleading survives the application of the intra-corporate conspiracy doctrine protecting attorneys when simply pursuing legal remedies on behalf of clients.[10] Therefore, the Plaintiffs' continuing inability to state a conspiracy cause of action in Count VI of the Amended Complaint must be dismissed with prejudice as well.

The collusive and contrived attempts of the Plaintiffs and other related interests including, but not limited to, the American Resort Development Association, to intimidate timeshare exit companies and the attorneys retained thereby to relieve timeshare owners of unduly burdensome,

---

[6] *See Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-40 (2014). Wyndham seeks the termination of any relationship between the law firm Co-Defendants and timeshare owners so that the latter may "lawfully terminate . . . [their] contract[s] for free, or at a much lower cost, by appealing directly to Wyndham." DE 63, ¶ 208. According to Wyndham, "in many instances, a lawful termination is only available to consumers directly from Wyndham . . . through the Ovation® Program." DE 63, ¶ 221. Wyndham would prefer to control its contractual relationships including reliance upon statutory provisions prohibiting any rescission beyond the prescribed time, regardless of the related circumstances. *See* DE 63, ¶ 23.

[7] *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).

[8] *See Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1374–76 (S.D. Fla. 2010).

[9] *See Lipsig v. Ramlawi*, 760 So. 2d 170, 180-181 (Fla. 3d DCA 2000).

[10] *See id. See also O'Boyle v. Sweetapple*, No. 9:14-cv-81250, 2015 WL 13574304 (S.D. Fla. June 4, 2015).

if not unconscionable, financial obligations must be exposed and foreclosed.[11] More specifically, the Plaintiffs' conclusory, implausible, and contradictory attempts to state causes of action against SGB in Counts II, V, and VI of the Amended Complaint must be dismissed with prejudice pursuant to the case law interpreting each and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## RELIEF REQUESTED

According to the Plaintiffs, timeshare owners are attracted by the false and/or misleading promises of Reed Hein to provide a "legal," "lawful," "legitimate", "safe," and "guaranteed" method of relief from related contracts,[12] and by false and/or misleading statements attributed to the undifferentiated Co-Defendants that Wyndham refuses to release those owners from those same obligations.[13] Wyndham alleges that Reed Hein's advertisements are false and/or misleading because neither that company nor the other Co-Defendants, including the law firms,[14] can deliver the promised relief.[15] Wyndham alleges SGB and the other law firm Defendants assist Reed Hein in this deception by providing minimal services to the timeshare owners that result in no

---

[11] As this Court has previously recognized, the "multi-billion dollar 'timeshare' industry" has engaged in a "legal melee" and "have gone on the offensive against law firms and others who allegedly disrupt 'valid legal contracts between [timeshare] resorts and their [timeshare] owners." *Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, No. 6:17-cv-1542-Orl-37KRS, 2017 WL 10084346, at *1 (M.D. Fla. Nov. 30, 2017). Section 768.295 of the Florida Statutes, otherwise known as Florida's anti-SLAPP statute, however, specifically prohibits strategic lawsuits, such as the instant action, which impede the rights of free speech in connection with public issues, including the right to petition governmental entities for the redress of grievances, and further provides for the expeditious disposition of any such lawsuits. *See* § 768.295, Fla. Stat. It is SGB's position that this action and others initiated by timeshare developers are intended to intimidate, defraud, and/or otherwise disadvantage timeshare consumers and their attorneys and to thereby restrict or inhibit timeshare owners' right to petition the judicial branches of government for relief from the unconscionable business practices of timeshare resort companies. Notably, the Southern District of California recently granted SGB's Anti-SLAPP Motion in a lawsuit initiated by timeshare developer Welk against Reed Hein, SGB, and Privett, which effectively dismissed all the claims alleged against SGB in that case without leave to amend based on California's anti-SLAPP statute. *See* Order, DE 80, *Welk Resort Grp, Inc., et al. v. Reed Hein & Associates, LLC, et al.*, Case No. 3:17-cv-01499-L-AGS, United States District Court for the Southern District of California.

[12] *See* DE 63, ¶¶ 5-6, 10-14, 92-103, 107-108.

[13] *See* DE 63, ¶¶ 104-106, 155, 163.

[14] For ease of reference, the term "other law firm Defendants" hereinafter refers collectively to the Co-Defendants Mitchell R. Sussman, Esq. d/b/a The Law Offices of Mitchell Reed Sussman & Associates and Ken B. Privett, Esq.

[15] *See* DE 63, ¶¶ 11-27, 64-78, 92-111.

cancellations of the underlying contracts, ultimately terminated through foreclosure proceedings,[16] and in the timeshare owners taking their business away from Wyndham.[17] Wyndham's allegations rely upon the receipt of purportedly boilerplate demand letters advising of the interests of identified SGB clients to terminate timeshare memberships.[18]

SGB moves for the entry of an Order dismissing with prejudice the Plaintiffs' continuing but futile pleading attempts in Counts II, V, and VI of the Amended Complaint because the allegations included respectively therein for contributory false advertising under the Lanham Act, a violation of FDUTPA, and/or civil conspiracy fail to state a cause of action in accordance with the applicable law.[19]

## BASIS FOR THE REQUEST

This Court previously determined the Plaintiffs' failure to plead causes of action for contributory false advertising or a violation of FDUTPA against SGB due to the absence of viable Lanham Act allegations.[20] Those prior allegations relied upon the Plaintiffs' purported injuries sustained as a result of the decisions by timeshare owners to stop making payments under corresponding contracts.[21] As this Court observed, none of the advertisements relied upon by the Plaintiffs in the initial Complaint included instructions directing Wyndham timeshare owners to

---

[16] *See* DE 63, ¶¶ 6-11, 13-19, 112-127.

