UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION OWNERSHIP,
INC., a Delaware corporation; et al.,

      Wyndham,

v.                                                    CASE NO.       6:18-cv-02171-GAP-DCI

REED HEIN & ASSOCIATES, LLC d/b/a
TET, a Washington
limited liability company; et al.,

      Defendants.
_____/

**MOTION TO DISMISS COUNTS 1, 3, AND 5
OF PLAINTIFFS' AMENDED COMPLAINT (DOC. 63)
BY DEFENDANT REED HEIN & ASSOCIATES, LLC,
BRANDON REED, TREVOR HEIN, THOMAS PARENTEAU,
AND HAPPY HOUR MEDIA GROUP, LLC,
AND SUPPORTING MEMORANDUM**

      Defendants Reed Hein & Associates, LLC, dba Timeshare Exit Team, Brandon Reed,

Trevor Hein, Thomas Parenteau (collectively, "TET"), and Happy Hour Media Group, LLC

("HHMG"), by and through their undersigned counsel, respectfully move this Honorable Court

pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for an order dismissing Counts 1, 3,

and 5 of Plaintiffs' ("Wyndham") Amended Complaint (Doc. 63) with prejudice for failure to state

a cause of action upon which relief can be granted, as set forth in the Memorandum, below.

**MEMORANDUM**

**I.
INTRODUCTION**

On May 29, 2019, this Court entered an order (Doc. 60) dismissing Wyndham's original Complaint (Doc. 1). In the order, this Court was clear as to the defects contained in Wyndham's original Complaint. However, as set forth below, Wyndham's Amended Complaint (Doc. 63) is virtually indistinguishable from its original Complaint, and does nothing to cure the fundamental flaws identified by this Court, in particular, the lack of sufficient proximate causation as required under the Lanham Act.

The timeshare industry has been plagued by fraudulent, deceptive, unfair, oppressive, and unconscionable practices,[1] including violations and/or allegations of violations of a multitude of

---

[1] *See, e.g.*, *Williams v. Wyndham Vacation Ownership, Inc.*, Superior Court of California, San Francisco County, Case No. CGC-12-526187, Rulings on Defendants' Post-Trial Motions, in which the court summarized evidence presented to the jury that certain of Wyndham's sales representatives opened credit cards for customers without their permission and defrauded customers, and mainly the elderly, in the form of falsely telling prospective consumers that Wyndham would buy back the timeshares its sold, falsely stating that maintenance fees could not be raised, and selling the elderly more time than such consumers could reasonably use before death. In the trial court's order reviewing the basis of the jury's punitive damages award against Wyndham, the court cited evidence heard by the jury that Wyndham had a pattern and practice of retaliating against employees who blew the whistle on Wyndham's rampant fraud. The evidence included testimony that "[w]hen timeshare sales were off, Wyndham had 'TAFT Days' -- Tell Them Any Frigging Thing." *See* https://dolanlawfirm.com/wp-content/uploads/2017/07/Order-On-Post-Trial-Motions-20170310.pdf and https://www.nytimes.com/2016/11/25/business/my-soul-feels-taller-a-whistle-blowers-20-million-vindication.html. (Last visited July 1, 2019).

Several actions brought by whistleblowers are now pending against Wyndham in this and other courts. These actions similarly allege abusive sales practices by Wyndham. *See, e.g., Amilcar v. Wyndham Vacation Ownership,* pending in the Circuit Court of the Sixth Judicial Circuit, Pinellas County, Florida, Case No. 18-8241-CI and *Wyndham Vacation Ownership v. Adams,* US District Court, District of South Carolina, Case No. 4:19-cv-00854. In *Amilcar,* ten former Wyndham employees complain that Wyndham retaliated against them, *inter alia,* for objecting to Wyndham's sales practices, including advising buyers that Wyndham will buy back the timeshare owners' property, advising buyers that a Wyndham timeshare is an investment that will increase in value over time, overselling timeshares resulting in many owners not being able to use their timeshares due to overbooking, and requiring sales representatives to "do whatever they have to do" to close deals. In *Adams,* a former Wyndham quality assurance officer alleges that Wyndham terminated her only after she complained of and opposed illegal practices, including reporting to Wyndham that a Wyndham sales representative forced owners to sign a cancellation "retraction letter" under false pretenses. She additionally alleges that she was retaliated against after complaining to management that timeshare owners were being falsely told by Wyndham sales representatives that by "converting" interests in properties acquired by Wyndham, timeshare owners will lower their maintenance fee obligations, but that in reality, after the transaction, the timeshare owners are encumbered with *two* timeshares with *two* mortgages and *two* separate maintenance fee obligations.

Numerous timeshare owners have also brought actions against Wyndham that are now pending in this and other courts. *See, e.g., Badovinac v. Wyndham Vacation Ownership*, US District Court, Middle District of Florida, Case No. 6:19-

federal, state and local regulations, such as the Florida Consumer Collection Practices Act, the Fair Credit Reporting Act, the Telephone Consumer Protection Act, the Federal Trade Commission Act, the Securities Act of 1933, the Fair Housing Act, the Americans with Disabilities Act, the Truth and Lending Act, the Home Mortgage Disclosure Act and Regulation C, the E-Credit Opportunity Act, the Interstate Land Sales Full Disclosure Act, the Telephone Consumer Protection Act, the Telemarketing Consumer Fraud and Abuse Prevention Act, the Graham-Leach-Bliley Act, the Deceptive Mail Prevention and Enforcement Act, the Bankruptcy Act, the Civil Rights Act of 1964, 1968, and 1991 and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.   These practices have been the target of myriad consumer protection litigation brought by individuals, in class actions, and by state and federal agencies.

