**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WYNDHAM VACATION OWNERSHIP,**
**et al.,**

        **Plaintiffs,**

**v.**                                              Case No:  **6:18-cv-02171-GAP-DCI**

**REED HEIN & ASSOCIATES, LLC,**
**SCHROETER GOLDMARK & BENDER,**
**P.S., HAPPY HOUR MEDIA GROUP,**
**LLC, MITCHELL R. SUSSMAN, KEN B.**
**PRIVETT, BRANDON REED, TREVOR**
**HEIN and THOMAS PARENTEAU,**

        **Defendants.**

---

## ORDER

Plaintiffs Wyndham Vacation Ownership, Inc.; Wyndham Vacation Resorts, Inc.; Wyndham

Resort Development Corporation; Shell Vacations, LLC; SVC-West, LLC; SVC-Americana, LLC;

and SVC-Hawaii, LLC (collectively, "**Wyndham**") sue Defendants Reed Hein & Associates, LLC

d/b/a Timeshare Exit Team ("**RHA**"); Thomas Parenteau ("**Parenteau**"); Brandon Reed ("**Reed**");

and Trevor Hein ("**Hein**") (collectively, "**TET**");as well as Happy Hour Media Group, LLC

("**Happy Hour**"); Mitchell R. Sussman ("**Sussman**"); Ken  B. Privett ("**Privett**"); and  Schroeter

Goldmark & Bender, LLC ("**SGB**").

In separate motions, TET, Happy Hour, SGB, and Privett ("**Movants**")[1] seek to dismiss

certain of Wyndham's claims.  (*See* Docs. 72, 73, 75).  Wyndham has responded.  (Doc. 83).  Upon

consideration, the Court finds that the motions are due to be denied.

---

[1]  Defendant Sussman filed an answer (Doc. 74).

## I. Background[2]

### A. Parties

Wyndham develops and sells timeshares throughout the United States. (Doc. 63, ¶¶ 2–4, 59–61). Defendant TET is a timeshare exit company directed and controlled by non-lawyers Reed, Hein, and Parenteau. (*Id.* ¶¶ 38–43). Defendant Happy Hour is a limited liability company formed by Reed and Hein to act as the in-house marketing agency for TET. (*Id.* ¶ 44). Defendants Sussman SGB, and Privett are licensed attorneys that have "bulk retainer agreements" with TET. (*Id.* ¶¶ 45–47, 113).

### B. Defendants' Scheme

Wyndham alleges that Defendants profit from deceiving timeshare owners, including owners of Wyndham timeshare properties ("**Wyndham Owners**"), into paying thousands of dollars with the expectation that Defendants will make it possible for them to get out of their timeshare contracts. (*Id.* ¶¶ 4, 5, 10). To do this, TET publishes false and misleading advertisements to convince Wyndham Owners that it has a "safe," "legitimate," or "guaranteed" means of "exit[ing]" them from their timeshare contracts. (*Id.* ¶¶ 5–6, 10–12, 95–108, 139). Those advertisements [published] by TET are made and created, at least in part, by Happy Hour. (*Id.* ¶¶ 108).

After successfully soliciting Wyndham Owners, TET instructs them to stop making payments on their timeshare contracts, telling them that so doing will facilitate the "exit." (*Id.* ¶¶ 13, 67, 110–111, 132). But TET does not disclose to Wyndham Owners that non-payment will result in a breach of their contracts, foreclosure of their timeshare interests, and other adverse consequences. (*Id.* ¶ 14).

---

[2] These facts are taken from the Amended Complaint, the allegations of which the Court must accept as true when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

TET then hires lawyer Defendants Sussman, SGB, and Privett (collectively, the "**Lawyer Defendants**") for a fixed fee to engage in fruitless negotiations with Wyndham.  (*Id.* ¶¶ 7–9, 112–114).  Without speaking to any Wyndham Owner, the Lawyer Defendants then send boilerplate demand letters ("**Demand Letters**") to Wyndham, demanding that it stop communicating with their client.  (*Id.* ¶¶ 19, 69, 115–128).  The Lawyer Defendants never work with Wyndham to legitimately terminate a timeshare contract.  (*Id.* ¶¶ 115).  Instead, they engage in three deceptive and unlawful **"Strategies":**

> i. The "Resignation": the Lawyer Defendants send a letter simply "notifying" the relevant Wyndham entity that the Wyndham Owner has "resigned" from the Timeshare Contract;
>
> ii. The "Deed Back": the Lawyer Defendants have the Wyndham Owner execute a quitclaim deed purporting to quitclaim the timeshare interest back to the relevant Wyndham entity; and
>
> iii. The "Strawman": the Wyndham Owner's timeshare interest is transferred to a strawman buyer – who lacks any intent or ability to pay – without the knowledge or consent of the relevant Wyndham entity.

