# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

WYNDHAM VACATION
OWNERSHIP, INC. et al.,

    **Plaintiffs,**

v.             **Case No:  6:18-cv-2171-Orl-31DCI**

REED HEIN & ASSOCIATES, LLC,
BRANDON REED, TREVOR HEIN,
THOMAS PARENTEAU, HAPPY
HOUR MEDIA GROUP, LLC,
MITCHELL R. SUSSMAN, KEN B.
PRIVETT and SCHROETER
GOLDMARK & BENDER, P.S.,

    **Defendants.**

_____

## ORDER

   This cause comes before the Court for consideration without oral argument on the following motions:

- MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANT REED HEIN & ASSOCIATES, LLC (Doc. 120);

- MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD BY DEFENDANT SGB AS PRIVILEGED (Doc. 124);

- MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD BY DEFENDANT PRIVETT AS PRIVILEGED (Doc. 125); and

- MOTION FOR PROTECTIVE ORDER BY KEN B. PRIVETT (Doc. 127).

## I.  Introduction

   Plaintiffs seek to compel documents from three defendants. The defendants claim the documents they are withholding are privileged.  After review, the Court finds that the defendants

have not established that the documents are privileged, and, thus, the defendants will be compelled to produce the documents.

### A.    Background

On June 10, 2019, Plaintiffs filed an amended complaint against Defendants arising, in part, from Defendants' alleged representation of timeshare owners seeking to cancel their timeshare contracts with Plaintiffs.  *See* Doc. 63 (the Complaint).  Plaintiffs allege, in sum, that Defendants engaged in a timeshare cancellation scheme designed to induce the timeshare owners to breach their timeshare purchase agreements with Plaintiffs.  *See id.* at 2-10.

Defendant Reed Hein & Associates, LLC (Reed Hein) purports to consult with and provide services to people who own unwanted interests in timeshares sold by developers, including Plaintiffs.  *See, e.g.*, Doc. 120-8.  Reed Hein is not a law firm, but does, at times, allegedly hire law firms to act on behalf of its customers – i.e. the timeshare owners who hire Reed Hein.  *See, e.g.*, Doc. 120-2 at 3; Doc. 126-1.   When Reed Hein hires a law firm, Reed Hein claims to serve as an intermediary between the timeshare owners and the law firm.  *See, e.g.*, Doc. 120-2 at 3.  Defendant Schroeter Goldmark & Bender, P.S. (SGB) is a such a law firm and claims to represent some Reed Hein customers (*see generally* Doc. 128); Defendant Ken B. Privett (Privett) is an individual attorney who also claims to represent some Reed Hein customers.  *See generally* Doc. 126.

At the beginning of the discovery process, Plaintiffs served requests for production on Reed Hein, SGB, and Privett.  Doc. 120-1 (Reed Hein); *see* Doc. 124 at 4 n.1 (SGB); Doc. 125 at 4 n.1 (Privett).  Each of those requests ultimately resulted in the production of a privilege log.

SGB produced two categorical privilege logs (Docs. 124-2; 124-3, collectively the SGB Privilege Logs), which separate the allegedly privileged documents into six categories.  *See* Docs.

124-2; 124-3.[1]  Privett produced privilege logs that contained approximately 188 pages of entries (Docs. 125-2; 125-3; 125-4; 125-5, collectively the Privett Privilege Logs); the vast majority of these entries appear to involve communication between Privett and Reed Hein, while a few entries appear to involve communication between Privett and individual timeshare owners (but usually with Reed Hein included on the communication).  *See* Docs. 125-2; 125-3; 125-4; 125-5.  Plaintiffs dispute those assertions of privilege, and on September 20, 2019, filed motions to compel production of the documents referenced in the SGB Privilege Logs and the Privett Privilege Logs. Doc. 124 (the Motion to Compel SGB); Doc. 125 (the Motion to Compel Privett).  On September 26, 2019, SGB filed a response in opposition to the Motion to Compel SGB (Doc. 128, the SGB Response), and Privett filed a response in opposition to the Motion to Compel Privett (Doc. 126, the Privett Response).  The Court granted Plaintiffs leave to file replies to both responses, and

---

[1] The SGB Privilege Logs' categories read in full as follows:

1) SGB Communications with Reed Hein not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services involving Wyndham Owners;

2) SGB Communications with Reed Hein and Wyndham Owners not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services involving Wyndham owners;

3) SGB communications with Wyndham Owners not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services involving Wyndham Owners;

4) SGB Communications with Local Counsel regarding any legal proceedings which may have been filed or which may be filed by or against Wyndham Owners that are not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services involving Wyndham Owners;

5) Internal SGB documents, including but not limited to attorneys' and/or staff's gathering of factual information, mental impressions, conclusions, opinions, and/or theories, prepared in anticipation of possible litigation involving Wyndham Owners.

6) Any documents related to legal services or in anticipation of possible litigation involving timeshare owners other than Wyndham Owners and adverse to timeshare resort companies other than Plaintiffs that are neither relevant to this lawsuit nor proportional to the needs of this case.

Plaintiffs filed those replies on October 14, 2019.  Doc. 140 (the Privett Reply); Doc. 141 (the SGB Reply).

Reed Hein responded to Plaintiff's request for production by objecting to the production of certain communications based on attorney-client privilege (Doc. 120-2) and producing a categorical privilege log, which separated the allegedly privileged documents into four categories: 1) communications between Reed Hein and "law firm vendors" (including SGB and Privett); 2) communications between Reed Hein and Reed Hein's customers who own Wyndham timeshares; 3) communications between "law firm vendors" (including SGB and Privett) and Reed Hein customers; and 4) communications between Reed Hein "employees/representatives" and Reed Hein's general counsel and outside counsel.  Doc. 120-3 at 5-7 (the Reed Hein Privilege Log).

After conferring with Plaintiffs, Reed Hein agreed to amend its privilege log to describe the categories of the withheld documents in more detail.  *See* Doc. 120-4.  Plaintiffs and Reed Hein continued to confer regarding the privilege log until August 22, 2019, when Reed Hein informed Plaintiffs that Reed Hein had "decided to withdraw its assertion of privileged on all categories set forth in its privilege log, with the exception of the last category (communications between Reed Hein in its General Counsel, outside counsel, etc.)."  Doc. 120-6.

On August 26, 2019, Plaintiffs contacted SGB and Privett, who informed Plaintiffs they intended to seek protective orders to prevent Reed Hein's document production.  Doc. 120 at 5. On September 5, 2019, Reed Hein informed Plaintiffs that:

> SGB and Privett have advised Reed Hein they will be filing a motion for protective order asking the Court to prevent Reed Hein from disclosing the documents set forth in Reed Hein's privilege log (with the exception of the last category) . . . SGB and Privett have asked Reed Hein to withhold production of these documents until the Court has resolved these issues. Accordingly, Reed Hein will not disclose the documents until that ruling or [until Plaintiffs], SGB, Privett and Reed Hein all reach a resolution on these matters prior to the ruling.

Doc. 120-7.

On September 13, 2019, Plaintiffs filed a motion to compel production of the documents Reed Hein "had already agreed to produce" (Doc. 120, the Motion to Compel Reed Hein), and on September 27, 2019, Reed Hein filed a response in opposition.   Doc. 129 (the Reed Hein Response).  On September 26, 2019, Privett filed a motion for protective order (Doc. 127, Privett's Motion for Protective Order), and on October 10, 2019, Plaintiffs filed a response in opposition. Doc. 135 (the Protective Order Response).

Plaintiffs' motions to compel documents from SGB, Privett, and Reed Hein, as well as Privett's motion for protective order, all turn on the issue of privilege, deal with similar facts, and make substantially similar arguments.  Thus, the Court will address those four motions together.

### B.      The Motion to Compel SGB and the Motion to Compel Privett

Plaintiffs' motions to compel directed to SGB and Privett are near-verbatim copies of each other.  *See generally* Doc. 124; Doc. 125.  In sum, Plaintiffs argue that both SGB and Privett failed to establish that any of the documents identified in their respective privilege logs are protected by attorney-client privilege or work-product privilege.  *Id.*

Plaintiffs argue that attorney-client privilege does not apply to any of the withheld documents because neither SGB nor Privett can establish the existence of an attorney-client relationship – between themselves and the timeshare owners they claim to represent – under the standard set forth by the Eleventh Circuit in *Jackson*.  Doc. 124 at 11-18; Doc. 125 at 7-17 (citing *Jackson v. BellSouth Telecomms.* 372 F.3d 1250, 1250 (11th Cir. 2004) (applying Florida law)). Plaintiffs also argue that even assuming an attorney-client relationship existed, neither Privett nor SGB can demonstrate that the attorney-client privilege was not waived by the presence of a third party – Reed Hein – on the allegedly privileged communications.  Doc. 124 at 18-23; Doc. 125 at 17-23.  Additionally, Plaintiffs argue that the work-product doctrine does not apply because neither SGB nor Privett can show that the documents on their respective privilege logs were prepared by

a party or a representative for a party in anticipation of litigation.  Doc. 124 at 23-24; Doc. 125 at 23-24.  Finally, Plaintiffs assert that the SGB Privilege Log is deficient.  Doc. 124 at 8-11.

In response, SGB argues that all of the documents identified in the SGB Privilege Logs are protected by attorney-client privilege, that certain of the documents identified in the SGB Privilege Logs are also protected by work-product privilege, and that the SGB Privilege Logs are not deficient. *See generally* Doc. 128 at 5-21.  However, nothing in the SGB Response correlates the arguments therein to the SGB Privilege Logs.  As will be discussed, this is fatal to SGB's position, but, nonetheless, the Court will also discuss the merits of the SGB Response.

In response, Privett echoes the arguments presented by SGB: that all of the documents identified in the Privett Privilege Logs are protected by attorney-client privilege and certain of the documents identified in the Privett Privilege Logs are also protected by work-product privilege. *See generally* Doc. 126.  However, again, nothing in the Privett Response correlates the arguments therein to the Privett Privilege Logs.[2]  As will be discussed, this is fatal to Privett's position, but, nonetheless, the Court will also discuss the merits of the Privett Response.

---

[2] The only reference Privett makes to the Privett Privilege Logs appears in the context of his argument that "the timeshare owners" assented to be represented by Privett as counsel.  Doc. 126 at 11-12.  Privett alleges that he communicated directly with certain timeshare owners and that "[t]hese communications include some instances where clients faxed, mailed, or emailed documents directly to Privett, or simply thanked him for his services. There are also internal notes that document verbal conversations directly between Privett and the timeshare owners." *Id.* at 11.  Privett states that all such documents "have been noted on the privilege log." *Id.*  Privett makes no argument that these communications independently establish any attorney-client relationships, nor does he offer the Court any way of identifying which entries on the privilege log correspond to this description of "direct communication."  Privett also states perfunctorily that "[t]he privilege logs themselves identify the thousands of communications between Privett and Reed Hein regarding client matters . . . ." *Id.* at 12.

### C.    The Motion to Compel Reed Hein

In the Motion to Compel Reed Hein, Plaintiffs seek to compel communications between Reed Hein and SGB or Privett, and between Reed Hein and "timeshare owners that SGB and Privett claim to have represented as attorneys."  Doc. 120 at 2-3.  Plaintiffs state that Reed Hein voluntarily withdrew its assertion of privilege with respect to the documents Plaintiffs seek to compel, that the documents are not privileged, and that Reed Hein now agrees the documents are not privileged.  Doc. 120 at 7-15.  Plaintiffs also request that "as sanctions against [Reed Hein] for having obstructed discovery," the Court award Plaintiffs reasonable attorney fees and costs associated with their bringing the Motion to Compel Reed Hein.  Doc. 120 at 16.

In response, Reed Hein explains that it "agreed to delay production of the approximately 391,000 privileged documents until this Court ruled on SGB and Privett's motions" because Reed Hein was concerned that disclosing the documents earlier would undermine the motions for protective order and possibly subject Reed Hein to sanctions.  Doc. 129 at 3-4.  Reed Hein does not assert any claims of privilege.  *See id*.[3]  Reed Hein does argue, however, that sanctions against Reed Hein – in the form of attorney fees – would be improper.  *Id.* at 5.

### D.    Privett's Motion for Protective Order

In Privett's Motion for Protective Order, Privett seeks a protective order preventing Reed Hein from "disclosing documents that may be protected under the attorney-client or work-product privileges."  Doc. 127 at 1.  Privett explains that he believes that Reed Hein possesses privileged documents, and the question of whether those documents are, in fact, privileged is currently before

---

[3] Reed Hein does mention, as "Background," that it decided to withdraw its claims of privilege (with respect to the documents that Plaintiffs seek to compel in the Reed Hein Motion) based "entirely upon costs and other factors" and not on "the merits of its claims of privilege – which are sound . . . ."  Doc. 129 at 2-3.

the Court. *See* Doc. 125. Privett asserts that, absent an order from the Court ruling that the documents are not privileged, Privett is under an ethical obligation to protect the privileged status of the documents. Doc. 127 at 2. Accordingly, Privett seeks a protective order preventing disclosure until the Court resolves the issue of privilege raised in the Motion to Compel Privett. Doc. 127 at 5.

In response, Plaintiffs argue that Privett's Motion for Protective Order "extends Privett's obstruction of discovery from preventing discovery of his own documents to preventing discovery of documents in the possession of another party." Doc. 135 at 2. While taking issue with Privett's improper incorporation of argument from another document (i.e. Privett's response to the motion to compel), Plaintiffs assert that Privett failed to establish the requisite good cause to warrant a protective order or that the documents at issue are protected by either attorney-client or work-product privilege. *Id.* at 2.

## II.     Overview of Applicable Law

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Anglin v. Maxim Healthcare Servs., Inc.*, Case No. 6:08-CV-689-ORL-22DAB, 2009 WL 928305, at *2 (M.D. Fla. Apr. 3, 2009) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)).

### A.     Attorney-Client Privilege

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Slaughter*, 694 F.2d 1258, 1260

(11th Cir. 1982).[4]  The purpose of the privilege is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The party invoking the privilege has the burden of proving its existence, and, in doing so, must establish:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [a] member of a bar of a court[ ] or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990) (internal block quoting omitted).

"This burden can be met only by an evidentiary showing based on competent evidence, and cannot be 'discharged by mere conclusory or ipse dixit assertions.'"  *CSX*, 1995 WL 855421, at *1 (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015 (1987)).  The privilege is not absolute and, thus, should be "construed as narrowly as is consistent with its purpose."  *Noriega*, 917 F.2d at 1551.

The test to determine whether an attorney-client relationship exists in the absence of a formal retainer "is a subjective one and 'hinges upon the client's belief that he is *consulting* a lawyer in that capacity and his *manifested intention* is to seek professional legal advice.'  However, '[t]his subjective belief must . . . be a reasonable one.'"  *Jackson v. BellSouth Telecomm.*, 372 F.3d

---

[4] The Court need not address the issue of whether federal law or Florida law applies here because the Court's ruling in this instance is unaffected by the choice of law.  *See, e.g.*, *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 831 (Bankr. S.D. Fla. 2016) ("[T]he applicable Florida law on the issues of attorney-client privilege . . . is so parallel to the applicable federal common law that it would lead the Court to the same conclusions.").  Further, no party made specific argument that the Court should follow federal law, Florida law, or the law of some other state.  *See* Doc. 126 at 3 n.2; Doc. 128 at 6 and 11 n.38.

1250, 1281 (11th Cir. 2004) (applying Florida law) (emphasis and alterations in original) (citation omitted); *see also Green v. Montgomery Cty. Ala.*, 784 F. Supp. 841, 845-46 (N.D. Ala. 1992) (applying federal law).  In *The Florida Bar v. Beach*, the Florida Supreme Court found that an attorney-client relationship had not been formed despite the client's testimony that she believed she was represented by the attorney.  675 So. 2d 106, 109 (Fla. 1996).   There, the purported client sought out assistance from a paralegal instead of an attorney, entered into a contract with the paralegal that stated that the attorney would consult with the client for 30 minutes but would not represent the client as an attorney, and dealt exclusively with the paralegal and never met with the attorney.  *Beach,* 675 So. 2d at 109.  In *Jackson*, the Eleventh Circuit Court of Appeals, citing *Beach*, stated that "there can be no attorney-client relationship when the client does not consult with the attorney, especially when there is no contact between them."  372 F.3d 1250, 1282-83 (11th Cir. 2004) (addressing a Florida legal malpractice claim and adding that "[a]n attorney-client relationship cannot be formed when the attorney has literally no basis to know that a putative client thinks the lawyer has been retained").  In a footnote, the court in *Jackson* explained:

> The subjective belief test is only applied after a putative client consults with an attorney, and is used to emphasize that, following a consultation, it is the belief of the putative client and not the lawyer's actions that determines whether a lawyer-client relationship has developed.  Requiring a subjective belief to be reasonable makes sense, since the subjective belief of a 'client' that he has retained a lawyer whom he has never consulted—or even spoken to—cannot be an objectively reasonable one. That an actual consultation with a lawyer is required before a putative client can develop a reasonable subjective belief in the relationship is reflected in the Florida Evidence Code's definition of a "client" as one "who consults a lawyer with the purpose of obtaining legal services or who is rendered services by a lawyer."

372 F.3d at 1281 n.29 (internal citations omitted).

It should be noted, though, that some courts have recognized the existence of an attorney-client relationship in situations where the putative client did not immediately consult with the attorney.  For example, courts have recognized an attorney-client relationship where the parent or

spouse of the person who needed legal services consulted an attorney on that person's behalf. These situations generally arise because the person in need of legal services is disabled, incarcerated, or otherwise incapable of immediately consulting an attorney on his own behalf. *See, e.g., Gerheiser v. Stephens*, 712 So. 2d 1252, 1254 (Fla. Dist. Ct. App. 1998).[5] Courts have also found the existence of an attorney-client relationship in certain limited and well-recognized situations where – arguably – the putative client has not consulted with the attorney; specifically, an employee consulting counsel on behalf of a corporation or an insurer retaining counsel for its insured. *See, e.g. In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 462-63, 463 n.43 (Bankr. M.D. Fla. 2013).

### B.    Work-Product Doctrine

"The work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). Federal Rule of Civil Procedure 26(b)(3) governs the application of the work-product privilege and provides, in part, as follows:

(A)    *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i)    they are otherwise discoverable under Rule 26(b)(1); and

(ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[5] The court in *Gerheiser* acknowledged the existence of an attorney-client relationship between a criminal defendant and his prospective attorney where the defendant's mother acted as an "agent" for the defendant and consulted an attorney for the purpose of initially securing him legal representation. *See Gerheiser* at 1254. The court noted that "Gerheiser essentially acted as the messenger for her son, who was incarcerated in the jail and who asked her to find him an attorney," and went on to find that Gerheiser was "reasonably necessary for the transmission of the communication." *Id.*

(B)   *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

*See also Kemm v. Allstate Prop. & Cas. Ins. Co.*, No. 8:08-cv-299-T-30EAJ, 2009 WL 1954146, at *2 (M.D. Fla. July 7, 2009) (stating that federal law provides the primary decisional framework for the application of work-product privilege in federal diversity cases) (citing *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990)); *but see Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005) (applying Florida law in determining whether the work-product privilege shielded documents from discovery in a bad faith action when the underlying action for which the documents were created took place in state court).

The party asserting work-product privilege bears the initial burden of demonstrating that the requested materials are protected work product.  *U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F.Supp.2d 1332, 1336-37 (M.D. Fla. 2007).  Again, this burden cannot be met through "mere conclusory or ipse dixit assertions."  *See CSX,* 1995 WL 855421, at *1 (quotation omitted).  If the work-product privilege applies, then the burden shifts to the moving party to demonstrate that the materials are discoverable under Rule 26(b)(1) and that there is a "substantial need" or the movant cannot obtain the substantial equivalent without "undue hardship." *Batchelor v. Geico Cas. Co.*, 2014 U.S. Dist. LEXIS 104992, at *9 (M.D. Fla. June 4, 2014).

## C.   Burden of Proof

The party claiming a privilege has the burden of proving its applicability.  *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 638–39 (S.D. Fla. 2011).  Federal courts have consistently recognized the well-settled proposition that "the burden is on [the] party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *CSX Transp. Inc. v. Admiral Ins. Co.*, No. 93-132-CIV-J-10, 1995 WL 855421, at *1 (M.D. Fla.

July 20, 1995) (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (quoting *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015 (1987)).  "A failure of proof as to any element causes the claim of privilege to fail." *Bridgewater*, F.R.D. at 639 (quoting *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.,* 110 F.R.D. 511, 515 (M.D.N.C. 1986)).

Further, the party asserting privilege must establish not only that each essential element of the privilege generally exists, but "must demonstrate that each essential element of the privilege is present with respect to the specific communication or document whose disclosure is sought." *Purdee v. Pilot Travel Centers*, LLC, No. CV407-028, 2008 WL 11350099, at *1 (S.D. Ga. Feb. 21, 2008).  "That burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *In re Bonanno*, 344 F.2d 830, 833 (2nd Cir.1965). "The Court should not have to guess or speculate about the applicability of the privilege, for the party asserting it has the affirmative duty to demonstrate that it applies to each document or communication sought to be disclosed." *Purdee*, 2008 WL 11350099 at *1 (citing *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981) (noting that a failure to demonstrate how a specific document comes within the ambit of the privilege could be fatal to the party asserting the privilege)).

The usual method for establishing the applicability of a privilege to any documents or communications is through a privilege log.  The log should be supported by affidavit or other evidence identifying each document or communication claimed to be protected by the privilege and setting forth sufficient facts to allow a judicial determination as to whether the particular communication or document is, in fact, privileged.  *See, e.g., Purdee*, 2008 WL 11350099 at *1;

*Bridgewater*, F.R.D. at 639 ("The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit"); *International Paper*, 63 F.R.D. at 94 ("Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. An improperly asserted claim of privilege is no claim of privilege at all.").

The burden to sustain a claim of privilege is heavy because privileges are "not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Because privilege "serves to obscure the truth . . . it should be construed as narrowly as is consistent with its purpose." *See Noriega*, 917 F.2d at 1551.

### III.    Discussion

As will be discussed, SGB and Privett failed to establish that any of the documents identified in their respective privilege logs are protected by attorney-client or work-product privilege.  But as an initial matter, there is an absence of any connection – in either SGB's or Privett's Response – between the briefing and the privilege logs.  SGB and Privett have each responded to discovery requests by producing documents responsive to those requests and privilege logs as to those documents they believe are responsive but also protected by some form of privilege.  SGB and Privett are the parties asserting privilege – it is their burden to establish that the responsive documents they are withholding should not be compelled because *those documents* are privileged.  Instead, both defendants make general claims, present general argument, and attach general or "representative" evidence, and then assert generally that they can provide additional evidence upon the Court's request.  Thus, the Court is left to "guess or speculate about the applicability of the privilege," which is fatal: "the party asserting [privilege] has the affirmative duty to demonstrate that it applies to each document or communication sought to be disclosed." *Purdee*, 2008 WL 11350099 at *1; *see also United States v. Davis*, 636 F.2d at 1044 n.20.  Since

neither SGB nor Privett has set forth sufficient evidence to allow judicial determination as to whether any particular communication or document (or even category thereof) is, in fact, privileged, their claims of privilege fail. This is separate finding from any deficiency in the privilege logs – this is a finding of a deficiency in the briefing and evidence presented and a failure to carry the required burden.

Nevertheless, as an additional and alternative basis to grant the motions to compel, the Court will also address the substantive arguments presented with respect to attorney-client and work-product privilege.

### A. Attorney-Client Relationship as to SGB and the Timeshare Owners

SGB argues primarily that in applying *Jackson,* Plaintiffs – and by extension this Court in a related case – have applied the wrong standard to the question of whether an attorney-client relationship exists. Doc. 128 at 8; *see Orange Lake Country Club, Inc. et al.  v. Reed Hein & Associates, LLC, et. al,* Case No. 6:17-cv-1542-Orl-31DCI, Doc. 214 at 5-6 (M.D. Fla. 2019) (applying the *Jackson* test in similar circumstances) [hereinafter the *Orange Lake* Order]. SGB appears to argue that *Jackson* is limited to "legal malpractice cases where the alleged representation of an attorney is denied." Doc. 128 at 9. However, nothing in *Jackson* limits its applicability to that that context, and SGB failed to cite authority for the proposition that *Jackson* is so limited. *See Jackson,* 372 F.3d at 1281-82. Thus, the Court finds any argument that *Jackson* does not apply in this case unpersuasive. SGB failed to provide any competent evidence that any owner consulted with SGB or held the belief (reasonable or otherwise) that SGB represented him as counsel. Thus, SGB failed to establish the existence of an attorney-client relationship under *Jackson.*

Nevertheless, SGB appears to argue that the applicable standard for determining the existence of an attorney-client relationship is set out in *Fundamental Long Term Care*, and that because SGB has met that standard, SGB has established the existence of an attorney-client relationship. *See* Doc. 128 at 7-9 (citing *In re Fundamental Long Term Care, Inc.,* 489 B.R. 451, 462-63 (Bankr. M.D. Fla. 2013)).  The court in *Fundamental Long Term Care* does not discuss or even cite to *Jackson*.  And no federal or Florida court has relied upon the decision in *Fundamental Long Term Care* outside the bankruptcy context.  So, to the extent that SGB argues that the "new" standard is that set forth by the bankruptcy court in *Fundamental Long Term Care*, the Court disagrees.  What that case does, though, is discuss the well-recognized and unique tripartite relationship between an insurer, its insured, and the attorneys retained by the insurer to represent the insured, and then extend that reasoning to a unique factual situation in a bankruptcy proceeding.  But that situation is not analogous to this one.  The Court finds SGB's attempt to carve out a new exception to the traditional bounds of the attorney-client relationship unpersuasive.  SGB's proposed "exception" covering for-profit timeshare exit companies' attempts to utilize counsel to allegedly assist timeshare owners in exiting timeshare contracts is unavailing – especially where, as here, those owners have little to no knowledge that the attorneys allegedly represented them.  SGB's proposition runs afoul of Circuit precedent requiring that the attorney-client privilege be "construed as narrowly as is consistent with its purpose."  *Noriega*, 917 F.2d at 1551.

Further, citing *Fundamental Long Term Care*, *Sayre v. Abraham Lincoln Federal Savings and Loan Association,* 65 F.R.D. 379, 381 (E.D. Penn. 1974), and New York State Bar Association Committee on Professional Ethics Opinion 957 (2013), SGB appears to argue that Reed Hein's actions as an "agent" of the timeshare owners falls within a purported general agency exception to *Jackson. Id.* at 7-9.  The Court disagrees.  SGB states in a conclusory manner that this case is

"analogous to," "resembles," and does "not material[ly] differ from" circumstances that involve an insurer-insured relationship (*Fundamental Long Term Care*), a labor union-constituent relationship (*Sayre*), and a non-profit organization-beneficiary relationship (the New York Ethics Opinion), but does not offer any further explanation. *Id.* at 8. Even if the Court deemed the foregoing authority persuasive, the Court does not find that the relationships in this case analogous to those relationships SGB lists, and SGB offers no real argument to the contrary. In addition, SGB offers the conclusory argument that Plaintiffs negotiated with SGB "for the potential contractual relief of its client and, therefore, must concede SGB's role as counsel for the affected timeshares." *See* Doc. 128 at 7-10. The Court does not consider Plaintiffs' conduct particularly relevant to the issue of the existence of an attorney-client relationship between SGB and the timeshare owners.

The evidence SGB has provided suggests, at best, that both Plaintiffs and SGB believed that certain timeshare owners were SGB clients,[6] that certain timeshare owners agreed to hire Reed Hein,[7] and that certain timeshare owners signed documents with SGB.[8] However, any belief held by Plaintiffs or SGB is not dispositive of any timeshare owner's status as a client. Nor is any timeshare owner's hiring of Reed Hein – by signing a document that does not mention SGB – indicative of that owner's subjective belief that he is in any way connected to SGB, let alone represented by SGB as counsel.

---

[6] *See, e.g.,* Doc. 128-1 (the Letters from Wyndham); Doc. 128-2, (the Emails from Wyndham); Doc. 128-8, Doc. 128-10 (collectively the Letters from SGB).

[7] *See, e.g.* Doc. 128-4 (the Exit Agreements); Doc. 128-5 (the POAs).

[8] *See, e.g.,* Doc. 128-1 (the Letters from Wyndham); Doc. 128-2, (the Emails from Wyndham); Doc. 128-8, Doc. 128-10 (collectively the Letters from SGB).

The only documents SGB has provided that suggest any timeshare owners were aware of SGB's existence are five heavily redacted "Limited Scope of Representation Agreements" executed between 2018 and 2019.  Doc. 128-11 (the LSORs).   But there is no evidence that these five timeshare owners ever consulted SGB, and there is no evidence – beyond a signature – that these owners subjectively believed they were consulting SGB for professional legal advice or that SGB represented them as counsel.  *Cf. Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens CVC Limitada,* No. 09-23248-CIV, 2010 WL 2926042, at *4 (S.D. Fla. July 23, 2010) ([T]here is no evidence that a consultation ever took place…the Defendants have not produced evidence beyond a few words in the engagement letter that a consultation ever occurred…").

SGB also appears to argue that, at least with respect to certain timeshare owners,  that the LSORs constituted a formal retainer agreement that establishes an attorney-client relationship. Doc. 128 at 6.   Specifically, SGB asserts that "[a]ttorney-client relationships also were independently *continued* between SGB and some timeshare owner clients pursuant to separate retainer agreements."  *Id.* (emphasis added).  In support of this proposition, SGB cites the five LSORs, but does not provide any argument. Doc. 128 at 6 n.26.  However, the five LSORs are heavily redacted and dated after the initiation of this litigation.  *See* Doc. 128-11. Four of the five LSORs are from 2019, and the remaining one is from 2018.  *See id.*   There are no retainer agreements that pre-date this litigation and there is no argument by SGB[9] – and no indication in the LSORs – that the LSORs relate back to some prior relationship.  This is critical, because if the documents SGB is seeking to withhold as privileged pre-date the LSORs, the LSORs are

---

[9] While SGB appears to assert perfunctorily that the LSORs "continued" existing attorney-client relationships, the Court finds that SGB failed to establish the existence of an attorney-client relationship that may have been "continued" through execution of the LSORs, assuming, for the sake of argument, that the LSORs constituted formal retainer agreements.  *See* Doc. 128 at 6.

inapposite for purposes of determining whether a formal retainer agreement existed.  Further, because the parties failed to attach the discovery requests and responses to the Motion to Compel SGB, and because SGB failed to file anything more than a categorical privilege log that provides no dates concerning the specific communications sought to be protected, there is no evidence as to whether Plaintiffs are seeking to obtain – and SGB is seeking to protect – documents that post-date the execution of the LSORs.  Indeed, there is nothing tying the LSORs back to the SGB Privilege Logs.  Thus, the LSORs provide the Court no competent evidence of the creation of an attorney-client relationship that would be relevant to the Motion to Compel SGB.  Additionally, the heavy redactions to the LSORs undercut SGB's reliance upon them.  Most importantly, at least half of the "Scope of Representation" section of the LSORs is redacted.  *See, e.g.*, Doc. 128-11 at 1-2.  What remains is a document explicitly "limited" to SGB "advis[ing]" the timeshare owner on "on potential options for terminating or negotiating [their] timeshare obligation."  *Id.*  That is not coextensive with the provision of professional legal representation.

Returning to the relevant authority, SGB must establish under *Jackson* that, in the absence of a formal retainer agreement, the timeshare owners SGB claims to represent had a reasonable, subjective belief that they were consulting SGB with the manifest intent of seeking professional legal advice.  *See Jackson,* 372 F.3d at 1281-82.  Because SGB has failed to provide any competent evidence of a formal retainer agreement and further failed to provide any competent evidence that any owner consulted with SGB or held the belief (reasonable or otherwise) that SGB represented him as counsel, SGB has failed to establish the existence of an attorney-client relationship.

**B.      Attorney-Client Relationship as to Privett and the Timeshare Owners**

Like SGB, Privett takes issue with *Jackson* as the test for determining whether an attorney-client relationship exists.  Doc. 126 at 14-17.  Privett appears to argue that *Jackson* is limited to

cases where either the attorney or the client denies the existence of an attorney-client relationship. *See id.* at 15.  However, nothing in *Jackson* limits its applicability to that that context, and Privett fails to cite authority for the proposition that *Jackson* is so limited.  *See Jackson,* 372 F.3d at 1281-82.  Thus, the Court similarly finds any argument that *Jackson* does not apply in this case unpersuasive.

Nevertheless, Privett appears to argue that the applicable standard for determining the existence of an attorney-client relationship is set out in *Mississippi Valley Title Insurance Co. v. Thompson,* 802 F.3d 1248, 1253 (11th Cir. 2015), and that because Privett has met that standard, Privett has established the existence of an attorney-client relationship.  *See* Doc. 126 at 2-3.  Privett cites *Mississippi Valley* for the proposition that, "To create an attorney-client relationship, there must be an employment contract[,] either express or implied[,] between an attorney and the party for whom he purports to act or someone authorized to represent such party."  *Id.* at 2-3 (quoting *Mississippi Valley,* 802 F.3d at 1253).  Privett then offers a lengthy argument that appears focused on establishing that since there is an employment contract between the timeshare owners and Reed Hein, there is an attorney-client relationship between the timeshare owners and Privett.  *See Id.* at 2-14.  As an initial matter, *Mississippi Valley* is distinguishable from this case because the court applied Alabama law and, in particular, was analyzing a claim under Alabama's Legal Services Liability Act.  Regardless, the Court in *Mississippi Valley* explained the relevant law succinctly as follows:

> "To create an attorney-client relationship, there must be an employment contract 'either express or implied' between an attorney and 'the party for whom he purports to act or someone authorized to represent such party.' " *Bryant v. Robledo,* 938 So.2d 413, 418 (Ala.Civ.App.2005) (quoting *Bd. of Comm'rs of the Ala. State Bar v. Jones,* 291 Ala. 371, 281 So.2d 267, 273 (1973)). In this context, the perception and intent of the putative client as to the formation of that contract is particularly relevant. *E.g., Green v. Montgomery Cnty., Ala.,* 784 F.Supp. 841, 845–46 (M.D.Ala.1992) ("[T]he test for determining the existence of [an attorney-client]

> relationship is a subjective one and 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.' " (quoting *Westinghouse Elec. \*1254 Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.1978))).

*Mississippi Valley*, 802 F.3d at 1253-54.  Assuming the applicability of the aforementioned language from *Mississippi Valley* to the Court's analysis here, Privett has provided insufficient evidence of contract formation between any owner and Privett – including evidence of the putative client's requisite subjective reasonable belief that he is consulting a lawyer to obtain professional legal advice.  Privett attempts to utilize the use of the word "contract" in *Mississippi Valley* as a toehold from which Privett sought to grasp at general agency principles and convince the Court that Reed Hein stood in the shoes of the timeshare owners for purposes relevant to the attorney-client privilege.  But Privett stretches too far, and the argument falls flat.  Indeed, *Jackson* and *Mississippi Valley* are not incompatible, and Privett failed to carry its burden under either Court's reasoning.[10]

Privett also argues that even if *Jackson* does apply, Reed Hein's consultation with Privett as the timeshare owners' agent is sufficient to establish an attorney-client relationship based on the holding of *JBJ Investment of South Florida, Inc. v. Southern Title Group, Inc.*, 251 So. 3d 173, 173 (Fla. Dist. Ct. App. 2018).[11]  Privett explains that the court in *JBJ Investment* held that the consultation requirement is met when an agent of the client consults with the attorney on the

---

[10] The Court notes that even if *Jackson* and *Mississippi Valley* were incompatible – and they are not – the prior precedent rule would require the Court to follow *Jackson*.

[11] In the course of making this point, Privett initially mischaracterizes both Plaintiffs' argument and *Jackson*, which results in somewhat confusing framework for Privett's own argument.  *See* Doc. 126 at 14-16.  Privett suggests that *Jackson* requires the consultation giving rise to a client's requisite reasonable belief (that he is consulting an attorney with the intent of seeking professional legal advice) be conducted in person.  *See* Doc. 126 at 14-15.  There is nothing in *Jackson* or its progeny that suggests that "consultation" between the putative client and an attorney must occur in person, nor do Plaintiffs appear to make any real argument to that effect.

client's behalf.  Doc. 126 at 16.  The court in *JBJ Investment* began its evaluation of whether a particular attorney-client relationship existed by explaining the test, which the Court has described at length in this Order, under Florida law.  *See JBJ Investment,* 251 So. 3d at *177-178 (citing *Bartholomew v. Bartholomew,* 611 So. 2d 85, 86 (Fla. 2d DCA 1992); *Beach* at 107-109; *Jackson* at 1281 n.29).  But the court then turned to Texas state law as authority for the general proposition that "the consultation requirement may be satisfied by an agent of the client."  *Id.* at *178 (citing *In re McCall,* 08-02-00071-cv, 2002 WL l341104, at *2 (Tex. App. 2002); *Clarke v. Ruffino*, 819 S.W. 2d 947, 949-50 (Tex. App. 1991).  The court went on to distinguish that case from *Jackson* and *Beach* and, in doing so, conclude that the consultation requirement was met since an "agent" of the client consulted with an attorney on the client's behalf.  *Id.* at *179.  To the Court's knowledge, no court in Florida – state of federal – has followed *JBJ Investment* as to that proposition.[12]  And to the extent Privett relies upon that case to assert a general agency exception to the consultation requirement discussed in *Jackson*, the Court finds *JBJ Investment* unpersuasive in its reasoning and reliance upon Texas state law.

Like SGB, Privett cites to evidence that, at best, establishes that Privett subjectively believed he represented certain timeshare owners as counsel,[13] that certain timeshare owners agreed to hire Reed Hein,[14] and that certain timeshare owners signed a document referencing Privett.[15]  However, Privett's beliefs are not dispositive any timeshare owner's status as a client.

---

[12] This is based upon a Westlaw KeyCite check performed on December 9, 2019.

[13] *See* Doc. 126-2 (Privett Declaration); Doc. 125-12 (sample Release and Authorization Form).

[14] *See* Doc. 125-13 at 19-20 (the first Exit Agreement); Doc. 125-14 at 9-10 (the second Exit Agreement); Doc. 126-1 (Parenteau Declaration); Doc. 126-3 (example POAs).

[15] *See, e.g.*, Doc. 125-12 (sample Release and Authorization Form).

Nor is any timeshare owner's hiring of Reed Hein – by signing a document that does not mention Privett – indicative of that owner's subjective belief that he is in any way connected to Privett, let alone represented by Privett as counsel.[16]

In terms of the documents certain timeshare owners signed with Privett himself – the "Release and Authorization Agreements" (the Releases) – Privett suggests that they establish that "many" timeshare owners assented to Privett's representing them as counsel. *See* Doc. 126 at 7. But Privett does not appear to argue that the Releases constitute formal retainer agreements. These documents, akin to SGB's LSORs, appear to constitute evidence that at least some timeshare owners knew of Privett's existence. However, like the LSORs, the Releases do not establish that any timeshare owner who signed them ever consulted Privett with the manifest intent of seeking professional legal advice. *Cf. Quail Cruises,* 2010 WL 2926042 at *4.

Privett also appears to argue that since Plaintiffs "have failed to identify the specific timeshare owners who are the subject of their claim and in relation to whom they assert damages," Privett cannot determine as to which specific owners he should present specific evidence of an attorney-client relationship. *See* Doc. 126 at 7 n.5. Thus, Privett has produced only *one* of the Releases for the 1,100 timeshare owners he claims he "represented with respect to Plaintiffs' resorts and who were referred to him by Reed Hein." *See id.* However, the burden to establish attorney-client privilege, and thus an attorney-client relationship, lies with the party claiming privilege. *See, e.g., Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005) (citing *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th

---

[16] Privett does make the claim that "[i]f an attorney was retained [by Reed Hein] the timeshare owner was told and the attorney was identified." Doc. 126 at 6. However, the only evidence Privett cites in support of this statement – the deposition of Defendant Thomas Parenteau – does not establish that any such communication with any timeshare owner ever took place. *See* Doc. 126-1.

Cir.1991)).   Plaintiffs served a discovery request, and Privett produced a privilege log that identifies responsive documents Privett asserts are privileged.  It is Privett's burden to establish privilege as to all of those documents, and therefore to establish an attorney-client relationship as to all of the timeshare owners with whom Privett claims such a relationship.  Privett has not done so and has therefore failed to carry his burden.

Returning once again to the relevant authority, Privett must establish either that there is a formal retainer agreement (which Privett does not appear to argue) or that the timeshare owners Privett claims to represent held the reasonable, subjective belief they were consulting Privett with the manifest intent of seeking professional legal advice. *See Jackson,* 372 F.3d at 1281-82. Because Privett has failed to provide any competent evidence of a formal retainer agreement, or any competent evidence that any owner consulted with Privett or held the belief (reasonable or otherwise) that Privett represented him as counsel, Privett has failed to establish the existence of an attorney-client relationship.  *See id.*

### C.  Conclusion of the Discussion Concerning Attorney-Client Relationships

Here, both SGB and Privett have failed to establish that any of the documents at issue are entitled to attorney-client privilege. First and foremost, SGB and Privett have failed to establish the existence of an attorney-client relationship.   Neither defendant has provided competent evidence to suggest that any of the myriad timeshare owners at issue ever created an attorney-client relationship with Privett, SGB, or any other law firm.  There is no competent evidence of relevant formal retainer agreements.  There is nothing to indicate that any particular timeshare owner had a subjective – let alone reasonable – belief that he was being represented by counsel. And there is no evidence that any individual timeshare owner ever consulted with, met with, or otherwise communicated with SGB or Privett in any meaningful way.

Thus, neither SGB nor Privett has satisfied its burden of demonstrating either that attorney-client or work-product privilege exists generally, let alone in relationship to specific documents, as the law requires. Rather, the Court is faced with general assertions of privilege entirely divorced from the documents – and even the categories of documents – identified on the SGB and Privett Privilege Logs. Even if the briefing from SGB or Privett established that some form of privilege exists generally – which the briefing does not establish – neither SGB nor Privett has provided the Court with any specifics that would allow the Court to weigh the applicability of that privilege in relationship to the specific documents Plaintiffs seek to compel. Such a failure is, alone, fatal to SGB and Privett's Responses. As it stands, the general assertions of both defendants do not provide competent evidence as to any particular timeshare owner. Indeed, as in *Beach*, it appears that timeshare owners sought assistance from non-attorneys (i.e. Reed Hein), signed a contract with those non-attorneys, and exclusively dealt with those non-attorneys with no real knowledge as to whether an attorney would be consulted, what attorney would be consulted, or when and for what purpose that attorney would be consulted.

### D. Confidential Communication

Even if SGB or Privett had established that an attorney client-relationship existed between each of the timeshare owners SGB or Privett claims to represent and SGB or Privett, neither SGB nor Privett has established that any of the communications or documents identified on their privilege logs occurred or were created for the purpose of "securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding…" *Noriega*, 917 F.2d at 1550. Further, even assuming those documents, communications – or even categories thereof – arise from an attorney-client relationship *and* that they occurred or were created for a purpose that would allow them to be protected, to the extent Reed Hein is included on any communication or

document, there is no attorney-client privilege.  Neither SGB nor Privett has established that Reed Hein was necessary to any communication between SGB or Privett and any timeshare owner.

Under federal law, the agency exception provides that "[a]lthough voluntary disclosure of attorney-client communications to a third-party ordinarily waives the privilege, the privilege will not be waived if the disclosure was to an agent 'whose services are necessary for effective representation of the client's interests.'"  *See La. Mun. Police Emps. Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (citation omitted); *see also In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 833-34 (Bankr. S.D. Fla. 2016).  The federal agency exception is substantially similar to the exceptions provided for in Fla. Stat. § 90.502(1)(c), which states that a communication between a lawyer and a client is confidential if it is not intended to be disclosed to third persons other than "[t]hose to whom disclosure is in furtherance of the rendition of legal services to the client [or] [t]hose reasonably necessary for the transmission of the communication."  *See In re Int'l Oil Trading Co., LLC*, 548 B.R. at 831.  The broader approach to the federal agency exception, which is the approach that is consistent with Fla. Stat. § 90.502(1)(c), "is to extend the waiver to a broader array of professionals with whom communication may be necessary for the provision of legal advice."[17]  *See id*. at 834.  "The party claiming a third-party as an agent bears the burden to show the privilege has not been waived."  *See Sealed Air Corp.*, 253 F.R.D. at 311 (citation omitted).

---

[17] "The narrow approach applies the exception only to persons identified as 'translators,' meaning those who interpret information the client and attorney already possess.  In this category fall paralegals, law clerks, secretaries, and language translators, in addition to some non-attorney professionals such as accountants, depending on the tasks performed."  *In re Int'l Oil Trading Co., LLC*, 548 B.R. at 833-34 (citations omitted).  Because the Court finds that Reed Hein and SGB have failed to satisfy the agency exception even under the broader approach, the Court finds it unnecessary to also discuss the narrower approach, although the Court is not now expressing an opinion on which approach governs.  The record is clear that Reed Hein and SGB would not have satisfied their burden under the narrow approach.

At the outset, the Court notes that to the extent SGB and Privett are arguing that the alleged powers of attorney establish privilege, the Court finds that a power of attorney, in and of itself, is not sufficient to preserve the privilege. Rather, the agent's services must be reasonably necessary for the effective representation of the client. *See Sealed Air Corp.*, 253 F.R.D. at 311; *In re Int'l Oil Trading Co., LLC*, 548 B.R. at 833-34. Moreover, even if the Court were to accept the premise that a power of attorney, standing alone, was sufficient to preserve the privilege, the Court reiterates that Reed Hein and SGB, with few exceptions, fail to provide the Court with any evidence to suggest which particular timeshare owners executed these alleged powers or attorney, when the powers of attorney were executed, or the scope of the powers of attorney. Nor do SGB or Privett provide the Court with any argument or evidence to suggest that the powers of attorney allegedly executed by Reed Hein's customers – i.e. the timeshare owners – were valid under applicable law.

Thus, the issue becomes whether Reed Hein's services were reasonably necessary for the effective representation of any particular timeshare owner. Neither SGB nor Privett provides any viable explanation as to why it was necessary for any particular timeshare owner to use Reed Hein either to obtain legal representation or as a conduit to communicate with any attorney actually obtained. SGB and Privett have not demonstrated that any of the timeshare owners at issue were incapacitated or otherwise incapable of adequately communicating with their attorneys directly. Rather, it appears that the parties wish to convince the Court that this arrangement was "necessary" because it was necessary to assist the large number of timeshare owners that Reed Hein and SGB – or Reed Hein and Privett – sought to serve. But this misses the point. The issue is whether the services were necessary for each individual timeshare owner to obtain legal advice. Not whether the services were necessary to execute – and profit from – a particular business model.

The Court takes this opportunity to confirm that, as it was not persuaded when SGB made the same argument in *Orange Lake*, it remains unpersuaded by SGB's argument that SGB "envisioned a relationship whereby [Reed Hein] would receive and maintain confidential and privileged information for SGB's use when rendering legal services to its clients." Doc. 128 at 17. What SGB "envisioned" is irrelevant to whether or not Reed Hein was a reasonably necessary third party. If that was not the case, then law firms could freely agree with any third party that the sharing of attorney-client privileged communications would not waive the privilege, essentially eviscerating the requirement that the communications remain confidential.

Here, the fact that Reed Hein and SGB or Reed Hein and Privett may have had an understanding with *each other* regarding the provision of legal services does not provide any evidence to suggest that any particular timeshare owner may have hired Reed Hein for the purpose of assisting some yet-unidentified attorney in the provision of legal advice. Regardless, even if some of the timeshare owners did somehow believe that they were hiring Reed Hein as an intermediary to deal with a law firm, that, standing alone, does not make Reed Hein a reasonably necessary third party for any communications that ultimately occurred between a timeshare owner and any attorney.

### E. Work Product

A party asserting work-product privilege carries the burden of establishing that the relevant materials are (1) documents and tangible things (2) prepared in anticipation of litigation or for trial (3) by or for another party or its representative. *See* Fed. R. Civ. P. 26(b)(3). Here, both SGB and Privett fail to establish the second prong of that test: that any document at issue was prepared in anticipation of litigation or trial. Thus, the Court will not address the first and third prongs of that test.

With regard to determining whether documents were prepared "in anticipation of litigation," the law is clear that if documents are prepared for a business purpose – or for some other non-litigation purpose – they fall outside the protection of the work product doctrine. *See, e.g., Johnson v. Westgate Vacation Villas, LLC* 2018 WL 7461685 at *4; *Bridgewater* at 641; *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993). Thus, if a document is prepared for a business purpose, or in the ordinary course of business, the document is not protected even if the party preparing the document is aware that the document may also be helpful in the event of litigation. *See Bowne* at 471. The law is equally clear that documents prepared by counsel or parties, or by their representatives, in specific preparation for a filed lawsuit, are protected work product. *See McKinley v. Bd. of Governors of the Fed. Reserve Sys.,* 647 F.3d 331, 341 (D.C. Cir. June 3, 2011). As one district court in this Circuit has noted, "[t]he application of the [work product] doctrine becomes difficult for those documents generated somewhere in the middle of the spectrum." *Bridgewater* at 641. In *United States v. Davis,* the former Fifth Circuit addressed the challenge as follows:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible litigation.

636 F.2d 1028, 1040 (5th Cir.1981) (citations omitted).[18] So the question becomes whether the purportedly privileged documents were prepared with the primary motivating purpose of aiding in possible litigation. *See, e.g. Bridgewater* at 641 ("This 'primary motivating purpose' language has been cited innumerable times by courts within this Circuit and appears to be the standard followed

---

[18] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

in this Circuit.); *Johnson v. Westgate Vacation Villas, LLC* 2018 WL 7461685 at *3 ("The question is whether the 'primary motivating purpose' was to aid in possible litigation."). Additionally, "[i]n determining whether a document was prepared in anticipation of litigation, key issues the court must consider are the function the document serves, the circumstances surrounding its creation, and the driving force behind its preparation." *Trenary v. Busch Entm't Corp.*, 2006 U.S. Dist. LEXIS 70584, at *5-6 (M.D. Fla. Sept. 28, 2006).

SGB offers no competent evidence that any of document it claims is protected by work-product privilege was prepared with the primary motivating purpose of aiding in litigation. SGB argues that because the Court can infer that future litigation against Plaintiffs was "certainly possible,"[19] the documents identified on the SGB Privilege Log must be protected work product. Doc. 128 at 19. The Court disagrees. Even assuming that litigation was possible at the time the allegedly privileged documents were prepared, SGB makes no argument that any documents identified in the SGB Privilege Logs were prepared in anticipation of this possible litigation. SGB provides no insight on the issues of what purposes each document serves, the circumstances surrounding each document's creation, or the driving force behind each document's preparation. *See Trenary* at *5-6. Thus, SGB has not provided any argument or evidence to carry its burden of establishing that the work-product privilege applies to any particular document, or, for that matter, in general.

Privett also offers no competent evidence that any document he claims is protected by work-product privilege was prepared with the primary motivating purpose of aiding in litigation.

---

[19] SGB appears to suggest that the Court can draw this inference from five "Selected demand Letters" (Doc. 128-10) and three "Letters regarding Litigation" (Doc. 128-8). The Court considers these letters inapposite because SGB fails to argue that any of the documents listed in the SGB Privilege Logs were prepared with the primary motivating purpose of aiding in any possible litigation.

Privett argues that because "foreclosure proceedings were possible in each case, the documents prepared in negotiating a timeshare exit were prepared 'with an eye toward litigation'" – regardless of the fact that Privett would not represent any owners if their cases proceeded to litigation.  Doc. 126 at 23.  Essentially, Privett echoes the argument presented by SGB – he asserts that because litigation was a possible outcome for each owner, documents prepared for each case were necessarily prepared in anticipation of that possible litigation.  Again, the Court disagrees.  Privett presents no evidence that any of the timeshare owners for whom he prepared material "with an eye toward litigation" ever took a case to trial, nor are the documents listed in the privilege logs specific to any particular case.  And while Privett may be correct that the limiting language in the Releases (*see, e.g.* Doc. 126-2 at 17-21) does not *preclude* the application of work-product privilege, the fact that Privett's Releases are limited in scope to explicitly exclude litigation does not help his argument.  Those Releases provide some evidence of the purpose each document serves, the circumstances surrounding each document's creation, and the driving force behind each document's preparation.  *See* Doc. 126-2 at 17; *Trenary* at *5-6. But that evidence weighs against a finding that the documents fall within the work-product privilege.  Privett has thus failed to carry his burden of establishing that the work-product privilege applies to any particular document, or, for that matter, in general.

### F.  The Motion to Compel Reed Hein and Privett's Motion for Protective Order

Having addressed the motions to compel SGB and Privett, the Motion to Compel Reed Hein and Privett's Motion for Protective Order remain for discussion.  First, the Court finds that the Motion to Compel Reed Hein is due to be granted to the extent it is unopposed and denied to the extent it seeks sanctions against Reed Hein.  The Court routinely grants motions as unopposed where the opposing parties have not filed a response in opposition to the motion.  *See* Local Rule

3.01(b).  Because Reed Hein does not argue that any of the documents Plaintiffs seek to compel are privileged, the Court finds that the Motion to Compel Reed Hein is unopposed to the extent it seeks document production.  The motion is thus due to be granted to that extent.  With respect to Plaintiffs' request for sanctions, the Court looks to Federal Rule of Civil Procedure 37(a)(5)(A), which provides as follows:

> (A)  *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).*  If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i)  the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii)  the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii)  other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).  The Court finds that Reed Hein's decision to withhold responsive documents absent a Court order was made in good faith.  Reed Hein communicated with Plaintiffs in a timely manner and explained that its refusal to produce allegedly privileged documents stood only until the Court ordered the documents produced.  *See* Doc. 129 at 5.  The Court finds that the unique circumstances of this case make an award of expenses unjust.  Accordingly, the Court finds that the Motion to Compel Reed Hein is due to be denied to the extent that it seeks sanctions against Reed Hein.

Second, the Court finds that Privett's Motion for Protective Order is due to be denied as moot and that the request for sanctions within the Protective Order Response is due to be denied.  Privett seeks a protective order preventing Reed Hein from disclosing any allegedly privileged documents until the Court rules on the issue of privilege in the Motions to Compel SGB and Privett.

*See* Doc. 127 at 4-5.  Because the Court addressed the Motions to Compel SGB and Privett in this Order, the Court finds that Privett's Motion for Protective Order is due to be denied as moot. Additionally, the Court finds that Privett's decision to withhold responsive documents he believed to be privileged, and to and file a motion for protective order to that effect, was substantially justified.  For reasons already addressed with respect to Reed Hein, the Court finds that the unique circumstances of this case make an award of expenses unjust.  Accordingly, the request for sanctions against Privett is also due to be denied.  *See* Fed. R. Civ. P. 37(a)(5)(A).

## IV.    Conclusion

For the reasons stated herein, it is **ORDERED** that:

1.      The Motion to Compel Reed Hein (Doc. 120) is **GRANTED in part** and **DENIED in part** as follows:

   a.      With respect to Plaintiffs' request for document production, the Motion to Compel Reed Hein is **GRANTED**. **On or before December 30, 2019**, Reed Hein shall provide to Plaintiffs those documents referenced on its privilege log that contain 1) communications between Reed Hein and SGB or Privett; and 2) communications between Reed Hein and Wyndham "timeshare owners that SGB and Privett claim to have represented as attorneys."

   b.      The Motion to Compel Reed Hein is **DENIED** with respect to Plaintiffs' request for sanctions and in all other respects.

2.      Privett's Motion for Protective Order (Doc. 127) is **DENIED as moot**.

3.      Plaintiffs' request for sanctions in the Protective Order Response (Doc. 135) is **DENIED.**

4.      The Motion to Compel SGB (Doc. 124) is **GRANTED**.  **On or before December 30, 2019**, SGB shall provide to Plaintiffs the documents and materials identified on its privilege logs.

5.      The Motion to Compel Privett (Doc. 125) is **GRANTED**.  **On or before December 30, 2019**, Privett shall provide to Plaintiffs the documents and materials identified on its privilege logs.

**DONE** and **ORDERED** in Orlando, Florida on December 9, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties