UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-WEST, LLC, SVC-AMERICANA, LLC, AND SVC-HAWAII, LLC,

CASE NO. 6:18-cv-2171-Orl-31TBS

Plaintiffs,

vs.

MITCHELL R. SUSSMAN,

Defendant.
_________________________________/

**JOINT FINAL PRETRIAL STATEMENT**

The Parties, WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-WEST, LLC, SVC-AMERICANA, LLC, AND SVC-HAWAII, LLC ("Wyndham" or "Plaintiffs") and MITCHELL R. SUSSMAN ("Sussman" or "Defendant"), pursuant to the Court's Fourth Case Management and Scheduling Order (Doc. # 217), hereby submit this Joint Final Pretrial statement.

1. **<u>Basis of the Court's Subject-Matter Jurisdiction</u>**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this matter involves complete diversity among the Plaintiffs and Defendant, and the amount in controversy exceeds $75,000.00. Additionally, this Court continues to retain supplemental jurisdiction over the claims asserted under 28 U.S.C. § 1367.

2. **<u>A Concise Statement of the Action</u>**

   a. The Plaintiffs consist of seven (7) associated corporations and entities which are engaged in the business of developing and selling timeshare properties. Plaintiffs sold timeshares to approximately 250 individuals or couples by entering into a contract with the purchasers, also called timeshare owners. Defendant Sussman is an attorney based in California. A company named Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("TET") contracted with Mr. Sussman to assist it seeking exits from the timeshare contracts. Plaintiffs contend that Mr. Sussman conspired with TET to tortiously interfere with Plaintiffs' contracts with the owners at issue in this case. Mr. Sussman denies that allegation. Plaintiffs also contend that Mr. Sussman engaged in deceptive and unfair trade practices in regard to the owners at issue in this case. Mr. Sussman denies that allegation as well.

3. <u>**A Concise Statement of Each Party's Position**</u>

a. ***Plaintiffs' statement of the case***:

Wyndham's position is that Mitchell Sussman and Reed Hein engaged in an unlawful scheme, i.e., a conspiracy, whereby Reed Hein advertised legal services Wyndham's timeshare owners offering the ability to cancel or terminate timeshare contracts. Either as part of its sales pitch or shortly thereafter, Reed Hein would instruct Wyndham's timeshare owners to cease payment on the remainder of their timeshare obligations. After signing up the customer, Reed Hein did nothing to accomplish the legal services it advertised, but merely sent the timeshare owner's information to Sussman's office.

For his part, Sussman made clear to Reed Hein from the outset that (1) a timeshare owner had to be in default to receive assistance, and (2) that Reed Hein should advise Wyndham timeshare owners to cease payments on their obligations. Sussman's role in the scheme was to have non-attorney members of his staff send form representation letters to Wyndham asserting that the Wyndham timeshare owner was the victim of fraud or misrepresentation. Sussman did not review these letters before they were sent to Wyndham or engage in any other conduct to evaluate a timeshare owner's circumstances. Once the Wyndham timeshare owner's interest was subjected to foreclosure or

cancellation for non-payment, Sussman would relay that information to Reed Hein, who would then relay that information to the Wyndham timeshare owner, touting success.

As a result of this conspiracy, Wyndham suffered damages in the amount of the unpaid loan balances associated with the Wyndham timeshare owners that ceased payment to Wyndham on account of Reed Hein's instructions, and at the behest of Sussman.

Additionally, Reed Hein and Sussman engaged in deceptive and unfair trade practices in soliciting Wyndham's timeshare owners with the promise of providing a legal termination or cancellation of a timeshare interest, only to have one of Sussman's non-attorney independent contractors send a letter to Wyndham on Sussman's letterhead purporting to claim an attorney-client relationship. These form letters were fraught with misrepresentations including (1) the formation of an attorney-client relationship, and (2) the assertion that some fraud or misrepresentation had occurred. The letters also uniformly instructed Wyndham to cease all contact with Wyndham's timeshare owner, and believing the letters to be legitimate, Wyndham ceased all such contact. As a result of these letters, Wyndham lost the ability to communicate with its timeshare owners and otherwise retain those owners as customers.

Moreover, as shown by Wyndham's expert witness, Tim Chinaris, Esq., Reed Hein's conduct in, among other things, advertising legal remedies to Florida residents, constituted the unauthorized practice of law in the State of Florida. Reed Hein could not have engaged in the advertising of legal remedies without Sussman's participation because Reed Hein would have lacked the ability to give the appearance.

Based on Sussman and Reed Hein's deceptive and unfair trade practices, Wyndham seeks both actual damages and injunctive relief against Sussman.

b. ***Defendant's statement of the case*:**

All of the Wyndham timeshare owners in this case no longer wanted to own their timeshare before they contacted TET. A timeshare purchase includes not only the cost of acquiring the interest in timeshare units, but also annual maintenance fees and annual management fees. None of the timeshare owners had any direct contact with Mr. Sussman. They contacted TET to gain assistance in getting out of their timeshare contracts and being relieved of the burden of their annual maintenance and management fees. TET sought Mr. Sussman's assistance in negotiating the release of the timeshare owners from these contractual obligations. Mr. Sussman successfully obtained written releases for 235

of the 250 owners at issue in this case, and of the remaining 15 Wyndham expressly admitted that all but three were let out of their contracts by Wyndham either prior to or during the course of Mr. Sussman's negotiations, obviating the need for a written release. Mr. Sussman denies that he conspired with TET to interfere with Wyndham's contracts. Wyndham was represented by a sophisticated team of in-house lawyers, who voluntarily entered into settlement agreements and releases of the timeshare obligations of the individuals for whom Mr. Sussman was negotiating; this shows the legitimacy of his efforts. Moreover, Plaintiffs should not be heard to now complain about Mr. Sussman's negotiations when they willingly entered into settlement agreements regarding the timeshare owners at issue in this case resulting in all of the secured collateral associated with every cancelled timeshare contract being returned to Wyndham.

4. **<u>List of Each Exhibit with Notation of Each Objection</u>**

<u>See</u> Exhibits 1 and 2 to this filing.

5. **<u>List of Each Witness by Name Only With Notation of (A) Likelihood the Witness will Testify and (B) Each Objection to the Witness's Testifying</u>**

<u>See</u> Exhibits 3 and 4 to this filing.

6. **<u>List of Each Expert Witness With Notation of (A) the Substance of the Testimony and (B) Each Objection to the Witness's Testifying</u>**

***a. Plaintiffs' Expert:***

Timothy Chinaris, Esq.
c/o Shutts & Bowen, LLP
300 S. Orange Ave., Suite 1600
Orlando, FL 32804

The substance of Chinaris' expert testimony is set forth in his expert report, which was filed with the Court in connection with Defendant's *Daubert* Motion (Doc. 302) directed as Chinaris' opinions. Defendant's objections to Chinaris' testimony are set forth in the *Daubert* Motion.

***b. Defendant's Expert:***

Joel Mark, Esq.

The substance of Mark's testimony is set forth in his expert report, which is attached ex Exhibit 5. Defendant has listed Mr. Mark as a rebuttal expert in the event his Daubert Motion regarding Mr. Chinaris is denied in whole or in part. Plaintiffs object to Mark's testimony on the basis that Sussman disclosed no expert witness by the February 1, 2021 deadline in the Court's scheduling order. Wyndham intends to file a motion to strike and/or preclude Mark's testimony.

7. **<u>A Breakdown of the Type and Amount of Monetary Damages</u>**

Wyndham is seeking monetary damages in the amount of at least $213,416.72. This amount represents the total of the unpaid principal balances of the defaulted loans of Albertus and Yolanda Gabo; Mariko Hein; and Monica Reyna and John Lerma. Additionally, per the Court's Order on summary judgment, Wyndham's damages at trial are limited to "any owner whose testimony Wyndham cannot present at trial." (Doc. 337, p. 14). To the extent Wyndham is able to secure the attendance of any additional timeshare owner witness at trial, Wyndham also seeks payment of those witness(es)' unpaid principal loan balances as well, in addition to the $213,416.72 listed above. Further, Wyndham seeks prejudgment interest dating to the time of breach for each of the loans that are components of its damages at trial.

8. **<u>A List of Each Deposition Offered in Lieu of Live Testimony, Unless the Deposition is Only For Impeachment</u>**

<u>See</u> Exhibits 6 and 7 to this filing.

9. **<u>A Concise Statement of Each Admitted Fact</u>**

   a. Plaintiffs ("Wyndham") are a group of associated corporate entities engaged in the business of developing and selling timeshare properties. Plaintiffs are headquartered in Florida.

b. Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("TET") contracted with Defendant Mitchell Sussman ("Sussman"), an attorney, to assist it seeking exits from the timeshare contracts.

c. TET is located in Washington State.

d. Sussman is located in California.

e. Relevant timeshare owners that are clients of Wyndham, TET, and Sussman are located in numerous states.

f. Certain timeshare owners that are clients of Wyndham, TET, and Sussman are located in Florida.

g. TET paid Sussman usually either $500.00 or $1,000.00 depending on whether or not the timeshare owner has a mortgaged or free and clear timeshare interest.

h. TET would send owners to Sussman by emailing him the timeshare owner's documents.

i. There are 250 Wyndham Owners at issue in this matter, for whom TET engaged Sussman. They will be referred to as "the Sussman Owners." (Doc. 290-1 ¶¶ 13–16).

j. Of the 250 Sussman Owners, 235 executed written releases.

k. TET communicated with timeshare owners regarding Sussman's activities.

l. The settlement agreements between the Sussman Owners and Wyndham are legally binding agreements.

m. Sussman was capable of communicating with Wyndham regarding settlement agreements because he was an attorney.

10. **A Concise Statement of Each Agreed Principle of Law**

a. To prevail on a claim for conspiracy, a plaintiff must prove: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done and with conspiracy. (See Doc. # 337) (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So.2d 1157, 1159-60 (Fla. 3d DCA 2008)). There must also be an underlying, actionable tort. *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020).

b. To recover damages on a FDUTPA claim, a plaintiff must establish: (1) a deceptive act or unfair trade practice, (2) causation, and (3) actual damages. (See Doc. # 337) (citing *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)).

11. **A Concise Statement of Each Issue of Fact**[1]

[1] It is Plaintiffs' view that some of the matters stated herein are mixed issues of fact and law and, therefore, some matters listed herein as disputed factual issues may be duplicative or similar to issues listed below as disputed legal issues.

*a. Plaintiffs' Position*

Plaintiff identifies the following issues of fact to be determined at trial:

1. Whether an express or implied agreement existed between TET and Sussman to induce timeshare owners to cease payment;

2. Whether interference with Wyndham's timeshare contracts was an unlawful act or a lawful act committed by unlawful means;

3. Whether Sussman engaged in any act in furtherance of the scheme;

4. Whether Wyndham suffered damages as a result of the conspiracy;

5. Whether Sussman acted as an agent for TET or Wyndham timeshare owners;

6. Whether TET acted as an agent for Sussman in communicating with Wyndham timeshare owners;

7. Whether Sussman engaged in a deceptive or unfair trade practice;

8. Whether TET engaged in a deceptive or unfair trade practice, and to the extent that it did, whether Sussman participated in that deceptive or unfair trade practice;

9. Whether the deceptive and unfair trade practices of either Sussman or TET with Sussman's participation caused actual damages to Wyndham;

10. The amount of damages caused by Sussman or TET's deceptive and unfair trade practices;

11. Whether Wyndham has been aggrieved by the deceptive and/or unfair trade practices of Sussman and/or TET with Sussman's participation;

12. The proper injunctive relief to be awarded to Wyndham on account of the deceptive and/or unfair trade practices of Sussman and/or TET with Sussman's participation;

13. Wyndham's entitlement to punitive damages, and if so entitled, the amount of punitive damages to be awarded; and

14. The amount of Wyndham's entitlement to prevailing party attorneys' fees under FDUTPA, Fla. Stat. § 501.2105.

***b. Defendant's Position***
(See Jury Instructions):

1. As to the conspiracy to commit tortious interference claim:

   (a) Was there an agreement between TET and Mitchell Sussman to do an unlawful act or to do a lawful act by unlawful means?

   (b) Was the negotiation of releases by Mitchell Sussman an unlawful act or done by unlawful means?

   (c) Did Mitchell Sussman do some overt act in furtherance of the conspiracy?

   (d) If the answers to (a), (b), (c) are yes, was there damage to the Plaintiffs as a result of the acts done under the conspiracy and, if so, what is the amount of the damages suffered by each Plaintiff, if any?

2. As to the FDUTPA claim:

   (a) Did Mr. Sussman engage in a deceptive act or unfair trade practice which caused actual damages to each Plaintiff, and if so, the amount of those damages?

   (b) Was the negotiation of releases by Mitchell Sussman a deceptive act or unfair trade practice?

(c) Whether each named Plaintiff can establish that it is an aggrieved party sufficient to warrant relief under FDUTPA.

(d) Whether any Sussman Owner was actually harmed by the allegedly deceptive or unfair trade practice.

12. **A Concise Statement of Each Issue of Law**

***a. Plaintiffs' Position***

Plaintiff identifies the following issues of law that remain outstanding:

1. Whether the facts support the formation of any agency relationship between Sussman and a timeshare owner; and

2. The legal effect (or lack thereof) to any settlement agreement between Wyndham and a Wyndham timeshare owner on Sussman's liability.

3. The proper award of injunctive relief against Sussman arising form the deceptive and unfair trade practices by either Sussman or TET with Sussman's participation.

4. Resolution of the parties' respective contested jury instructions related to conspiracy to commit tortious interference and FDUTPA.

5. Whether an award of attorneys' fees is proper in favor of Wyndham under FDUTPA as the prevailing party at trial.

***b. Defendant's Position***

i. Did Plaintiffs waive their right to pursue these claims or are they estopped from bringing their claims by way of their conduct (in

entering into settlement agreements and releases or otherwise releasing the 250 timeshare owners at issue in this case)?

ii. In negotiating the releases, was Sussman acting as the agent for the Sussman Owners?

iii. In negotiating the releases, was Sussman acting as the agent for TET?

iv. Is Mr. Sussman immunized by the intra-corporate conspiracy doctrine/agency doctrine?

v. Did Plaintiff fail to mitigate its damages?

vi. If the jury finds for Plaintiffs on liability, what is the proper measure of damages in this case, based on the court's ruling on the summary judgment motions (Doc. # 337)?

vii. Whether Plaintiffs are entitled to a permanent injunction and if so, the terms of that injunction.

viii. Whether attorneys' fees should be awarded to Plaintiffs or Defendants under FDUTPA, and if so, the amount of the attorney fee award.

ix. Whether attorneys' fees should be awarded to Sussman under the Lanham Act, and if so, the amount of the attorney fee award.

13. **<u>A List of Pending Motion or Other Unresolved Issue</u>**

a. Defendant's Motion to Strike and Exclude Testimony of Plaintiffs' Expert Timothy Chinaris (Doc. # 302);

b. Defendant's Motion for Leave to Amend Affirmative Defenses (Doc. # 340);

c. Defendant's Unopposed Motion to Bifurcate the Determination of the Amount of Punitive Damages at Trial (Doc. # 342);

d. Wyndham's Motions for Reconsideration, to be filed by October 22, 2021;

e. Wyndham's Motion to Strike, also to be filed by October 22, 2021; and

f. Motions in Limine, to be filed by October 25, 2021 deadline.

14. **<u>A Statement of Usefulness of Further Settlement Discussions</u>**

The parties have continued to engage in good faith settlement negotiations as part of the preparations for trial, but do not request any formal alternative dispute resolution measures at this time. The possibility of settlement appears unlikely at this time.

15. **<u>Attached Exhibits</u>**

a. Proposed Jury Instructions (Ex. 8 to this filing)

b. Proposed Verdict Forms (Ex. 9 to this filing)

c. Proposed Voir Dire questions (Ex. 10 to this filing)

## LOCAL RULE 3.06(b) CERTIFICATION

Counsel for the parties have conferred in good faith to: (1) discuss the possibility of settlement; (2) stipulate to as many facts and issues as possible; (3) examine all exhibits and exhibit substitutes or documents and other times of tangible evidence to be offered by any party at trial; (4) exchange the names and addresses of all witnesses; and (5) prepare a pretrial statement.

DATED: October 15, 2021.

Respectfully submitted,


*/s/ Eric Christu*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
Email: bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
Email: grubin@shutts.com
**CHRISTIAN M. LEGER, ESQ.**
Florida Bar No. 100562
Email: cleger@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

And

**ERIC C. CHRISTU, ESQ.**
Florida Bar No. 434647

*/s/ Clay H. Coward*
**CLAY H. COWARD, ESQ.**
Florida Bar No. 379522
**KRISTA N. CAMMACK, ESQ.**
Florida Bar No. 104718
**Wicker Smith O'Hara McCoy & Ford, P.A.**
390 N. Orange Avenue, Suite 1000
Orlando, FL 32801
Telephone: 407-843-3939
ccoward@wickersmith.com
kcammack@wickersmith.com

and

**MICHAEL A. NARDELLA, ESQ.**
Florida Bar No. 51265
**JOHN J. BENNETT, ESQ.**
Florida Bar No. 98257
**NARDELLA & NARDELLA, PLLC**
135 W. Central Blvd., Suite 300
Orlando, Florida 32801

ecchristu@shutts.com
SHUTTS & BOWEN LLP
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL 33401
Telephone: (561) 835-8500
Facsimile: (561) 650-8530

*Attorneys for Plaintiffs*

Telephone: (407) 966-2680
Email: mnardella@nardellalaw.com
Email: jbennett@nardellalaw.com
Email: service@nardellalaw.com

*Attorneys for Defendant Mitchell R. Sussman, Esq.*

ORLDOCS 19083455 3