[17] *See* DE 63, ¶¶ 104-106.

[18] *See* DE 63, ¶¶ 119, 125-127; DE 63-9.

[19] *See Eiber Radiology, Inc. v. Toshiba America Medical Systems, Inc.*, 673 Fed. Appx. 925, 928-30 (11th Cir. 2016) (noting that the Eleventh Circuit has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint," nor "concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Id.* at 930). *See also Stubblefield v. Follett Higher Educ. Group, Inc.*, No. 8:10–CV–824–T–24–AEP, 2010 WL 2025996, at *4 (M.D.Fla. May 20, 2010) (dismissing count for violation of FDUTPA with prejudice because the court could not surmise how the defendant's conduct could be transformed into a FDUTPA violation to support the plaintiff's Whistleblower claim).

[20] *See* DE 60, at 5-7, 8-9.

[21] *See* DE 60, at 6.

stop making payments.[22] Instead, the Plaintiffs alleged that Reed Hein instructed the Wyndham timeshare owners to stop making payments <u>after</u> soliciting them through advertising.[23]

The allegations of the Amended Complaint attempt to address the deficiencies found by this Court in the first Complain but fail to plead how the Plaintiffs suffered any injury proximately caused by Reed Hein's purportedly false or misleading advertising about Wyndham or its business practices. Despite the Plaintiffs' conclusory assertions of reputational damage, no advertisement identified in or attached to the Amended Complaint even mentions Wyndham and/or characterizes the business practices thereof as a "resort scam."[24] Accordingly, the allegations of the Amended Complaint afford this Court no understanding of how Reed Hein's purportedly false or misleading advertising about Wyndham could have possibly predated the injuries claimed by those Plaintiffs.

Further, the Plaintiffs allege the undifferentiated Defendants either falsely stated or implied that Wyndham refused to release its timeshare owners from their contractual obligations in order to divert any resulting exit program business presumably to Reed Hein and/or others.[25] None of the advertisements incorporated in the Amended Complaint, however, include representations of Wyndhams' refusals to relieve timeshare owners of their contractual obligations and/or of any of those Plaintiffs engaged in competition for timeshare exit program business.[26]

Throughout the balance of the amended pleading, the Plaintiffs contradict their assertions that the Defendants misrepresented Wyndhams' willingness to release timeshare owners from contractual obligations. For example, the Plaintiffs concede Reed Hein advertised that the transfer of timeshare ownership may depend upon "governing documents" issued by timeshare resort

---

[22] *See* DE 60, at 6.
[23] *See* DE 60, at 6 (citing DE 1, ¶¶ 12, 95-102, 135, 138).
[24] *See* DE 63, ¶¶ 101, 102.
[25] *See* DE 63, ¶¶ 104-106, 155, 163.
[26] *See* DE 63, ¶¶ 96-108.

officials themselves.[27] The Plaintiffs further claim that Reed Hein's purpose behind advising Wyndham timeshare owners to stop making payments was to "creat[e] . . . the misconception that Wyndham will be more willing to release Wyndham Owners from their Timeshare Contracts . . . ."[28] Elsewhere, the Plaintiffs rely upon insulation from any exposure to the cancellation of timeshare contracts beyond a statutorily prescribed time.[29]

The Plaintiffs also rely upon letters forwarded to them by SGB on behalf of the timeshare owner/clients. According to the Plaintiffs, these letters expressly demand that Wyndham release the individual owners from their contracts.[30] The Plaintiffs, thus, inherently contradict themselves when claiming on the one hand that the Defendants advertised Wyndham would not release timeshare owners from their contracts but on the other hand acknowledge SGB's letters to them demanded that relief. When read in its entirety, the Amended Complaint fails to allege an identifiable injury proximately caused by any advertising of a Co-Defendant. Accordingly, the Plaintiffs remain unable to allege a plausible cause of action against SGB for contributory false advertising under the Lanham Act or for a violation of FDUTPA, as a matter of law.

Although the Court did not address in its previous Orders[31] additional grounds for why these two claims against SGB must fail, the Amended Complaint, like its predecessor, includes no allegations or bases to infer how SGB's legal services caused or contributed to a purported violation of the Lanham Act.[32] Similarly, neither of the two pleadings attempts to allege how SGB's pursuit of legal remedies on behalf of certain timeshare owners constitute "trade or commerce" under FDUTPA.[33] Accordingly, the Plaintiffs remain unable to plead how any alleged

---

[27] *See* DE 63, ¶ 97(c)(iii).
[28] *See* DE 63, ¶ 110 (emphasis added).
[29] *Compare* DE 63, ¶¶ 23, 97(a)-(e) *with* DE 63, ¶¶ 104-106, 155, 163.
[30] *See* DE 63, ¶ 68; DE 63-9.
[31] *See* DE 59, DE 60.
[32] *See Duty Free Americas, Inc.*, 797 F.3d at 1277.
[33] *See Kelly*, 681 F. Supp. 2d at 1374–76.

conduct by SGB contributed to Reed Hein's purported violation of the Lanham Act or constituted a FDUTPA violation. Therefore, the allegations pled against SGB in Counts II and V of the Amended Complaint should be dismissed with prejudice.[34]

The Plaintiffs also attempt to circumvent SGB's dismissal from Count VI of the Amended Complaint, pursuant to the intra-corporate conspiracy doctrine, when claiming that firm performed no outside counsel services for Reed Hein and, therefore, was precluded from invoking a lawyer/agent relationship.[35] The allegations of the Amended Complaint, however, establish the requisite principal/agent relationship underlying the intra-corporate conspiracy doctrine. For example, the Plaintiffs allege SGB entered into "retainer agreements directly with TET, *not* with any of the 'clients' solicited by the non-lawyer Defendants."[36] They also claim that SGB is "directed" to have no contact with any of Reed Hein's clients, including any Wyndham timeshare owners.[37] According to the Plaintiffs, SGB is a necessary vehicle through which services are actually provided and without which Reed Hein's "business would not function."[38] Undeniably, the Plaintiffs allege the existence of a large-scale conspiracy wherein Reed Hein, along with its "agents" and "lawyers," engage in efforts to mislead Wyndham timeshare owners into stopping their contractually required payments.[39] Accordingly, the Amended Complaint alleges an agency relationship between SGB and Reed Hein for the purpose of providing legal services to its timeshare owner clients. Thus, no conspiracy can exist between Reed Hein and SGB as a matter of Florida law.[40]

---

[34] *See Eiber Radiology, Inc.*, 673 Fed. Appx. at 928-30 (11th Cir. 2016);*Stubblefield*, 2010 WL 2025996, at *4.
[35] *See* DE 63, ¶¶ 8, 239.
[36] *See* DE 63, ¶ 7.
[37] *See* DE 63, ¶ 9.
[38] *See* DE 63, ¶¶ 64, 69, 91,
[39] *See* DE 63, ¶ 110.
[40] *See McLeod v. Barber*, 764 So. 2d 790, 793 (Fla. 5th DCA 2000) ("[S]ince a corporation is a legal entity which can only act through its agents and employees, a corporation cannot conspire with its own agents or employees unless the co-conspiring corporate agents are alleged to possess a personal stake in achieving the object of the conspiracy which

For the reasons stated in this Motion, the Plaintiffs' attempts to include SGB in Counts II, V, and VI of the Amended Complaint must be dismissed for the failure to state a cause of action against that Co-Defendant, upon which relief can be granted.

## MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT OF THE REQUEST

### I.    Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the facts alleged in the complaint as true, draw all reasonable inferences in the plaintiff's favor, and limit its review to the four corners of the complaint. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). To survive a Rule 12(b)(6) motion, however, a plaintiff's factual allegations, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard requires more than a possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, a court is not required to accept a plaintiff's factual claims that are "internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party." *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997), *order clarified on reconsideration in Response Oncology, Inc. v. Metrahealth Ins. Co.*, No. 96-1772-CIV, 1997 WL 33123678 (S.D. Fla. July 29, 1997)).

---

is separate and distinct from the corporation's interest."). *See also Cedar Hills Properties Corp. v. Eastern Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991) (no conspiracy determined to exist between leasing agent and realty and development corporation, although they were distinct entities, because the leasing agent was acting as the agent of the development corporation when it managed its shopping center and was not acting for its personal gain or acting outside the scope of its capacity as its principal's agent.).

As discussed in this Motion, the Plaintiffs fail to assert a plausible factual basis to support claims against SGB for contributory false advertising under the Lanham Act, a violation of FDUTPA, or civil conspiracy. Rather, the Plaintiffs rely upon contradictory and conclusory allegations of wrongdoing by SGB that this Court should not countenance as true. The dismissal of Counts II, V, and VI of the Amended Complaint as asserted against SGB without leave to amend, therefore, is appropriate and justified.

## II.     Count II for Contributory False Advertising in Violation of the Lanham Act Fails to State a Cause of Action Against SGB.

The Eleventh Circuit has recognized the validity of a claim for contributory false advertising under the Lanham Act when a plaintiff pleads: (1) a third party directly engaged in false advertising causing injury to the plaintiff; and, (2) the defendant "contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *See Duty Free Americas, Inc.*, 797 F.3d at 1277. Wyndham has failed to sufficiently plead either of these essential elements against SGB for contributory false advertising pursuant to § 43(a) of the Lanham Act.

A.     <u>Wyndham Has Failed to Allege Reed Hein Engaged in False Advertising Causing Injury to the Plaintiffs.</u>

To plead an injury caused by the false advertising of a third party, a plaintiff must allege:

(1) the . . . statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and, (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

The Supreme Court in *Lexmark Int'l Inc. v. Static Control Components, Inc.*, further clarified that the Lanham Act "extends only to plaintiffs whose interests fall within the <u>zone of interests</u> protected by the law invoked." 572 U.S. at 129 (emphasis added). Put another way, the "zone of interests" test which applies to all statutorily created federal causes of action "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably assumed that' Congress authorized that plaintiff to sue." *Id.* at 129-30.

Within the context of false advertising, the Lanham Act's goal of "protect[ing] persons engaged in such commerce against unfair competition" is implicated. *Id.* at 131 (citing 15 U.S.C. § 1127). However, to come within the zone of interests in a false advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales, but an injury to a hoodwinked third party consumer is insufficient to invoke the protection of the Lanham Act. *Id.* at 131-32. Accordingly, to the extent the Plaintiffs rely on allegations of injury suffered by any timeshare owners as a consequence of false and misleading advertising by Reed Hein, these do not serve as a proper predicate for a Lanham Act claim. *Id.*

In *Lexmark*, the Supreme Court also held that along with the zone of interests test, a proximate cause analysis must be conducted to sue for false advertising under the Lanham Act. 572 U.S. at 134. Therefore, to prevail, a plaintiff "ordinarily must show economic or reputational injury <u>flowing directly</u> from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133 (emphasis added). However, proximate causation cannot be established when a purported deception produces injuries to a fellow commercial actor that in turn affects the plaintiff. *Id.* at 133-34.

In this case, the advertisements complained of are not directed against Wyndham but against the timeshare industry as a whole.[41] These quoted advertisements do not reference or disparage any particular timeshare resort or developer nor any specific products offered by any such entities.[42] They certainly contain no disparaging remarks about Wyndham or its timeshare exit services.[43] The Plaintiffs' conclusory allegations of disparagement and reputational harm, thus, are contradicted by the advertisements themselves which fail to demonstrate any economic or reputational injury to the Plaintiffs that can be directly tied to the advertisements.[44]

Thus, the Plaintiffs' reliance on the *Lexmark* case is entirely misplaced because the Supreme Court did not contemplate the imposition of liability against a defendant pursuant to the Lanham Act when the alleged false advertising was as disconnected from a plaintiff's reputation and its specific products as is the case here.[45] The Supreme Court found that the plaintiff Static Control had sufficiently alleged that the defendant Lexmark had "falsely advertised" that the plaintiff had "infringed Lexmark's patents." 572 U.S. at 138. Accordingly, the Supreme Court found that this was sufficient under traditional proximate causation principles to demonstrate a reputational injury which may be shown either "where a defendant denigrates a plaintiff's product by name" or "where the defendant damages the product's reputation by, for example, equating it with an inferior product. *Id.* Again, the Plaintiffs in the case at bar do not allege with any requisite particularity beyond their insufficient conclusory and unsupported statements of wrongdoing that

---

[41] *See* DE 63, ¶¶ 5-6, 10-14, 92-108.
[42] *See* DE 63, ¶¶ 5-6, 10-14, 92-108.
[43] *See* DE 63, ¶¶ 5-6, 10-14, 92-108.
[44] *See* DE 63, ¶¶ 5-6, 10-14, 92-108.
[45] The Plaintiffs cite to *Lexmark* at various points in the Amended Complaint for several propositions: 1. that under the Lanham Act an injury flows directly from the audience's belief in disparaging remarks made by a defendant regarding the plaintiff's business; 2. that a plaintiff can be directly injured under the Lanham Act by a misrepresentation even where a third party, such as Wyndham's timeshare owners, and not the plaintiff relied on it; and 3. that plaintiff can be injured under the Lanham Act even where the causal chain linking a plaintiff's injuries to "consumer confusion" arising from false advertising is not direct. *See* DE 63, ¶¶ 1, 155, 159, 163.

the Reed Hein advertisements specifically targeted Wyndham's products or Wyndham's reputation.[46]

The *Lexmark* Court also found that the plaintiff alleged adequate proximate causation even though it was not a direct competitor of the defendant's by alleging that its microchips were necessary for and had no other use than to refurbish the defendant's toner cartridges. 572 U.S. at at 139. Therefore, it followed that any false advertising that reduced the remanufacturers' business, although not causally direct, would necessarily also injure the plaintiff. *Id.*

The facts alleged in the Amended Complaint, however, are completely inapposite to the circumstances underlying the *Lexmark* findings and conclusions of law. The inferences in the Amended Complaint of its reliance upon the *Lexmark* authority to suggest the services of Reed Hein, and/or the attorneys retained thereby, including SGB, are necessary for and have no use other than to accommodate Wyndham's business interests are patently absurd. Accordingly, the Plaintiffs remain unable to allege any injury proximately caused by the Reed Hein advertising.

B.    Wyndham Has Failed to Demonstrate False or Misleading Advertising by Reed Hein.

Under the Lanham Act, a plaintiff may base its claim not only on statements that are literally false, but also on those that are misleading when considered in their full context. *Intertape Polymer Corp v. Inspired Technologies, Inc.*, 725 F. Supp. 2d 1319, 1333 (M.D. Fla. 2010) (citations omitted). Importantly, "[i]f an advertisement is not literally false, then the plaintiff must demonstrate that customers were actually deceived." *Id.* When evaluating either the falsity of an advertisement or whether an advertisement misled a customer, a court is required to examine the advertisement in its entirety, rather than examining segments taken out of context and read

---

[46] *See* DE 63, ¶¶ 5-6, 10-14, 92-108.

"separately and in isolation from each other." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1377 (S.D. Fla. 2010).

Statements that are considered to be opinions or mere puffery generally are not actionable under the Lanham Act. *See Intertape Polymer Corp*, 725 F. Supp. 2d at 1333; *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999), *aff'd sum. nom.* 207 F.3d 663 (11th Cir. 2000). Puffery has been described as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *BellSouth*, 45 F. Supp. 2d at 1320. *See also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

Similarly, predictive statements not lending themselves to "empirical verification" constitute opinions or puffing and fall outside of the scope of the Lanham Act. *See, e.g.*, *Global Tech Led, LLC v. Himluz Int'l Corp.*, No: 2:15–cv–553–FtM–29CM, 2017 WL 588669, at *6 (M.D. Fla. 2017) (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); *Advisors Excel, L.L.C. v. Scranton*, No. 14-60558-CIV-MIDDLEBROOKS, 2014 WL 12543802, at * 4 (S.D. Fla. Sept. 15, 2014) (listing examples of non-actionable statements of opinion, including predicted outcomes of future events).

Wyndham incorporates by reference and quotation the contents of a Reed Hein website and allegedly constituting actionable false or misleading statements under the Lanham Act.[47] Many of the statements that purportedly appear on Reed Hein's website include non-actionable statements of opinion or puffery.[48] None of these Reed Hein statements "guarantee" certain results,

---

[47] *See* DE 63, ¶¶ 5, 13, 92-108.

[48] Reed Hein's statements regarding the anticipated extrication of timeshare owners from their timeshare contracts, *see, e.g.*, DE 63, ¶ 97(a)-(e), 98, 102, predict future events and are not actionable. *See Global Tech Led, LLC,*  2017 WL 588669, at *6. Likewise, statements regarding the superiority of Reed Hein, *see, e.g.*, DE 63, ¶¶ 97(a)(ii), (d)(i), are non-actionable puffery. *See Intertape Polymer Corp.*, 725 F. Supp. 2d at 1334 ("industry leading" is classic, non-actionable puffery)). Likewise, statements concerning the safety or legitimacy of Reed Hein's business or statements concerning timeshare owners' potential need to terminate their timeshare contracts, *see, e.g.*, DE 63, ¶¶ 97(c), 100-101, do not give the requisite "impression that [] [they] describe[] actual facts about the plaintiff or the activities in

including the termination of the timeshare owners' contracts, despite Wyndham's Amended Complaint allegation to the contrary.

Rather, Reed Hein makes it clear that 100% of the money paid to it by a timeshare owner for the related services will be returned should no exit from an underlying contract be realized.[49] Count II of the Amended Complaint includes no allegations or any basis to infer that Reed Hein's money-back guarantee or any of its other statements were literally false or that customers were actually deceived.[50]

To prevail on a related claim against SGB, Wyndham must allege facts to support allegations that, although not literally false, the Reed Hein money-back guarantee advertisement "misled, confused, or deceived the consuming public." *See Legal Force RAPC Worldwide, P.C.*, 2018 WL 2387637, at *3. Wyndham "cannot obtain relief by arguing how consumers could react; [the plaintiff] must show how consumers actually do react." *See id.* (quoting *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3rd Cir. 1990)) (emphasis in original).  Count II includes no facts or basis to infer timeshare owners were <u>actually</u> deceived by these statements of guarantee or any other purportedly false statements made by the Defendants concerning Wyndham and its position on timeshare exits.[51]

---

which plaintiff participated" sufficient to determine the statements were actionable facts. *See Advisors Excel, L.L.C.*, 2014 WL 12543802, at * 4.

[49] *See* DE 63, ¶¶ 97(d)(i)-(ii), 101.

[50] Wyndham's conclusory allegations alone fail to establish the literal falsity of the identified statements. Wyndham never alleges Reed Hein failed to refund fees paid to it by timeshare owners after unsuccessfully attempting to achieve exits from timeshare contracts. *See Legal Force RAPC Worldwide, P.C. v. Trademark Information Int'l LLC*, No. 17-cv-07354-MMC, 2018 WL 2387637, at *3, *3, n. 3 (N.D. Cal. May 25, 2018) (noting the plaintiff failed to allege a statement that "guarantee[s] your trademark gets filed, or your money back" was "literally false" because no facts were included to show the absence of fees refunded to persons who had paid those amounts, and despite the denial of their applications by the United States Patent and Trademark Office).

[51] In Count I pled only against Reed Hein and its officers for false advertising in violation of the Lanham Act, but incorporated by reference into Count II through Paragraph 166 thereof, the Plaintiffs allege "misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public" and were "<u>likely</u> to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or to utilize the Ovation Program." DE 63, ¶¶ 152-53 (emphasis added). Nor do the Plaintiffs allege in Count II that consumers were <u>actually</u> deceived by the misleading or false Reed Hein advertising. DE 63, ¶¶ 166-176. As discussed

Accordingly, Wyndham has failed to satisfy the first element of contributory false advertising under the Lanham Act. *See Duty Free Americas, Inc.*, 797 F.3d at 1277.

C.     Wyndham Has Failed to Plead that SGB Contributed to Reed Hein's Allegedly False Advertising, as a Matter of Law.

Count II includes no allegations or the basis for a plausible inference that SGB contributed to Reed Hein's alleged false advertising "either by knowingly inducing or causing the conduct, or by materially participating in it," nor do the mere conclusory allegations as pled suffice. *See id.*

In *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, the Eleventh Circuit clarified that to state a cause of action for false advertising by a third party, "the plaintiff must allege that the defendant had the necessary state of mind—in other words that it 'intended to participate in' or 'actually knew about' the false advertising." *See id. (citing Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.,* 967 F.2d 1516, 1522 (11th Cir. 1992)). The plaintiff must further "allege that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *See Duty Free Americas, Inc.*, 797 F.3d at 1277.

In determining whether a plaintiff has adequately alleged facts in support of an attempt to state a cause of action for contributory false advertising under the Lanham Act, the courts in this Circuit must evaluate:

> whether the complaint suggests a plausible inference of knowing or intentional participation, examining "the nature and extent of the communication" between the third party and the defendant regarding the false advertising; "whether or not the [defendant]

---

herein above, the Plaintiffs' conclusory allegations that the Defendants' misleading advertising caused Wyndham timeshare owners to believe that Wyndham would not help them to exit their timeshares and that the only solution was to use the Defendants' competing "exit service," DE 63, ¶¶ 155, 159-63, is equally disingenuous and not supported by the various Reed Hein advertisements quoted by the Defendants and other allegations in the Amended Complaint that belie any claims that the Defendants ever misrepresented that Wyndham would not allow owners to exit their timeshares. DE 63, ¶¶ 23, 68, 97(a)-(e), 110; DE 63-9. Not only do these allegations in Count I fail to satisfy the requisite pleading threshold of consumers <u>actually</u> having been deceived by misleading advertising, but none of these insufficient claims were incorporated into Count II in support of the attempt to state a contributory false advertising cause of action against SGB. DE 63, ¶ 166.

explicitly or implicitly encouraged" the false advertising; whether the false advertising "is serious and widespread," making it more likely that the defendant "kn[ew] about and condone[d] the acts"; and whether the defendant engaged in "bad faith refusal to exercise a clear contractual power to halt" the false advertising.

*See id.* at 1278 (citing *Mini Maid Servs. Co.*, 967 F.2d at 1522).

Other than the mere conclusory allegations in Count II, Wyndham provides no basis to "suggest the existence of coordinated action or encouragement, much less inducement," between Reed Hein and SGB resulting in any advertisement. *See id.* at 1279. Wyndham makes no attempt whatsoever to plead how SGB's legal services to timeshare owners could be construed as having "monitored, controlled, or participated" in the preparation and dissemination of false advertisements by Reed Hein. *See id.* Neither do the Plaintiffs' new allegations of false statements by the undifferentiated Defendants satisfy this element.[52]

Further, Count II relies upon no fact to support or basis to infer an allegation that SGB "exercises any level of control over or involvement" in Reed Hein's advertising efforts. *See id.* On the contrary, the Plaintiffs allege that Reed Hein directs the conduct of SGB.[53] To paraphrase the Eleventh Circuit's holding in *Duty Free Americas, Inc.,* the provision of legal services by SGB in the course of an ordinary business relationship "without more, cannot justify a finding that a defendant induced, encouraged, caused, procured, or brought about false advertising," nor can it support a claim for contributory false advertising under the Lanham Act. *See id.* Although the Court did not need to reach this second prong of a claim for contributory false advertising under the Lanham Act when it dismissed the Plaintiffs' first Complaint, Count II of the Amended Complaint is also subject to dismissal for failure to show SGB's contributory conduct with respect to Reed Hein's allegedly false advertising. *See id.*

---

[52] *See* DE 63, ¶¶ 104-106.
[53] *See, e.g.,* DE 63, ¶¶ 9, 110.

### III.   Count V Fails to State a Cause of Action Against SGB for Violation of Florida's Deceptive and Unfair Trade Practices Act.

Through Count V of the Amended Complaint, the Plaintiffs attempt to state a cause of action seeking the recovery of damages, as well as permanent injunctive relief, pursuant to Section 501.211 of the Florida Statutes, also known as Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). This statute prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1324 (S.D. Fla. 2017) (citing *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 983 (11th Cir. 2016) (quoting Fla. Stat. § 501.204(1)). As this Court recognized in its Order of May 29, 2019,[54] however, a claim for violation of FDUTPA "rises or falls on the success of" a plaintiff's Lanham Act false advertising claim. *See Natural Answers, Inc. v. SmithKline Beecham Corp*., 529 F.3d 1325, 1333 (11th Cir. 2008). *See also Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1296 (11th Cir. 2012).

Furthermore, SGB's alleged wrongful conduct is simply not considered violative under FDUTPA. FDUTPA defines "[t]rade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. Ann. § 501.203(8). Florida courts, however, find conduct in pursuit of legal remedies is not "trade or commerce" for purposes of FDUTPA. *See Kelly*, 681 F. Supp. 2d at 1374.[55]

---

[54] DE 60, at 8-9.

[55] Florida's appellate courts have also agreed that the pursuit of legal remedies does not fall within the definition of "trade or commerce" for purposes of holding attorneys liable for FDUTPA violations. *See, e.g., Baker v. Baptist Hosp.,*

The *Kelly* court recognized FDUTPA prohibits unfair or deceptive acts or practices "in the conduct of any trade or commerce," including "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *See id.* (citing Fla. Stat. § 501.204(1) and Fla. Stat. § 501.203(8)). The plaintiffs in the *Kelly* matter argued their dealings with the defendant law firm—limited to the forwarding of civil theft demand letters on behalf of several retailers—constituted "trade or commerce." *See id.* According to those plaintiffs, that law firm's demand letters offered a release, a "thing of value," in exchange for money. *Id.* The court disagreed, noting that although the plaintiff's argument had "some initial appeal," conduct ostensibly occurring during the exercise of a legal remedy had no connection whatsoever to "trade or commerce." *Id.* at 1375.

After characterizing Florida authority on this precise issue as "scant," the *Kelly* court relied upon at least one Middle District of Florida decision finding conduct occurring in the pursuit of legal remedies did not constitute "trade or commerce" as defined under FDUTPA.[56] More specifically, the court cited *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356 (M.D. Fla. 2007), *aff'd*, 288 Fed. Appx. 571 (11th Cir. 2008), which dismissed a FDUTPA claim arising from pre-suit communications attempting to collect on a debt. The court in *Trent* found the "trade or commerce" requirement had not been met because the defendant had simply been

---

*Inc.*, 115 So. 3d 1123, 1125 (Fla. 1st DCA 2013); *State, Office of Atty. Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State*, 83 So. 3d 847, 856 (Fla. 4th DCA 2011).

[56] The *Kelly* court also relied upon several cases from other jurisdictions in which courts similarly held that conduct in pursuit of legal remedies is not "trade or commerce" under their respective states' statutes governing unfair trade practices acts. *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d at 1376 (citing *Dalesandro v. Longs Drug Stores Cal., Inc.*, 383 F. Supp. 2d 1244, 1250–51 (D. Haw. 2005), *Begelfer v. Najarian*, 381 Mass. 177, 409 N.E.2d 167, 169–70 (1980) and *Benvenuti Oil Co. v. Foss Consultants, Inc.*, No. CV010485270S, 2006 WL 328678, at *10 (Conn. Super. Ct. Jan. 25, 2006)).

pursuing legal remedies. *See Kelly*, 681 F. Supp. 2d at 1375 (citing *Trent*, 618 F. Supp. 2d at 1365, n. 12).

Similarly, SGB's conduct as alleged in the Amended Complaint arises from the pursuit of legal remedies on behalf of timeshare owners.[57] Therefore, Wyndham's attempts to plead a cause of action against SGB in Count IV of the Complaint, pursuant to Section 501.211, Fla. Stat., must be dismissed for the failure to state a claim upon which relief can be granted, as a matter of law. *See Trent*, 618 F. Supp. 2d at1356, n. 12; *Kelly*, 681 F. Supp. 2d at 1375–76.

## IV.    Count VI for Conspiracy to Commit Tortious Interference Fails to State a Cause of Action Against SGB.

Wyndham includes SGB as a Co-Defendant in Count VI of the Amended Complaint, alleged "as a cause of action for civil conspiracy to interfere with existing contractual relations."[58] Pursuant to Florida law, a cause of action for conspiracy requires a plaintiff to plead the existence of "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *See Craig v. Kropp*, No: 2:17-cv-180-FtM-99CM, 2017 WL 2506386, at *8 (M.D. Fla. June 9, 2017) (citing *Charles v. Fla. Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008)). For the purposes of ruling on SGB's Motion to Dismiss Count VI of the Amended Complaint, only the initial pleading element needs to be considered by the Court to confirm the absence of two or more parties, pursuant to the intra-corporate conspiracy doctrine.

---

[57] *See* DE 63, ¶ 119.
[58] *See* DE 63 ¶ 229.

A.      The Intra-Corporate Conspiracy Doctrine and the Absence of Multiplicity

Pursuant to Florida's intra-corporate conspiracy doctrine, Wyndham has failed to plead in Count VI the existence of an agreement between or among SGB and anyone else other than in accordance with a principal/agent relationship. *See Lipsig*, 760 So. 2d at 180-181. This doctrine precludes a conspiracy claim against an agent <u>or</u> employee, because an agent or employee cannot conspire with his or her corporate principal or employer, unless the agent or employee has a personal stake in the activities at issue, but separate and distinct from the corporation's or employer's interests. *See id*. Under this doctrine, a corporation and its agents are treated as a single legal entity. Therefore, a corporation and its agents are no more able to conspire with each other than an individual could with himself or herself. *See Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000).

Although Reed Hein claims in its Amended Complaint that SGB was not outside counsel or a lawyer-agent of Reed Hein's,[59] other allegations in this pleading support a principal-agency relationship. Indeed, the Plaintiffs allege that SGB has retainer agreements directly with Reed Hein,[60] that Reed Hein directs SGB's conduct, [61] and that Reed Hein's "business would not function" without SGB which is necessary to provide legal services to Reed Hein's timeshare owner clients.[62]

The Plaintiffs, thus, concede that Reed Hein cannot act except through SGB as its agent. However, "[s]ince a corporation is a legal entity which can only act through its agents, officers and employees, a corporation [like Reed Hein] cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's

---

[59] *See* DE 63, ¶¶ 8, 239.
[60] *See* DE 63, ¶ 7.
[61] *See* DE 63, ¶ 9.
[62] *See* DE 63, ¶¶ 64, 69, 91,

interest." *See Cedar Hills Properties Corp.*, 575 So. 2d at 676. *See also McLeod*, 764 So. 2d at 793. Merely because Reed Hein and SGB are distinct legal entities, this does not render the intra-corporate conspiracy doctrine inapplicable. *See Cedar Hills Properties Corp.*, 575 So. 2d at 677. In *Cedar Hills*, for example, Florida's First District Court of Appeal found no ground for conspiracy between a defendant realty and development corporation and its leasing agent even though they were distinct legal entities where there was no evidence that the leasing agent which managed the principal's shopping center was acting for its own personal gain or taking actions which were outside the scope of its capacity as an agent for the principal. *See id.* at 676-77.

The intra-corporate conspiracy doctrine, therefore, bars those corresponding claims against Reed Hein and its agents absent allegations of some personal stake of an agent, separate and <u>distinct</u> from the interests of the purported principal. *See Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC*, No: 6:18-cv-1088-Orl-31DCI, 2018 WL 5279156, at * 6-7 (M.D. Fla. Oct. 24, 2018). Although Wyndham alleges that "[e]ach of the Defendants have a personal stake in the conspiracy activities,"[63] the Amended Complaint fails to identify how SGB's personal stake differed from Reed Hein's.

The personal stake exception to the doctrine requires a defendant's "independent *economic* stake in the conspiracy." *See HRCC, Ltd. v. Hard Rock Cafe Int'l (USA, Inc.)*, 302 F. Supp. 3d 1319, 1326 (M.D. Fla. 2016) (emphasis in original) (quoting *Jones v. City of College Park*, 540 F. Supp. 2d 1300, 1321 (N.D. Ga. 2007)). *See also Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981) (defendants were not operating as separate economic groups but rather acting as a single entity.); *Mancinelli v. Davis*, 217 So. 3d 1034, 1037-38 (Fla. 4th DCA 2017) (agent's receipt of increased compensation was insufficient to support agent's separate

---

[63] *See* DE 63, ¶ 237.

personal interest.). No personal stake exception can be found in the absence of a defendant's "personal interests, wholly and separately from the corporation." *Microsoft Corp. v. Big Boy Distribution LLC*, 589 F. Supp. 2d 1308, 1323 (S.D. Fla. Dec. 3, 2008) (quoting *Bhatia v. Yale University*, No. 3:06cv1769, 2007 WL 2904205 (D. Conn. 2007)). There is simply no showing that SGB has or will benefit financially from the alleged conspiracy, separate and apart from any benefit flowing to Reed Hein.[64]

The allegations of the Amended Complaint infer SGB has no economic independence from Reed Hein for compensation earned by performing legal work on behalf of timeshare owners.[65] The Plaintiffs specifically allege SGB's compensation is earned pursuant to a retainer agreement and in exchange for a portion of the fees paid by the timeshare owners to Reed Hein.[66]

Any economic benefits received by SGB, and as alleged in Count VI, were undeniably "incidental" to its status as a Reed Hein agent as framed by the Amended Complaint. Accordingly, Wyndham's allegations against SGB in Count VI of the Amended Complaint fail to satisfy the personal stake exception to the intra-corporate conspiracy doctrine and consequently, fail to demonstrate the existence of an agreement between two or more parties necessary to support a valid claim for civil conspiracy. *See HRCC, Ltd.*, 302 F. Supp. 3d at 1325-26; *Mancinelli*, 217 So. 3d at 1037-38.

## CONCLUSION

The absence of the prescribed predicates in the attempts by the Plaintiffs to state claims against SGB upon which relief can be granted compels the dismissal of Counts II, V, and VI of

---

[64] The Court in its Orders of May 23, 2019 and May 29, 2019 distinguished any potential incidental benefit derived by SGB from the alleged conspiracy from one where the agent's benefit is distinct from the principal's. *See* DE 59, at 10 and DE 60, at 10 (citing *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F. 2d 391, 399-400 (4th Cir. 1974)).
[65] *See* DE 63, ¶¶ 7, 113-114, 119.
[66] *See* DE 63, ¶¶ 7, 113-114, 119.

the Amended Complaint with prejudice[67] as a matter of law. The Plaintiffs' conclusory and contradictory allegations throughout the Amended Complaint compound the egregiousness of naming SGB as a Defendant for simply undertaking the legal representation of undisclosed third parties to this action. The Plaintiffs' continued temerity to suggest a motivation for initiating this lawsuit was to protect the very timeshare owners seeking relief from their historically intractable financial exploitation is reprehensible and intolerable.

**WHEREFORE**, the Co-Defendant, Schroeter Goldmark & Bender, P.S., by and through the undersigned counsel, hereby moves for the entry of an Order by this Honorable Court dismissing Counts II, V, and VI of the Amended Complaint with prejudice for the reasons set forth more specifically herein above, and for such further relief as this Court deems just and appropriate.

---

[67] *See Eiber Radiology, Inc.*, 673 Fed. Appx. at 928-30; *Stubblefield*, 2010 WL 2025996, at *4.

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on this 1st day of July, 2019, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notice of electronic filing to all CM/ECF participants.

Respectfully submitted,

KLEIN GLASSER PARK & LOWE, P.L.
*Attorneys for Schroeter Goldmark & Bender,*
9130 S. Dadeland Blvd., Suite 2000
Miami, FL  33156
305.670.3700

By:     Robert M. Klein
ROBERT M. KLEIN
Fla Bar No:  230022
kleinr@kgplp.com
HOUSTON S. PARK, III
Fla. Bar No:  958492
parkh@kgplp.com
LELIA M. M. SCHLEIER
Fla. Bar No:  0107019
schleierl@kgplp.com