Defendant TET is in the business of helping consumers navigate the process of safely and legally exiting from oppressive timeshare contracts that the timeshare resorts should not have sold the consumers for many reasons, including financial, legal, and ethical reasons.   In particular, TET is committed to providing this valuable and important service because consumers, often after they were subjected to high-pressure sales presentations, frequently find themselves financially

---

cv-00649-PGB-DCI and *Couch v. Wyndham Worldwide Corp.*, US District Court, Middle District of Florida, Case No. 6:18-cv-02199-PGB-LRH, two consumer actions pending against Wyndham in this district.   In *Badovinac*, 241 timeshare owners have brought suit against Wyndham, alleging, *inter alia*, that they are unable to use their Wyndham points to reserve rooms at Wyndham properties as promised, and that Wyndham concealed the true value of the timeshare interest that it sold to the plaintiffs and that Wyndham fails to disclose to consumers that the points or deeds Wyndham sells have virtually no value on the secondary market (Doc. 22, ¶¶ 51-63).   In *Couch*, Wyndham timeshare owners similarly complain that when they attempt to make reservations at Wyndham's resorts, they are told that no units are available during the desired dates.   Moreover, the plaintiffs in *Couch* allege that they are the victims of Wyndham's "highly organized and fraudulent advertising, marketing and sales scheme to sell [timeshare interests] to prospective owners, to have existing owners remain in contracts involving the purchase of [timeshare interests] (including through the rescission period), and to have existing owners purchase additional [timeshare interests]," in violation of statutory law, common law, and the duty of good faith and fair dealing implicit in all contracts.   [Doc. 46-1, ¶¶ 3-5].

burdened by unwanted timeshares, for example, because the annual maintenance fees have risen exponentially since the date of the original contract, or because the consumers have suffered from health challenges or other changes in circumstances that prevent them from enjoying their timeshare ownership.  Oftentimes the timeshares are purchased by elderly persons not adequately resistive to the intense hard-sell and high-pressured sales techniques or tactics that amount to impractical, improbable, overpriced and ultimately, unwanted contracts.  In many instances, these contracts are void, voidable or subject to modification.  TET believes consumers should have the right to legally exit from those timeshares.  TET retains and works with law firms to assist these owners (including dissatisfied Wyndham timeshare owners) in exiting their timeshares.  *See* Amended Complaint, Doc. 60, ¶¶ 7-8.

Wyndham is in the business of developing timeshares and conducting timeshare sales interests throughout the United States.  *See* Doc. 60, ¶ 60.  Wyndham is "a global leader in the timeshare and vacation ownership industry with a network of resorts spanning the world."  *See* Doc. 60, ¶ 59.  Wyndham claims to enter into valid and binding contracts with consumers to effect the ownership of the timeshare interests in those properties.  *See* Doc. 1, ¶¶ 2-4.  Wyndham has engaged in a transnational lawsuit and media campaign targeting law firms and companies offering services to timeshare consumers victimized by unconscionable contracts of adhesion, which purport to bind them in perpetuity.

Wyndham alleges that TET "falsely" states or at least implies that Wyndham "will not release timeshare owners from their contracts," and "steer[s] consumers away from the free (or much cheaper)" Wyndham's "Ovation®" and "Wyndham Cares™" Programs, which Wyndham purports "are available to assist Wyndham Owners who may wish to legitimately end their timeshare ownership with Wyndham."  *Id.* at ¶¶ 66, 103.  Yet, Wyndham's business strategies

include admitted practices intended to deprive its timeshare owners of legal representation when seeking relief from related contractual obligations.  Wyndham seeks the termination of any relationship between Defendants and the timeshare owners, so that owners may "lawfully terminate [their] contract[s] for free, or at a much lower cost, by appealing directly to Wyndham." *Id*. at ¶ 208.  According to Wyndham, a lawful termination is only available to consumers directly from Wyndham through the Ovation® Program.  *Id*. at ¶¶ 66, 103, 208.  Wyndham would prefer to have complete control of the contractual relationships with timeshare owners, where the owners would not be permitted to rescind their contracts past the allotted time period provided by the contracts.

As this Court has observed in a related case, the "multi-billion dollar timeshare industry" has engaged in a "legal melee" and has "gone on the offensive against law firms and others who allegedly disrupt" the relationship between the timeshare companies and owners.  *Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, 2017 WL 10084346, at *1 (M.D. Fla. Nov. 30, 2017).  In a misguided effort to thwart the departure of some of their dissatisfied timeshare owners, Wyndham and its industry associates are using the courts to attempt to prevent law firms and consumer protection companies like TET (which hire and work with the law firms) from assisting consumers in obtaining relief from oppressive, unconscionable, and/or illegal timeshare contracts.  These timeshare developers, including Wyndham, have engaged in scorched-earth litigation throughout the United States (as well as other countries) against consumer protection companies and law firms.[2]

---

[2] In addition to this lawsuit, Wyndham has brought myfriad lawsuits against law firms and entities that would advocate on behalf of consumers who are unhappy with their Wyndham timeshares.  Many of these lawsuits are pending in the Middle District and other courts.  *See Wyndham Vacation Ownership, Inc. v The Montgomery Law Firm, LLC*, US District Court, Middle District of Florida, Case No. 6:18-cv-02121-ACC-KRS; *Wyndham Vacation Ownership, Inc. v. Totten Franqui Davis & Burk, LLC*, US District Court, Southern District of Florida, Case No. 9:18-cv-81055-

Wyndham's continuing business strategies, as exemplified through its litigation against small consumer advocacy businesses and law firms, offend the public policy considerations underlying the regulation of business relationships. The goal of the lawsuits is simple: to prevent small law firms from representing timeshare owners who have been unfairly and/or unlawfully lured into oppressive, "in perpetuity" timeshare contracts that they cannot afford, and to put consumer protection companies like TET out of business by costly litigation. Allowing Wyndham to continue to bring these meritless claims and, if successful, would have a chilling effect upon the rights of consumers to seek legal representation, as codified under state and federal laws. Specifically, Section 768.295 of the Florida Statutes, otherwise known as Florida's anti-SLAPP

DMM.; *Wyndham Vacation Ownership, Inc. v. US Consumer Attorneys, P.A.,* Case No. 9:18-Civ-81251-DMM/Brannon; *Wyndham Vacation Ownership, Inc. v American Consumer Credit, LLC,* US District Court, Southern District of Florida, Case No. 9:18-cv-80095-Rosenberg/Reinhart; and *Wyndham Vacation Ownership, Inc., v. Vacation Transfers Unlimited, LLC,* Middle District of Tennessee, Case No. 3:18-cv-01 399.

It is telling that Wyndham cites to the American Resort Development Association (ARDA) in its Amended Complaint. *See* Doc. 1, ¶ 57. ARDA is the Washington, DC-based trade association representing the vacation ownership and resort development industries (timeshares). On behalf of ARDA-member timeshare developers, Wyndham's counsel has also brought lawsuits like this one against other law firms and related entities that would advocate on behalf of consumers who are unhappy with their timeshare ownership. Lawsuits now pending in this district and other courts include the following: *Diamond Resorts Corporation v. Mutual Release Corporation,* US District Court, Western District of Missouri, Case No. 6:18-cv-03053-MDH; *Bluegreen Vacations Unlimited, Inc. et al v. Totten Franqui Davis & Burk, LLC,* Middle District of Florida, Case No. 6:18-cv-02188-RBD-DCI; *Diamond Resorts, International, Inc. v. Aaronson,* US District Court, Middle District of Florida, Case No. 6:17-cv-1394-Orl-37-RBD-DCI; *Diamond Resorts, International, Inc. v. US Consumer Attorneys, PA,* US District Court, Southern District of Florida, Case No. 9:18-cv-80311-RLR; and *Diamond Resort International, Inc. v. Reed Hein & Associates, LLC.,* US District Court, Nevada, Case No. 2:17-cv-03007-RFB-VCF.

In addition to lawsuits brought by Wyndham and Wyndham's counsel, other ARDA-members have brought lawsuits like this one against law firms and related entities that would advocate on behalf of consumers who are unhappy with their timeshare ownership. Lawsuits that are now pending in this district and other courts include the following: *Orange Lake Country Club, Inc., v. Reed Hein & Associates, LLC,* US District Court, Middle District of Florida, Case No: 6:17-cv-1542-ORL-37-KRS; *Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC,* US District Court, Middle District of Florida, Case No: 6:18-cv-1088-Orl-31DCI; *Westgate Resorts, Ltd. v. Castle Law Group, PC,* US District Court, Middle District of Florida, Case No. 6:17-cv-1063-Orl-31-GAP-DCI; *Westgate Resorts, Ltd. v. Sussman,* US District Court, Middle District of Florida, Case No. 6:17-cv-01467-Orl-37-RBD-DCI; *Orange Lake Country Club, Inc. v. Castle Law Group, PC,* US District Court, Middle District of Florida, Case No. 6:17-cv-1044-ORL-31-GAP-DCI; *Club Exploria, LLC v. Aaronson,* US District Court, Middle District of Florida, Case No. 6:17-cv-576-Orl-28-JA-DCI; *Welk Resort Group Inc. v. Reed Hein & Associates, LLC,* US District Court, Southern District of California, Case No. 3:17-cv-01499-L-AGS; *Orange Lake Country Club, Inc., v. Finn Law Group, P.A,* Ninth Judicial Circuit Court in and for Orange County Florida, Case No. 2015-CA-000310-O; *Diamond Resorts Corporation v. Finn Law Group, PC.,* Ninth Judicial Circuit Court in and for Orange County Florida, Case No. 2017-CA-006199-O.

statute, prohibits strategic lawsuits such as the instant action that impede the rights of free speech in connection with public issues, including the right to petition governmental entities for the redress of grievances, and further provides for the expeditious disposition of any such lawsuits. *See* § 768.295, Fla. Stat.  It is TET's position that this action and others initiated by timeshare developers are intended to intimidate, defraud, and/or otherwise disadvantage timeshare consumers and their attorneys and to thereby restrict or inhibit timeshare owners' right to petition the judicial branches of government for relief from the unconscionable business practices of timeshare resort companies.  TET respectfully submits that the Court should not allow Wyndham's legally defective claims as set forth in the Complaint to continue.

## II.
## BACKGROUND

### A.    Allegations in Wyndham's original Complaint.

In the original Complaint, Wyndham asserted, among other things, claims against TET for false advertising under the Lanham Act (Count 1) and claims against TET and HHMG (and the other Defendants) for violations under FDUTPA (Count 5).  Wyndham also asserted a claim against HHMG contributory false advertising in violation of the Lanham Act (Count 3).

According to Wyndham, timeshare owners are attracted by the false and/or misleading promises of TET to provide a "legal", "lawful", "legitimate", "safe", and "guaranteed" method for relief from related contractual obligations.  *See* Doc. 1, at ¶¶ 5-6, 9-13, 91-104.  Wyndham alleged that TET's advertisements in general, and its guarantee in particular, are false and/or misleading because neither TET nor the law firms (who Wyndham names as co-defendants in the lawsuit) that TET retains on behalf of disaffected Wyndham timeshare owners can deliver the promised relief. *Id.*, at ¶¶ 10-26, 63-77, 91-107.  Wyndham also alleged that TET and the law firms provide minimal services to Wyndham timeshare owners, and that these services do not result in

cancellations of the underlying contracts, but rather in the termination of the timeshare interest through foreclosure proceedings.  *See Id.*, at ¶¶ 6-10, 14-18, 108-123.  To state the obvious, *Wyndham* decides to initiate these foreclosure proceedings against Reed Hein's customer, rather than provide simply agreeing to take back the properties.

Wyndham further alleged that TET, its officers, Brandon Reed, Trevor Hein, and Thomas Parenteau, and TET's advertising agency, Happy Hour Media Group, LLC, knowingly made "false and misleading" promises to timeshare owners through online advertising that induced them to breach corresponding contracts.  *Id.*, at ¶¶ 5, 20, 23, 91-107.  According to Wyndham, timeshare owners breach those contracts when ceasing to make the required payments and, instead, use those funds to compensate TET for its services.  *Id.*, at ¶¶ 9, 13, 21.  Wyndham purports to speak on behalf of the disaffected Wyndham timeshare owners, contending that these owners are damaged when (through Wyndham's collection actions) the non-payments adversely impact the owners' credit ratings and/or result in the foreclosure of their underlying unwanted timeshare interests.  *Id.*, at ¶¶ 13, 21.

**B.      This Court's order dismissing Wyndham's original Complaint (Doc. 60).**

On May 29, 2019, this Court entered an order dismissing Wyndham's original Complaint, including, among other things, dismissing Wyndham's claim against TET for false advertising under the Lanham Act (Count 1); dismissing Wyndham's claim against HHMG for contributory false advertising under the Lanham Act (Count 3); and dismissing Wyndham's claims against all Defendants for violations under FDUTPA (Count 5).

In dismissing Wyndham's Lanham Act claim, this Court noted:

> In addition, the cause of action is only available to plaintiffs whose injuries are proximately caused by violations of the statute -- as opposed to those whose injuries are "too remote" from the defendant's unlawful conduct.  Thus, a plaintiff suing under Section 1125(a) "ordinarily must show economic or reputational injury flowing directly from the deception

> wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff.

Doc. 60, at 6 (internal citations omitted).

In applying these *Lexmark* standards of Wyndham's defective original Complaint, this Court found that Wyndham did not meet the standing requirements under *Lexmark*:

> The Wyndham allege that they suffered injury to their commercial interests because Wyndham Owners *stopped making payments* on their timeshare contracts. But they do not allege that their injury flows directly from TET's advertising. None of the advertisements are alleged to have *included instructions to Wyndham Owners that they should stop making payments*. Further, the Complaint alleges that *TET instructed Wyndham Owners to stop making payments* after soliciting them through advertising. Therefore, *as currently pled, Wyndham' injury is too remote* from TET's advertising and not the type of interest the Lanham Act was intended to protect.

Doc. 60, at 6 (emphasis added) (internal citations omitted).

## C.     Wyndham's Amended Complaint.

The only "new" allegations in Wyndham's 61-page Amended Complaint are contained in ¶¶ 8, 102, 104-106, 155, 159, 163, 216, 221.[3]  *Compare* Doc. 1, ¶¶ 95-104 and Doc. 63, ¶¶ 96-108. While these paragraphs may be new, the sparse facts alleged in these paragraphs are also contained in the original Complaint. Importantly, Wyndham's new allegations in the Amended Complaint which allegedly support its basis for proximate causation are contained in ¶¶ 102, 104-106.  *See* Doc. 63, ¶¶ 102, 104-106. These several "re-worked" paragraphs remain extremely vague and contain surprisingly little substance. *Id.*  Like the original Complaint, these allegations consist almost entirely of legal conclusions, for example, "a defendant who seeks to promote his own interest by telling a known falsehood … may be said to have proximately cause the plaintiff harm" (¶ 105) and "TET's false and misleading advertising causes consumers … to withhold business

---

[3] Wyndham's 61-page Amended Complaint contains 244 paragraphs. Only 16 of those paragraphs have been modified or added compared to the original Complaint.

from Wyndham…." However, when this conclusory "filler" is removed, the only statements even remotely factual are the following four vague and sparse allegations (again, all of which were alleged in the original Complaint):

1) TET tells Wyndham owners that they are part of a *'resort scam'*…." (¶ 102) (emphasis added).

2) TET is "*implying* that the Wyndham Owners' timeshare *contracts are unlawful*…." (¶ 102) (emphasis added).

3) TET has "advertised that a timeshare owner's *circumstances do not even matter*…." (¶ 102) (emphasis added).

4) TET is "falsely stating or implying that Wyndham *will not release* owners from their timeshare contracts…." (¶ 105) (emphasis added).

As explained below, these allegations are entirely insufficient, and fall woefully short of curing the defects this Court expressly identified in its order dismissing the original Complaint.

## III.
## ARGUMENT

### A.     General legal standards on motion to dismiss.

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994). While a court must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff when reviewing a motion to dismiss, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). Further, the plaintiff's factual allegations, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007).  This standard requires more than a possibility that a defendant has acted unlawfully.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a plaintiff must

"plead [] factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Id*.  Thus, a court is not required to accept a plaintiff's factual

claims that are "internally inconsistent; facts which run counter to facts of which the court can take

judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted

by a party."  *Response Oncology, Inc. v. MetraHealth Ins. Co*., 978 F. Supp. 1052, 1058 (S.D. Fla.

1997), order clarified on reconsideration in *Response Oncology, Inc. v. Metrahealth Ins. Co*., No.

96-1772 CIV, 1997 WL 33123678 (S.D. Fla. July 29, 1997)).

**B.      Like the original Complaint, Wyndham's Amended Complaint fails to state a claim for false advertising under the Lanham Act against TET (Count 1) or Happy Hour Media Group, LLC (Count 3).**

The cause of action for false advertising under 15 U.S.C. §1125(a)(1) of the Lanham Act

is intended to "protect persons engaged in commerce within the control of Congress against unfair

competition" -- that is, against "injuries to business reputation and present and future sales."

*Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129 (2014).  The Lanham

Act "extends only to plaintiffs whose interests fall within the *zone of interests* protected by the law

invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129 (2014)

(emphasis added); *Global Tech LED, LLC v. Hilumz Int'l Corp*., 2016 U.S. Dist. LEXIS 70584, *

8 (M.D. Fla. 2016).

However, the Lanham Act "forecloses suit … when a plaintiff's interests are so marginally

related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be

assumed that Congress authorized that plaintiff to sue."  To succeed on a Lanham Act claim, the

plaintiff must ultimately prove "an injury to a commercial interest in sales or business reputation

*proximately caused* by the defendant's misrepresentations." *Lexmark Int'l*, at 140; *Lancaster v. Bottle Club*, LLC, 2018 U.S. Dist. LEXIS 78957, 2018 WL 2151729, at * 12 (M.D. Fla. 2018) (emphasis added); *Gibson v. BTS N., Inc.*, No. 16-24548-CIV, 2018 U.S. Dist. LEXIS 24132, 2018 WL 888872, at *3 (S.D. Fla. Feb. 14, 2018).  As the Supreme Court noted in *Lexmark*, "Section 1125(a) only protects "injury *flowing directly* from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark* at 133-34 (emphasis added).  The proximate causation requirement "reflects the reality that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." *Id.* at 132 (citation omitted); *see also UPS Store, Inc. v. Hagan*, No. 14-cv-1210, 2017 U.S. Dist. LEXIS 121352, at *23 (S.D.N.Y. Aug. 2, 2017) (holding that "the Lanham Act imposes liability for injuries proximately caused by false advertising, not abusive treatment"); *Global Tech LED, LLC v. Hilumz Int'l Corp.*, 2016 U.S. Dist. LEXIS 70584, at * 9 (M.D. Fla. 2016) (holding that dismissal of complaint was proper where the plaintiff failed to "specifically allege … *both* that the false or misleading statement actually deceives or is likely to deceive a substantial segment of the intended audience *and* that the statement results in actual or probable injury").

Importantly, the Court in *Lexmark* also noted that "a plaintiff who does not compete with the defendant will *often have a harder time* establishing proximate causation." *Lexmark* at 136 (emphasis added).  "The harm alleged must have a *sufficiently close connection* to the conduct the statute prohibits." *Id.* at 133 (emphasis added).  As the court noted in *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 U.S. Dist. LEXIS 158328, at * 28-29 (N.D. Ala. 2016), under Lanham Act false advertising cases, "there is a heightened risk associated with causation testimony that ignores the competitive market as a whole." *Id.*, at *4.  Thus, standing based upon proximate causation is

more difficult where the defendant does not "*specifically target* a competing product, plaintiff may only be one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its damage." *Id.* (emphasis added); *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F.Supp.2d 958, 972 (D. Minn. 2005) (emphasis added).

      **1.**     **Wyndham has failed to cure the fundamental defect expressly identified by this Court's in the order dismissing the original Complaint by alleging facts showing TET's advertisements *instruct owners not to make payments*.**

As set forth above, this Courts' order dismissing the original Complaint (Doc. 60) was clear that the injury Wyndham alleged -- Wyndham Owners stopped making payments on their timeshare contracts -- must flow directly from TET's advertising. However, the Court found that "[n]one of the ***advertisements*** are alleged to have included ***instructions*** to Wyndham Owners that they should stop making payments." Doc. 60, at 6 (emphasis added). Therefore, the Court concluded, "as currently pled, Wyndham' injury is ***too remote from TET's advertising*** and not the type of interest the Lanham Act was intended to protect." *Id.* (emphasis added).

Accordingly, pursuant to the Court's express ruling, the only allegations which could possibly remedy Wyndham' defective Lanham Act claim would be allegations establishing that TET publishes advertisements which ***instruct*** Wyndham Owners to stop making payments. Just like the original Complaint, there are no such allegations anywhere in the Amended Complaint. Wyndham has failed to allege the existence of any advertisements containing statements which remotely resemble the act of instructing owners to stop paying Wyndham or any timeshare company. Accordingly, Wyndham was required by this Court to allege sufficient facts showing that TET's advertisements instructed the owners to stop making payment -- or at least an

advertisement tantamount to an instruction -- to satisfy the heightened proximity required under *Lexmark* and similar cases, and Wyndham failed to do so.

Rather, the only allegations which Wyndham reasserted in the Amended Complaint are that TET's advertisements (which are not identified) contain four amorphous statements and/or implications which are somehow "disparaging" and "casting aspersions" on Wyndham. *See* Doc. 63, ¶¶ 102, 104-106.[4]   As set forth above, statements and/or "implications" are: 1) TET characterizes timeshares as a "resort scam"; 2) TET *implies* (not expressly state) that timeshare contracts are unlawful; 3) TET states or *implies* in its advertising that timeshare companies will not release owners from their timeshare contracts; and 4) TET states [to prospective customers] that the customers' circumstances do not even matter in order to be exited.

These alleged advertising statements clearly do not instruct -- either expressly or implicitly -- that an owner stop paying on their timeshare contracts.  The statements essentially amount to criticisms of the timeshare industry and nonactionable opinions.  There is no "sufficiently close connection" between these four criticisms of the timeshare industry and the harm Wyndham is claiming, that is, owners stop making payments on their contracts.  *See Lexmark*, at 133.

Finally, the actual advertisements containing the four new statements do not appear anywhere in the Amended Complaint.  In alleging a Lanham Act claim, the plaintiff is required to attach actual advertisements, or at least include all of the language in the advertisement in its entirety.  *See Dyson, Inc. v. Garry Vacuum*, LLC, 2011 U.S. Dist. LEXIS 165514, 31 (C.D. Cal. 2011) (dismissing complaint where plaintiffs do not attach actual advertisements); *Cytyc Corp. v. Neuromedical Systems, Inc.*, 12 F.Supp.2d 296, 300 (S.D.N.Y. 1998).  Otherwise, it is not possible

---

[4] As described below, there are no allegations in the Amended Complaint that TET names or otherwise identifies Wyndham or any other specific timeshare company anywhere in its advertising.  Rather, it is clear from the allegations that TET's comments are directed at the timeshare industry as a whole.

to determine the context in which the allegedly false statements were made. *Id.* The websites are not attached or otherwise included anywhere in the original or Amended Complaint, and the language of the advertisements in their entirety are not included, not even an exemplar. *See* Docs. 1 and 63, generally. Accordingly, there is no way for this Court or the Defendants to determine the context in which TET allegedly made the (albeit amorphous) statements and implications.

2. **Wyndham has failed to allege that TET or the other Defendants *specifically name* Wyndham (or any timeshare company) in the alleged advertisements, as opposed to making statements about the industry as a whole.**

As set forth above, it is fundamental under *Lexmark* that the "harm alleged must have a sufficiently close connection to the conduct the statute prohibits." *Lexmark,* at 133. Accordingly, the Court in *Lexmark* found there was a sufficient connection "where a defendant denigrates a plaintiff's product *by name*" or "where the defendant damages the product's reputation by, for example, equating it with an inferior product. *Id.* at 138 (emphasis added). Thus, proximate causation is more difficult where the defendant does not "specifically target" the plaintiff. *See Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1333 (8th Cir. 1997); *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F.Supp.2d 958, 972 (D. Minn. 2005).

Wyndham has not alleged anywhere that TET has made statements regarding Wyndham specifically, as opposed to statements regarding the timeshare industry as a whole. *See* Doc. 63, ¶¶ 5-6, 10-14, 92-108.[5] However, it is clear from the allegations in the Amended Complaint (and the FAQs in TET's website, discussed below) that, if true, TET is commenting on the *entire timeshare industry*, and not expressly or implicitly naming any one timeshare company, including Wyndham. The alleged advertising language amorphously described in ¶ 97 of the Amended

---

[5] As set forth below, Wyndham have failed to include in the Amended Complaint the actual advertisements or sufficiently allege the statements made in the advertisements.

Complaint (which was also alleged in the original Complaint) does not mention Wyndham anywhere. *See* Doc. 63, ¶ 97. Similarly, like the original Complaint, the general allegations in the Amended Complaint also fail to show that TET's advertisements specifically named Wyndham. *See* Doc. 63, ¶¶ 96-108. The allegations also avoid clarifying that Wyndham is expressly named in these advertisements, for example, "TET falsely states or implies that *timeshare companies like Wyndham* will not release timeshare owners from their contracts." Doc. 63, ¶ 103 (emphasis added).

> **3.** **The allegations in the Amended Complaint do not constitute "commercial advertising or promotion" required under the Lanham Act because there is no "commercial competition" between Wyndham and TET as contemplated by *Lexmark*.**

Like the allegations contained in the original Complaint, the allegations in the Amended Complaint do not satisfy the "commercial competition" requirement contemplated by *Lexmark*.

To come within the scope of the Lanham Act, a plaintiff must show that the statements occurred within the context of "commercial advertising or promotion," which has been defined to include: 1) commercial speech; 2) by a defendant who is in ***commercial competition*** with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services; and 4) the representations … must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *See Tobinick v. Novella*, 848 F.3d 935, 950-51 (11th Cir. 2017) (emphasis added); *Suntree Techs., Inc. v. Ecosense Int'l, Inc*., 693 F.3d 1338, 1349 (11th Cir. 2012); *Orange Lake Country Club v. Castle Law, Group, P.C.*, 2018 U.S. Dist. LEXIS 5251, * 21-22 (M.D. Fla. 2018) (emphasis added).

In the instant case, as set forth above, Wyndham is engaged in the business of developing and selling timeshares. TET, however, does none of these things. Rather, it operates a service that assists owners in existing timeshares that have already been purchased. Indeed, as stated by Judge

Presnell in the related case *Orange Lake v. Reed Hein*, "[Plaintiff timeshare developers] do not compete with [TET] in the sale of goods or services.  Rather, Wyndham are in the business of getting people into timeshares, while the Defendants are in the business of getting them out.  Though their target audiences overlap, Wyndham and [TET] are engaged in entirely different markets.  They are adversaries, not competitors."  *Orange Lake Country Club, Inc. v. Reed Hein & Assocs.,* 2018 WL 5279135, at *8 (M.D. Fla. Oct. 24, 2018).

Further, in a similar case brought by the timeshare developer Welk Resort against TET and several law firms in the U.S. District Court, Central District of California, the court dismissed Welk's Lanham Act claim against TET *with prejudice* holding that timeshare companies and timeshare exit companies are not in commercial competition as intended under the Lanham Act.  *See Welk Resort Grp., Inc. v. Reed Hein & Assocs*., LLC, 2019 U.S. Dist. LEXIS 44124, at *45-48 (S.D. Cal. 2019).  Importantly, the *Welk* case involved allegations almost identical to the instant case.  *See Welk*, at *2-6.  Like Wyndham in the present case, Welk's Lanham Act claim alleged that TET's advertisements contained various false and misleading statements which caused Welk's owners to stop making payments under their timeshare contracts.  *Id*.  In dismissing Welk's Lanham Act claim with prejudice, the Court held:

> Although Welk alleges that it competes with Reed Hein for timeshare owners' resources, this is not the kind of competition necessary to establish standing.  The intent of the Lanham Act, as relevant here, is to protect persons engaged in . . . commerce against unfair competition.  For a false advertising claim, therefore, a plaintiff must allege a discernibly competitive injury, that the injury is competitive, or harmful to the plaintiff's ability to compete with the defendant.  This requires that the competitors provide the same product or service.  Welk does not dispute that this is the applicable definition of competition for purposes of false advertising under the Lanham Act.  Because Welk and Reed Hein do not offer the same products or services, they are not in competition.  Welk lacks standing to assert a false advertising claim under the Lanham Act.

*Id*. at *45-48 (internal citations and quotations omitted).

Like *Welk*, TET and the other Defendants in the instant case are in no way involved in competitive advertising under the meaning of the Lanham Act.  The facts of this case simply do not fall within the context of "commercial advertising or promotion," and therefore, this case does not come within the ambit of the Lanham Act.

### 4.     The allegations in the Amended Complaint constitute nonactionable opinions.

It is well-established that only factual statements are actionable under the Lanham Act. *See, e.g., Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1311 (11th Cir. 2010); *Advisors Excel, L.L.C. v. Scranton*, 2014 U.S. Dist. LEXIS 199141, *8-13 (S.D. Fla. 2014).  On the other hand, opinions are not actionable.  *See, e.g., Global Tech Led, LLC v. Hilumz Int'l Corp.*, 2017 WL 588669, at *6 (M.D. Fla. 2017); *Advisors Excel,* at *8-13.  Nonactionable opinions include statements which do not lend themselves to "empirical verification".  *See Global Tech*, at *6; *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000).

Similarly, "puffery" is described as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  *BellSouth*, at 1320.  It involves "outrageous generalized statements, not ... [s]pecific claims that are so exaggerated as to preclude reliance by consumers."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc*., 911 F.2d 242, 246 (9th Cir. 1990) (emphasis added).  Puffery also includes predictions about the future.  *Id.*  (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); *Cavic v. Grand Bahama Dev. Co*., 701 F.2d 879, 883 (11th Cir. 1983) (promise of future action or prediction of future events is not a representation, there is no right to rely on it, and it is not false when made); *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1239 (M.D. Fla. Aug. 9, 2002); *MDVIP, Inc. v. Beber*, 2017 WL 2364729, at *3 (Fla. 4th DCA 2017) (promise to deliver exceptional product or service is a matter of opinion rather than fact).

Importantly, critical comments about a competitor's services are not actionable.  *See Advisors Excel,* at \*8-13; *MPS Ent't, LLC v. Abercrombie & Fitch Stores, Inc.*, No. 11-24110, 2013 U.S. Dist. LEXIS 91193, 2013 WL 3288039, at \*15 (S.D. Fla. June 28, 2013) (dismissing Lanham Act claim based on statement of opinion and statement of true fact). As the court noted in *Advisors Excel*, disparaging statements criticizing the plaintiff's business are nonactionable.  *Id.*  The Court noted this would include terms characterizing the plaintiff's business as "trashy', a "mass marketing pyramid", "lying", and "unscrupulous".  *See Advisors Excel,* at \*8-13.  Similarly, courts have also held that a statement that the plaintiff's product or service is "bad" constitutes nonactionable opinions.  *See Chobani, LLC v. Dannon Co.*, 157 F. Supp. 3d 190, 202 (N.D.N.Y. Jan. 29, 2016); *Am. Inst. For Preventive Med., Inc. v. Oakstone Publ'g, LLC*, 2010 U.S. Dist. LEXIS 19968, at \*25 (E.D. Mich. Mar. 5, 2010).

In the instant case, the advertising statements/implications allegedly made by TET in ¶¶ 102, 104-106 of the Amended Complaint are all opinions.  Characterizing the timeshare industry as a "scam" is an expression of opinion, and not subject to empirical verification.  As stated below, there are no allegations that TET expressly states that timeshare companies "engage in unlawful practices" or "do not release owners from contracts".  However, assuming there were such allegations, these also would be nonactionable opinions.  Like "scam", they also are not subject to empirical verification.  Further, the statement that the prospective customer's "circumstances do not matter" for TET to accomplish an exit is a prediction of future results, and constitutes puffery.

**5.    The alleged statements in the Amended Complaint cannot be construed as false or misleading statements under the Lanham Act.**

Even assuming this Court were to determine that the statements in the Amended Complaint constitute unambiguous factual statements, as opposed to nonactionable opinions/puffery as

described above, these statements cannot be construed as false or misleading statement based upon the allegations in the Amended Complaint.

Although the statement is steeped in opinion (as described above), Wyndham' allegations that TET tells a prospective purchaser that their "circumstances do not matter" in order to obtain an exit cannot be construed as a false statement for purposes of the Lanham Act. The allegations in the Amended Complaint are clear that the entire purpose of TET's services are to negotiate an exit with the timeshare company in which the timeshare company agrees to release TET's customer from their timeshare obligations. If a timeshare company agrees to release a TET customer, the customer's circumstances do not matter, for example, financial hardship, inability to use the timeshare, fraud or oppressive conduct by the timeshare company during the sale, or any other circumstances.

This is also a true statement on the face of the Amended Complaint. It is clear from the allegations that TET, other exit companies, and law firms specializing in timeshare exits like Defendants SGB and Privett exist because the timeshare companies will not release owners from their contracts. Otherwise, timeshare owners would not be hiring TET, SGB and Privett to negotiate these exits. Further, Wyndham stresses throughout its Amended Complaint that its timeshare contracts are binding and inviolate, and its compelling need to enforce those contracts. Thus, by its own allegations, Wyndham is admitting that its owners cannot cancel their contracts with Wyndham, and that TET is damaging Wyndham by causing these owners to cancel the contracts by hiring TET to negotiate exits.

Further, Wyndham also alleges the completely contradictory facts that it has its own exit program called the "Ovation Program" under which it will release owners from their timeshare obligations. For TET's alleged statement that timeshare companies do not release owners from

their contract to be false for purposes of the Lanham Act, Wyndham would have to release *every owner* requesting that they be released.  That certainly has not been alleged by Wyndham and, given the allegations, it is highly unlikely that is Wyndham's policy.

As described above, there are no allegations that TET has referred to Wyndham specifically as a "scam" or that Wyndham has engaged in "unlawful" conduct.  Nor (as described below) has Wyndham identified any advertisement in which these two statements or "implications" have been used.  Wyndham has also failed to allege that TET states Wyndham has violated any specific laws.  However, even if TET expressly stated in an advertisement that the timeshare industry was a "scam" or that participants in the industry engaged in "unlawful" activities, given the plethora of legislation designed to protect consumers from timeshare companies and the abundance legal actions in state and federal courts throughout the US, such generalized statements would be factually accurate.

**6.      Wyndham's Lanham Act claim against HHMG (Count 3) should be dismissed.**

Like the original Complaint, Count 3 of the Amended Complaint alleges contributory false advertising in violation of the Lanham Act, and names Happy Hour Media Group.  As this Court ruled in its order dismissing Wyndham's original Complaint, "to state a contributory false advertising claim, a plaintiff must adequately plead an underlying claim for false advertising." Doc. 60, at 6; *see also Duty Free Americas, Inc. v. Estee Lauder Companies, Inc*., No. 12-60741-CIV, 2014 WL 1329359, at *17 (S.D. Fla. Mar. 31, 2014), *aff'd*, 797 F.3d 1248 (11th Cir. 2015).  Thus, Counts 2 and 3 of the Complaint must be dismissed as a matter of law.

**C.     The Amended Complaint fails to state a claim for violation of FDUTPA (Count 5).**

In the dismissing Wyndham's FDUTPA claim (Count 5), the Court held that "the success of [Wyndham's] FDUTPA claim is tied to the success of their Lanham Act claim for false

advertising.  Therefore, having failed to adequately state a claim under the Lanham Act, Plaintiffs also cannot state an FDUTPA claim."  Doc. 60, at 8-9.  *See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta*, 702 F.3d at 1296; *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (a plaintiff's "claim for a violation of [FDUTPA] rises or falls on the success of" their Lanham Act false advertising claim).  As set forth above, Wyndham has failed to adequately allege a cause of action under the Lanham Act.

However, even assuming Wyndham has stated a claim under the Lanham Act, Wyndham's FDUTPA claim fails for other reasons.

First, Wyndham's claim for violation of FDUTPA lacks the particularity required under Rule 9(b).  Because Wyndham claims advertising misrepresentation that is grounded in fraud, Wyndham is required to plead the alleged fraud with particularity pursuant to Rule 9(b).  *See, e.g., Koch v. Royal Wine Merchants, Ltd.,* 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012); *Garcia v. Santa Maria Resort, Inc.,* 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (same); *Stires v. Carnival Corp., Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) (directing plaintiff to replead FDUTPA damages with particularity); *see also North Brevard Hospital District v. McKesson Technologies, Inc.*, 2017 WL 951672, at *5 (M.D. Fla. 2017) (violations of FDUTPA must be pled with particularity); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *3 (S.D. Fla. 2016); *Librizzi v. Ocwen Loan Servicing, LLC*, 2015 WL 4761647, at *9 (S.D. Fla. 2015) (Rule 9 applies where defendant alleged to have violated FDUTPA "through deception"); *Blair v. Wachovia Mortg. Corp.,* 2012 WL 868878, at *3 (M.D. Fla. 2011); *DHG Properties, LLC v. Ginn Companies, LLC*, 2010 WL 5584464, at *5 (M.D. Fla. 2010) (FDUTPA claim sounded in fraud and was subject to Rule 9(b)); *Siever v. BW Gaskets, Inc.,* 2009 U.S. Dist. LEXIS 20691, at * 3

(M.D. Fla. 2009) (FDUTPA must be pled with particularity); *Wrestle Reunion, LLC v. Live Nation Television Holdings, Inc*., 2008 U.S. Dist. LEXIS 61428, at *3 (M.D. Fla. 2008) (same).

First, the allegations against Brandon Reed, Trevor Hein, Thomas Parenteau and Happy Hour Media Group, LLC, are insufficient to state a claim under Rule 9(b).  There are no allegations meeting the strictures of 9(b), including what false and misleading statements were made by the three individual Defendants or the advertising agency; why the statements are false and misleading (most of them on their face are neither false nor misleading); which of the three individual Defendants or who at the advertising agency made the false and misleading statements; to whom these Defendants made the false and misleading statements; how the recipient relied upon the false and misleading statements; or what damage was caused by the alleged false and misleading statements.  As to *what* false and misleading statements were made, Wyndham makes amorphous allegations at best.  The alleged statements, for the most part, do not constitute statements of fact, and the allegations are insufficient as to *how* such statements could be false or misleading.

Second, like its Lanham Act claim, Wyndham's FDUTPA claim against TET is pled in a vague and conclusory manner, involving only a formalist recitation of the elements of the claim.  As set forth above, Wyndham's FDUTPA claim is limited to the sparse allegations in ¶ 221 of the Amended Complaint, which only alleges in the most conclusory fashion that TET made several vague misrepresentations.

Even assuming the allegations contain the required specificity, there is nothing which rises to the level of a deceptive trade practice within the meaning of Chapter 501, Florida Statutes.  In order to state a claim under FDUTPA, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.  *See Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc*., 169 So.3d 164, 167 (Fla. 4th DCA 2015).

The crux of Wyndham's FDUTPA allegations are that TET misrepresents to its customers that the customers can cancel their contracts with the timeshare companies because "lawful termination is only available to consumers directly from Wyndham … through the Ovation Program." Doc. 63, ¶ 221.  As described above, it is clear from the allegations that the purpose of TET, and the law firms TET retains on behalf of its consumers, is to negotiate an exit (or termination) of the timeshare contract between TET's customers and the timeshare developers, including Wyndham.  That is the primary subject matter and purpose of the contract between TET and its customers.  In addition, the allegations also show that, under these contracts between TET and its customers, TET agrees to issue a refund to the customers if it cannot negotiate the exit.  Accordingly, the statement that the customers can cancel their contracts via TET's negotiation process is not false or otherwise deceptive.  Rather, it is a statement of opinion as to a future event which is a term of a contract, a guarantee, between TET and the customer.  Thus, dismissal as to the FDUTPA claim is warranted here.

## IV.
## CONCLUSION

For the foregoing reasons, Defendants Reed Hein & Associates, LLC, Brandon Reed, Trevor Hein, Thomas Parenteau, and Happy Hour Media Group, LLC, respectfully request that this Honorable Court dismiss Counts 1, 3, and 5 of Wyndham's Amended Complaint (Doc. 63) with prejudice.


Respectfully submitted this 1st day of July 2019.


/s/ John Y. Benford
John Y. Benford, Esquire
Florida Bar No. 51950

E-mail:  john.benford@wilsonelser.com
E-mail:  alyssa.heitman@wilsonelser.com
Amy L. Baker, Esquire
Florida Bar No. 86912
E-mail:  amy.baker@wilsonelser.com
E-mail:  alyssa.heitman@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker
111 North Orange Avenue, Suite 1200
Orlando, Florida 32801
Telephone:  (407) 203-7599
Facsimile:  (407) 648-1376
Attorneys for Defendants
Reed Hein & Associates, LLC, Brandon
Reed, Trevor Hein, Thomas Parenteau, and
Happy Hour Media Group, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2019, the foregoing document was filed with the

Clerk of Court using the CM/ECF system and that all counsel of record received an electronic

copy.

/s/ John Y. Benford
John Y. Benford, Esquire