(*Id.* ¶ 17, 20).  After using these Strategies, or after the timeshare contracts are foreclosed on, TET and the Lawyer Defendants falsely represent to their clients that they successfully cancelled or transferred their timeshare contracts.  (*Id.* ¶ 18).  These practices allegedly cause significant harm to Wyndham and to Wyndham Owners.  (*Id.* ¶¶ 139–147).

On December 19, 2018, Wyndham filed the instant suit, seeking injunctive and monetary relief. Following the Court's partial dismissal of Wyndham's initial complaint (*see* Doc. 60), Wyndham filed an Amended Complaint asserting claims for false advertising (Count I) and contributory false advertising (Counts II and III) in violation of the Lanham Act, 15 U.S.C. § 1125(a); tortious interference with contractual relations (Count IV); violation of Florida's

Deceptive and Unfair Trade Practices Act ("**FDUTPA**") (Count V); and civil conspiracy to commit

tortious interference (Count VI). (*Id.* ¶¶ 144–230). By way of the instant motions, the Movants

seek dismissal of Counts I, II, III, V and VI. (*see* Docs. 72, 73, & 75).

## II.     Legal Standards

The Federal Rules of Civil Procedure require pleaders to provide short and plain statements

of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts.

See Fed. R. Civ. P. 8(a), 8(d), & 10(b). Where a complaint contains claims of fraud or mistake,

however, Rule 9(b) imposes a heightened pleading standard, requiring that the circumstances

constituting fraud be stated with particularity. *See Brooks v. Blue Cross & Blue Shield of Fla.*, 116

F.3d 1364, 1381 (11th Cir. 1997). This particularity requirement is satisfied if the complaint alleges

"facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of

the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex*

*rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1223 (11th Cir. 2012) (quoting *Hopper v.*

*Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)).

If a complaint does not comport with the pleading requirements or fails to set forth a

plausible claim, it may be dismissed under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672,

678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausible claims must

be founded on sufficient "factual content" to allow the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *see also Miljkovic v.*

*Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015). To assess the sufficiency of the

factual content and the plausibility of a claim, courts draw on their "judicial experience and common

sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to

judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 679; *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012).

Courts do not consider other matters outside the four corners of the complaint, and they must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. *See Hayes v. U.S. Bank Nat'l Ass'n*, 648 Fed. App'x. 883, 887 (11th Cir. 2016);[3] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## III.    Analysis

### A.    False Advertising in Violation of the Lanham Act

In Count I, Wyndham asserts a claim against TET for false advertising under Lanham Act, which provides in pertinent part that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Section 1125(a) of the Lanham Act "extends only to plaintiffs whose interests fall within the zone of interests protected by" the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components,*

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

*Inc.*, 572 U.S. 118, 129 (2014) (internal quotations omitted).  Section 45 of the Lanham Act, codified

at 15 U.S.C. § 1127, provides a detailed statement of those interests:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

"[A] typical false advertising case will implicate only the Act's goal of 'protect[ing] persons

engaged in [commerce within the control of Congress] against unfair competition.'"  *Lexmark* at

131.  Thus, a Lanham Act plaintiff asserting a claim for false advertising must allege an injury to a

commercial interest in reputation or sales.  *Id.* at 131-32.  Further, to show proximate cause, a

plaintiff suing under the Lanham Act "must show economic or reputational injury flowing directly

from the deception wrought by the defendant's advertising; and that occurs when deception of

consumers causes them to withhold trade from plaintiff."  *Id*. at 133.

For the Lanham Act claim itself, a plaintiff must allege that:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory*

*of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

Turning to the instant case, TET argues that Wyndham lacks "standing"[4] because it does not

---

[4]  TET's "statutory standing" label is inapt.  While the Supreme Court has

fall within the "zone of interests" protected by the Lanham Act and its alleged injuries were not proximately caused by TET's advertisements. (Doc. 75, pp. 11–16). TET further argues that even if Wyndham had standing, its claim fails because TET's advertising statements do not constitute: (1) "commercial advertising or promotion" or (2) false or misleading statements.[5] (*Id.* at 16–21). The Court addresses each argument in turn.

### 1.　"Standing" Argument

In its original complaint, the Plaintiffs alleged that they suffered injury to their commercial interests because Wyndham Owners stopped making payments on their timeshare contracts. (Doc. 1, ¶ 135; Doc. 40, p. 10). But Wyndham failed to adequately "allege that [its] injury flow[ed] directly from TET's advertising." (Doc. 60, p. 6). For example, Wyndham did not allege that TET's advertisements included instructions to Wyndham Owners that they should stop making payments. Further, the initial complaint alleged that TET instructed Wyndham Owners to stop making payments *after* soliciting them through advertising. (*See id.* ¶¶ 12, 135, 138). Thus, the Court concluded that Wyndham's purported injury was too remote from TET's advertising and that Wyndham failed to adequately plead proximate cause. (*See* Doc. 60, p. 6).

Hanging its hat on the Court's prior decision, TET argues that "the only allegations which could possibly remedy Wyndham'[s] defective Lanham Act claim would be allegations establishing that TET publishes advertisements which instruct Wyndham Owners to stop making payments."

---

"on occasion referred to [the zone of interests] inquiry as 'statutory standing' and treated it as effectively jurisdictional[,] [t]hat label is an improvement over the language of 'prudential standing,' since it correctly places the focus on the statute. But it, too, is misleading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (citations omitted).

[5] In challenging the contributory false advertisement claims asserted against them, SGB and Privett advance the same arguments raised by TET. (*See* Doc. 72, pp. 4–7; *see* Doc. 73, pp. 10–16).

(Doc. 75, p. 13). The Court is unpersuaded.

TET cites no authority to support its contention that false advertisements must expressly tell viewers to withhold trade from a plaintiff or that the false advertising must be the only reason behind a consumer's actions for a plaintiff to prevail on a false advertising claim. Moreover, "[c]ourts have found that causation just requires that the false advertising proximately cause the claimed injury — it need not be the only cause or even the predominant cause of the injury." *Id.* (citing *J & M Turner, Inc. v. Applied Bolting Tech. Prods., Inc.*, No. CIV.A. 96-5819, 1997 WL 83766, at \*5 (E.D. Pa. Feb. 19, 1997); *accord Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1110 (M.D. Fla. 2019) ("Defendants' contentions that none of the Subject Advertisements expressly direct viewers to stop making payments to Diamond . . . *miss the mark on causation.*") (emphasis added).

Here, the Court finds that Wyndham adequately alleges "standing." With respect to the zone of interest requirement, Wyndham claims that it lost sales and suffered injury to its reputation. (*See, e.g.*, Doc. 63, ¶¶ 104, 106, 139, 142, 144 160–162). This is precisely the sort of commercial interests that the Lanham Act seeks to safeguard. *See Lexmark*, 134 S. Ct. at 1393. Thus, Wyndham has sufficiently pled that it is within the class of individuals whom Congress authorized to sue under § 1125(a).

Wyndham also sufficiently pleads proximate cause. It alleges that TET made several false and misleading advertising statements concerning TET's services and about Wyndham. (*Id.* ¶¶ 97–99, 109–110, 150–151). Those statements deceived identifiable Wyndham Owners into retaining TET, who then instructed them to stop satisfying their contractual obligations to Wyndham. (*Id.* ¶¶ 106, 152–155). As a result, Wyndham claims it suffered harm to their commercial interests. (*Id.* ¶¶ 106, 158–161, 160).

Wyndham also maintains that TET's purported false and misleading advertising statements caused Wyndham Owners to believing that Wyndham engaged in unlawful conduct and would not voluntarily release them from their timeshare contracts. (Doc. 63, ¶¶ 101–105). When "a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id.* at 1393.

Therefore, taking these allegation as true, Wyndham sufficiently alleges commercial and reputational injuries flowing directly from TET's advertising statements.[6] *See Westgate Resorts, Ltd. v. Reed Hein & Assocs*., LLC, No. 6:18-cv-1088-ORL-31DCI, 2018 WL 5279156, at \*\*9–10 (M.D. Fla. Oct. 24, 2018); *see also Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-ORL-37DCI, 2018 WL 735627, at \*3 (M.D. Fla. Jan. 26, 2018); *Orange Lake Country Club, Inc. v. Reed Hein & Assocs*., LLC, No. 6:17-cv-1542-ORL-31DCI, 2018 WL 5279135, at \*10 (M.D. Fla. Oct. 24, 2018). TET's "standing" argument is therefore rejected.

### 2.    Commercial Competition Argument

Ignoring case law addressing this issue, TET next argues, as it has in other cases, that its advertising statements do not constitute "commercial advertising or promotion" under the Lanham Act because there is no "commercial competition" between Wyndham and TET. (Doc. 75, p. 15). TET is wrong. Competition is not required to bring a claim under the Lanham Act. As the Supreme Court observed in *Lexmark*:

---

[6] TET contends that its advertisements are directed at the "timeshare industry" as a whole and do "not expressly or implicitly nam[e] any one timeshare company," thus there is no link between the advertisements and Wyndham's injury. (Doc. 75, pp. 15–16). However, TET submits no authority to support its argument and common sense dictates that an entity can plausibly be harmed by disparaging statements directed at the industry it occupies. To be sure, [c]ourts have . . . afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name, . . . but also where the defendant damages the product's reputation." *Lexmark*, 572 U.S. at 138 (citations and internal quotations omitted). In any event, the Amended Complaint alleges that TET made false statements specifically targeted at Wyndham. (*See, e.g.*, Doc. 63, ¶¶ 102–103).

a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation. But a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to "unfair competition" in § 1127. . . . It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors.

572 U.S. at 136. Accordingly, the Court will not dismiss Wyndham's claim on this ground. *See Orange Lake Country Club, LLC*, 2018 WL 5279135, at \*9 (declining to dismiss a Lanham Act claim where TET mounted the same argument); *see also Westgate Resorts*, 2018 WL 5279156, at \*9 (same).

### 3.      False or Misleading Statement/Non-Actionable Opinion Argument

Under the Lanham Act, actionable statements include: "(1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999), *aff'd sub nom. BellSouth Adv. v. Lambert Pub.,* 207 F.3d 663 (11th Cir. 2000) (citation omitted). Therefore, to determine if an advertisement is false or misleading, a court "must analyze the message conveyed in full context" and "must view the face of the statement in its entirety." *Osmose, Inc. v. Viance*, LLC, 612 F.3d 1298, 1308 (11th Cir. 2010) (citation omitted).

Statements of opinion and puffery (i.e., exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely) are not actionable under the Lanham Act. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc*., 227 F.3d 489, 496 (5th Cir. 2000); *BellSouth*, 45 F. Supp. 2d at 1320). But a statement of opinion may be actionable if it "fairly implies a [factual] basis." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc*., 797 F.3d 1248, 1277 (11th Cir. 2015) (alteration in original) (quoting *Osmose*, 612 F.3d at 1311). Likewise, "specific and measurable

claims" are not puffery "and may be the subject of deceptive advertising claims." *Fed. Trade Comm'n v. World Patent Mktg., Inc.*, No. 17-CV-20848, 2017 WL 3508639, at \*12 (S.D. Fla. Aug. 16, 2017) (quoting *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 11 (1st Cir. 2010) (citation and internal quotation marks).

Here, Wyndham alleges that TET made advertising statements that were "either literally false or deceptively misleading" and that said statements caused Wyndham Owners to, *inter alia*: (1) believe that Wyndham engaged in unlawful activity and would not release them from their timeshares, (2) hire TET, and (3) cease payment on their timeshare contracts. (Doc. 1, ¶¶ 96–106, 150–163.)

TET tries to sidestep Wyndham's allegations by arguing that its advertisements were accurate and/or constitute non-actionable opinion and puffery. (Doc. 75, pp. 18–21). But this argument fails to appreciate that the Court, when ruling on its motion, "must accept as true all well-pled factual allegations" in the Amended Complaint. *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1287 (M.D. Fla. 2017). Moreover, a determination of whether TET's advertising statements are false and misleading (as opposed to true, non-actionable opinions), involves a fact-intensive inquiry that is inappropriate for resolution on a motion to dismiss. *See Duty Free Americas*, 797 F.3d at 1278 (determining whether a statement is false or misleading is a "fact-intensive" inquiry").

Accordingly, dismissal is unwarranted. *See Diamond Resorts*, 2018 WL 735627, at \*3 (rejecting the same argument); *see also Orange Lake Country Club*, 62018 WL 5279135, at \*8.

**B.    Contributory False Advertising in Violation of the Lanham Act**

Counts II and III assert claims for contributory false advertising against SGB, Privett, and Happy Hour. (*Id.* ¶¶ 166–187). To state a contributory false advertising claim against a defendant,

the plaintiff must adequately allege two elements.  First the plaintiff must allege that "a third party . . . directly engaged in false advertising that injured the plaintiff."  Second, the plaintiff must allege that the "the defendant contributed to that conduct." *Duty Free Americas*, 797 F.3d at 1277.

The second element requires the plaintiff to assert that the defendant: (1) "had the necessary state of mind — in other words that it 'intended to participate in' or actually knew about' the false advertising"; and (2) "actively and materially furthered the unlawful conduct — either by inducing it, causing it, or in some other way working to bring it about[,]" such as through the "provision of a necessary product or service, without which the false advertising would not be possible." *Id.* at 1277 (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844 (1982)).

In determining whether a plaintiff has adequately alleged facts to support a claim for contributory false advertising, the Eleventh Circuit instructs courts to consider: (1) "the nature and extent of the communication between the third party and the defendant regarding the false advertising;" (2) "whether or not the [defendant] explicitly or implicitly encouraged the false advertising;" (3) "whether the false advertising is serious and widespread, making it more likely that the defendant kn[ew] about it and condoned the acts;" and (4) "whether the defendant engaged in bad faith refusal to exercise a clear contractual power to halt the false advertising." *Id.* at 1278.

Happy Hour seeks dismissal of the contributory claim against it on the grounds that the underlying claim for false advertising is insufficiently pled.  (Doc. 75, p. 21.)  As discussed above, however, Wyndham's underlying claim for false advertising survives dismissal.  (*See* Part III. A).  Moreover, Wyndham adequately alleges that "the advertisements run by TET were made and created, at least in part, by Happy Hour." (*See* Doc. 63, ¶ 108).  Therefore, the Court rejects this argument.

Like Happy Hour, SGB and Privett erroneously argue that Wyndham's underlying claim for false advertising is inadequately pled. (*See* Doc. 72, pp. 4–7; *see also* Doc. 73, pp. 10–16). In addition, SGB and Privett argue that Wyndham fails to allege that they induced, caused, or participated in TET's advertising. (Doc. 72, pp. 7–10; Doc. 73, pp. 16–17). Applying the factors in *Duty Free Americas*, the Court concludes otherwise.

Wyndham alleges that SGB and Privett are aware of TET's false advertising due to its widespread dissemination. (Doc. 63, ¶¶ 107, 172). "SGB[] and Privett explicitly or implicitly encourage the false advertising because they knowingly accept legal representation of the consumers deceived by the false advertising" and "derive much, if not all, of their revenue from the consumers solicited through TET's false advertising." (*Id.* ¶¶ 171, 173–174). "Without . . . SGB[] and Privett's willingness to accept those consumers as clients," Wyndham alleges, "TET could not advertise what they do." (*Id.* ¶¶ 171).

Accepting these allegations as true, the Court finds that Wyndham has pled viable claims of contributory false advertising against SGB and Privett. *Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, No. 18-81251-CIV-REINHART (S.D. Fla. July 3, 2019) (Reinhart, M.J.) (Doc. 132, pp. 19–20) (denying a motion to dismiss claims of contributory false advertising where similar allegations were made); *Duty Free Americas*, 797 F.3d at 1274 (an entity can be liable if it "continues to supply its [service] to one whom it knows or has reason to know is engaging in [false advertising]." Thus, SGB and Privett's motions to dismiss are also denied as to Wyndham's claims for contributory false advertising.

**C. Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et. seq*.**

In Count V, Wyndham claims that Defendants violated FDUTPA by, *inter alia*, engaging in the alleged false advertising addressed in the first three Counts. (Doc. 63, ¶¶ 214–227). FDUPTA

prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state such a claim, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).

Defendants argue that this claim should be dismissed because Wyndham fails to satisfy Rule 9(b)'s heightened pleading standard. (Doc. 75, pp. 21–23).[7] Beyond this, the Defendants argue that Wyndham fails to present facts sufficient to state an FDUTPA claim.[8] (*Id.* at 23–24; Doc. 72, pp. 10–12; Doc. 73, pp. 18).

The Court is not persuaded that Wyndham's FDUTPA claim rests on fraud allegations. But even if it did, Wyndham's allegations suffice. Wyndham identifies and details the alleged false and misleading advertising statements, when and where they were made, why their statements were false or misleading, how the statements deceived Wyndham Owners into retaining TET and stopping payment on their timeshare contract, how Wyndham was damaged, and what Defendants obtained as a consequence. (Doc. 63, ¶¶ 1–27, 92–137).

---

[7] TET cursorily argues that the FDUTPA claim fails because their advertising statements constitute mere puffery and other nonactionable opinions. (Doc. 75, p. 24). As discussed *supra*, the Court cannot conclude, as a matter of law, that the statements at issue constitute mere opinion or puffery.

[8] Relying on *Kelly v. Palmer, Reifler & Associates, P.A.*, 681 F. Supp. 2d 1356, 1374–76 (S.D. Fla. 2010), SBG and Privett argue that Wyndham's FDUTPA claim fails because the letters they sent to Wyndham were pre-suit demand letters and "are not included in the statute's definition of 'trade or commerce' and cannot give rise to a cause of action under FDUTPA." (Doc. 72, pp. 12–13; Doc. 73, pp. 18–20). The Court disagrees. For starters, Wyndham's FDUTPA claim does not rest solely on the letters sent by SGB and Privett. It is also premised on, *inter alia*, Defendants' alleged false advertising. For this reason alone, SGB and Privett's argument fails. Their argument is also unavailing because, unlike the lawyers in *Kelly*, there are no allegations to suggest that the SBG and Privett sent the letters to Wyndham in pursuit of civil legal remedies. Rather, the Amended Complaint alleges that the letters were sent simply to facilitate Defendants' scheme. (Doc. 63, ¶¶ 8, 19, 112–128). Therefore, this argument lacks merit.

In any event, "[t]he success of [a plaintiff's] . . . FDUTPA claim[ ] is tied to the federal Lanham Act claim[ ] for . . . false advertising." *See Sovereign Military Hospitaller Order*, 702 F.3d at 1296 (citing *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008)). So, just as the Court denies Defendants' motion to dismiss the false advertising claims (*see* Part III.A.–B.), it also denies their motion to dismiss the FDUTPA claim.

### D.      Civil Conspiracy

Count VI asserts a claim against Defendants for civil conspiracy. (Doc. 1, ¶¶ 228–244). A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008).

Generally, an agent cannot conspire with his or her corporate principal or employer, or another such agent, because a conspiracy requires at least two actors, and a corporation is a single entity that can only act through its agents, officers, and employees. *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 2007). This principle is referred to as the "intracorporate conspiracy doctrine," and extends to the conduct of an attorney acting within the scope of an attorney-client relationship. *Farese v. Scherer*, 342 F.3d 1223, 1231 (11th Cir. 2003); *American Credit Card Telephone Co. v. Nat'l Pay Telephone Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987).

SGB and Privett insist that Wyndham's conspiracy claim is barred by the intracorporate conspiracy doctrine because TET hired them to provide legal services on behalf of Wyndham Owners. (Doc. 73, pp. 20–23; Doc. 72, pp. 13–14). Again, however, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Dusek*

*v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). While Wyndham alleges that SGB and Privett had "bulk retainer agreements" with TET (Doc. 63, ¶ 7), it also makes clear that "SGB and Privett do not serve as "counsel" to TET and that the "bulk retainer agreements" simply "provide a façade for TET to claim that each . . . Wyndham Owner is represented by counsel." (*Id.* at 8, 19, 113, 119–123, 127, 239). According to Wyndham, SGB and Privett do not provide legal advice to TET. (*Id.* at 8). Nor do they communicate with Wyndham Owners. (*Id.* at 8, 9, 19, 119–123). Thus, SGB and Privett "are not lawyer-agents of TET. They are independent entities" that derive a financial benefit "from participating in the conspiracy." (*Id.* ¶ 239).

These allegations suffice to overcome application of the intracorporate conspiracy doctrine at this stage in the case. Therefore, Wyndham's conspiracy claim will not be dismissed.

## IV. Conclusion

It is, therefore **ORDERED** that the Motions to Dismiss filed by Defendants Reed Hein & Associates, LLC, Happy Hour Media Group, Schroeter Goldmark & Bender, P.S., Brandon Reed, Trevor Hein, Thomas Parenteau, and Ken B. Privett (Docs. 72, 73, 75) are **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on August 20, 2019.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE